# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                           **November 24, 2014**
**U.S. MAGISTRATE JUDGE**

Defendant David B. Fenkell (Fenkell) filed a Motion to Disqualify The Groom

Law Group, Chartered, from representing Barbie Spear (Spear)[1] due to an alleged non-

waivable conflict of interest. *See* Motion to Disqualify The Groom Law Group, Chartered

From Representing Plaintiff Barbie Spear Due to a Non-Waivable Conflict of Interest,

Docket No. 178-1 ["Def's Br."]. Spear contends that Fenkell's Motion attempts to

"punish or intimidate Ms. Spear for bringing claims on behalf of the Alliance ESOP by

manufacturing counterclaims against her personally." *See* Barbie Spear's Opposition to

---

[1] The Groom Law Group represents Ms. Spear in her individual capacity as well as in her capacity as a fiduciary of the Alliance ESOP. She is named in a Third Party Complaint by the Stonehenge Parties as a fiduciary of the ESOP. *See* Third Party Complaint against Third-Party Defendants Barbie Spear, Kenneth Wanko, and Eric Lynn, Doc. No. 92 ¶¶ 335-37. In a Third Party Complaint brought by the Fenkell Defendants, Spear is being sued in her capacity as a fiduciary. *See* Second Amended Third-Party Complaint of Defendants David B. Fenkell, Karen G. Fenkell, and DBF Consulting, LLC, Doc. No. 214 ¶ 37. In addition, the Fenkell Defendants have asserted other claims against Spear in her individual capacity. *See* Memorandum in Opposition to Barbie Spear's Motion to Dismiss the Counterclaims of Paul Sefcovic, Lianne Sefcovic, and Student Loan Advisory Management Services, LLC, Doc. No. 148, at 3.  Ms. Spear has pursued this litigation as a plaintiff in her representative capacity only. *See* Complaint, Doc. No. 1, Ex. 9 Civil Cover Sheet (listing Barbie Spear "in her capacity as trustee of Alliance Holdings Inc. Employee Stock Ownership Plan").

Fenkell Defendants' Motion to Disqualify Groom Law Group, Docket No. 190, at 1 ["Pl's Br."].

I find that Fenkell has failed to establish he is entitled to relief, and therefore I deny his Motion to Disqualify.[2]

## Standard of Review

Motions to disqualify are an extreme sanction and are not to be taken lightly. *See Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp.2d 518, 520 (E.D. Pa. 1999). Courts should only impose such a motion when it is "absolutely necessary." *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D. N.J. 1996) (quoting *Alexander v. Primerica Holdings, Inc*, 822 F. Supp. 1099, 1114 (D. N.J. 1993)). The Rules of Professional Conduct are not designed "as an addition to the depressingly formidable array of dilatory strategies already part of the litigator's arsenal." *Caracciolo v. Ballard*, 687 F. Supp. 159, 160-61 (E.D. Pa. 1988). The reason for such disfavor and suspicion of motions to disqualify is the fear that one could use the rules as a "procedural weapon." *See Wolf, Block, Schorr & Solis-Cohen v. Navon*, No. Civ.A. 05-6038, 2006 WL 680915, at *1 (E.D. Pa. Mar. 9, 2006) (citing *Cohen v. Oasin*, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994); *Commonwealth Ins. Co. v. Graphix Hotline, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992); *Hamilton v. Merrill Lynch*, 645 F. Supp. 60, 61 (E.D. Pa. 1986)). As Judge Dalzell noted in the *Navon* opinion, "our Court of Appeals has stressed that a court 'should disqualify an attorney only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule.'" *See* 2006 WL 680915, at *1 (citing *United States v. Miller*,

---

[2] This is a non-dispositive motion, and the case has been referred to me for decision. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Order Referring Case to Magistrate Judge, Doc. No. 183.

624 F.2d 1198, 1201 (3d Cir.1980)). The burden lies on the party seeking the

disqualification to demonstrate that continued representation is not permissible. *Shade*,

72 F. Supp.2d at 520.

Timing is important when considering a motion to disqualify. Courts "should

consider the length of the delay in bringing the motion to disqualify, when the movant

learned of the conflict, whether the movant was represented by counsel during the

delay, why the delay occurred, and whether disqualification would result in prejudice to

the nonmoving party." *Jackson v. Rohm & Haas Co.*, No. 05-4988, 2008 WL 3930510,

at *2 (E.D. Pa. Aug. 26, 2008). In this jurisdiction, courts have denied such motions

brought long after the substance of the litigation arose. *See id.* (*citing In re Rite Aid*

*Corporation Securities Litigation*, 139 F. Supp.2d 649, 660-61 (E.D. Pa. 2001); *Com.*

*Ins. v. Graphix Hot Line*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992)).

I.    **The Timing of Fenkell's Motion is Suspect**

In her brief, Spear highlights the suspicious timing of Fenkell's Motion. She notes

that the Fenkell Defendant's filed an Answer, Counterclaims, and Third-Party claims

against her and a number of other third-party defendants on April 25, 2014. *See* Pl's Br.

at 6 (citing Doc. No. 168). According to Spear, a dispute arose over the length of time

needed to execute discovery. *Id.* That dispute led to the May 16, 2014 motion by

Fenkell's counsel to disqualify the Groom Law Group from continued representation of

Ms. Spear. *Id.*

Spear's counsel outlined the various ways it has represented Spear in both her

individual capacity, and as the individual responsible for bringing claims on behalf of

the Alliance ESOP:

3

- Groom Law Group first indicated to all Defendants on November 21, 2013 that it represented Ms. Spear in her individual capacity by accepting service on her behalf.
- Groom Law Group formally appeared on behalf of Ms. Spear on December 6, 2013. Doc. 116. See Local Rule 5.1(a) ("The filing of a pleading, motion or stipulation shall be deemed an entry of appearance.").
- Counsel for the Fenkell Defendants recognized that Ms. Spear was a party to this action in her individual capacity as early as January 13, 2014. Doc. 148 at 3.
- Groom Law Group has engaged in hundreds of communications with counsel for the Fenkell Defendants on every aspect of the case—from pleadings to scheduling discovery to settlement—for six months since Groom Law Group formally appeared on behalf of Ms. Spear. Counsel for the Fenkell Defendants never raised this perceived conflict until now. See Decl. of Edward J. Meehan, attached hereto as Exhibit A.
- Since [beginning its communications with the Fenkell Defendants], Groom Law Group has filed numerous briefs on behalf of Ms. Spear both in her individual capacity and as Trustee of the Alliance ESOP, including:
    o A Motion to Dismiss the Third-Party Complaint filed by Stonehenge Holding Co., Inc., John Witten, Ronald Brooks, and Barry Gowdy (the "Stonehenge Defendants") (Doc. 116);
    o A Motion to Dismiss the Stonehenge Defendants' First Amended Third-Party Complaint (Doc. 153);
    o A Reply in Support of the Motion to Dismiss the Stonehenge Defendants' First Amended Third-Party Complaint (Doc. 162); and
    o A Joint Motion for Entry of a Protective Order (Doc. 156).

*See id.* at 4-5. That brief also detailed a litany of procedural delays in this action, including extending discovery periods, refusing to participate in mediation with the other parties due to alleged unavailability of counsel for an entire month, and other discovery disputes. *Id.* at 5-6.

Fenkell's brief is silent on this timing issue. Beyond saying repeatedly that the Groom Law Group has a conflict of interest, the brief fails to elaborate on the ethical rule or rules that Spear's Counsel supposedly violated, and does not supply any cases within our jurisdiction that might provide me with guidance in resolving the precise legal issue, which is whether disqualification is "absolutely necessary" and an "appropriate means of enforcing the applicable disciplinary rule." *Carlyle Towers*

*Condo. Ass'n, Inc.*, 944 F. Supp. at 345; *Navon*, No. Civ.A. 05-6038, 2006 WL 680915, at *1. The timing of the motion is suspect, and Fenkell's lack of analysis does not alleviate my concerns.

The burden falls squarely on Fenkell to demonstrate that there is an irreconcilable conflict necessitating court intervention, and that nothing short of disqualification will do. He has not sustained his burden, and his delay in filing his motion strongly counsels that I deny it. Each of the factors identified in *Jackson* cut in favor of Ms. Spear; the length of delay, when Mr. Fenkell learned of the potential conflict, that Mr. Fenkell was represented by sophisticated ERISA counsel during the period of delay, that disqualification would invite prejudice to the plaintiff and be a substantial source of delay; and the absence of any reasonable explanation for the delay. 2008 WL 3930510, at *2. I find that by his tardiness in filing this motion he has waived a right to relief, if one existed.

## II.    Disqualification is not Absolutely Necessary

Spear argues that the counterclaims upon which the alleged conflict rests are without merit. Defendant's counterclaims would "only arise if Plaintiffs are successful in demonstrating that the assets of Alliance are assets of the Alliance ESP, or 'plan assets' under ERISA." *See* Pl. Br. at 8. Defendant asserts that "at no time were Alliance's assets the assets of the Alliance ESOP trust, or 'plan assets,' as that term is defined and determined under the provisions of ERISA and the regulations promulgated thereunder." Defendants' Counterclaims, Doc. No. 168 ¶ 23. Fenkell nevertheless asserts that if Alliance assets are found to have been Alliance ESOP assets, then Fenkell's counterclaims against Spear would be triggered. *Id.* Of course, Fenkell is pleading his counterclaim in the subjunctive, s*ee id.* ¶ 36, but that mood, while perfectly permissible

5

in an initial pleading, does nothing to aid a party who has the burden of proof on a

motion to disqualify.

> [T]he court should disqualify an attorney only when it determines, on the facts of
> the particular case, that disqualification is an appropriate means of enforcing the
> applicable disciplinary rule. It should consider the ends that the disciplinary rule
> is designed to serve and any countervailing policies, such as permitting a litigant
> to retain the counsel of his choice and enabling attorneys to practice without
> excessive restrictions.

*United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Among the countervailing

policies I must consider is the concern that the Third Party Complaint is being used as a

tactical ploy. That concern is heightened here because of the unusual circumstances

discussed in part I, above.

None of the cases cited to by Fenkell involve the curiosity of a moving party

asserting a factual predicate that he steadfastly maintains is false in order to support

disqualification of opposing counsel. *See, e.g., Montgomery Acad. v. Kohn*, 50 F. Supp.

2d 344, 348-49 (D.N.J.) *aff'd*, 82 F. Supp. 2d 312 (D.N.J. 1999) (attorney who had

represented individual trustee during investigation of potential ERISA violations could

not represent board in ERISA suit against individual trustee); *Mertens v. Kaiser Steel

Ret. Plan*, 744 F. Supp. 917, 923-24 (N.D. Cal. 1990) *aff'd sub nom. Mertens v. Black*,

948 F.2d 1105 (9th Cir. 1991) (where defendants with adverse interests had been

represented by conflicted counsel in previous litigation, it was inappropriate to find

issue preclusion based on results of prior litigation); *McGinn v. DeSoto, Inc.,* No. 90 C

4481, 1990 WL 251753, at *4 (N.D. Ill. Dec. 21, 1990) (defendants with adverse interests

could not be represented by same counsel).

6

This makes a profound difference. We are not engaged in quantum mechanics, and the superposition of multiple states of existence,[3] but a motion to disqualify. Plaintiff bears the burden of persuasion, and the motion is disfavored. A potential conflict based on facts that the defendant contends are not true is not a satisfactory basis for granting a disqualification motion. Nor does Fenkell's motion undermine my confidence in the vigor of plaintiffs' counsel's representation. *See Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (with rare exceptions disqualification has been ordered only in cases where a conflict "undermines the court's confidence in the vigor of the attorney's representation of his client" or prior representation gives the attorney privileged information that may be used to the client's disadvantage).  The cases cited to by Mr. Fenkell involve concrete conflicts of the type identified in *Nyquist.* By contrast, Fenkell's motion provides me with allegations, but no concrete factual basis on which I can rely. *See Jackson v. Rohm & Haas Co.*, 366 F. App'x 342, 347 (3d Cir. 2010) (conclusory allegations, which are not backed by evidence, do not warrant the extreme remedy of attorney disqualification).

A second curiosity of Fenkell's position is that he has not explained how his ox is being gored.  If Mr. Fenkell wins the day, and the court agrees with him that "at no time were Alliance's assets the assets of the Alliance ESOP trust," then his claims against Ms. Spear likely evaporate. If the court disagrees with him, then he may be able to pursue his claims against Ms. Spear. In either event I cannot see how he is unfairly prejudiced by plaintiff's multiple representation. Prejudice to the moving party need not necessarily be

---

[3] A state of affairs in the realm of particle physics in which it appears that an event happened and at the same time did not happen. *Relational Quantum Mechanics, § 1.1,* Stanford Encyclopedia of Philosophy, http://plato.stanford.edu/entries/qm-relational/#SomConRelPoiVie (last visited Nov. 15, 2014).

shown in order to grant a motion to disqualify. *See Int'l Bus. Machines Corp. v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) (injury to the profession's public perception was an important factor to consider where attorney failed to obtain client's consent to adverse representation). Nevertheless, the absence of prejudice[4] to the moving party is a significant factor, especially here, given the length of time it took Mr. Fenkell to file his motion to disqualify.

This situation leads me to a third curiosity: it seems Fenkell's logic, if applied consistently, would counsel disqualification of Mr. Fenkell's attorneys, as well. Under Fenkell's logic, he wears two hats. On the one hand, he aligns himself as a representative of the ESOP, in his status as plan participant, seeking to recover allegedly misspent assets against Ms. Spear. On the other hand, he is litigating on his own behalf as a defendant against the ESOP, alleging that no assets were misspent. If I take Mr. Fenkell's arguments to heart, these interests would dictate disqualifying his present attorneys and striking all his pleadings. *See* Def. Br. at 2-3. Such a puzzling and likely unintended contradiction bolsters my conviction that Fenkell's radical disqualification is neither "absolutely necessary" nor an "appropriate means of enforcing the applicable disciplinary rule." *Carlyle Towers Condo. Ass'n, Inc.*, 944 F. Supp. at 345; *Navon*, No. Civ.A. 05-6038, 2006 WL 680915, at *1.

Unlike *Levin*, and unlike the cases granting disqualification that Mr. Fenkell has referred to, the attorneys here did not overlook a troubling conflict before plunging into

---

[4] The issue of what prejudice Mr. Fenkell suffers as a result of the supposed conflict suggests the possibility that Fenkell does not have standing to raise the conflict issue. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 161 (3d Cir. 1984) (noting Circuit split and assuming without deciding that only a former client can raise a disqualification claim). I will assume, for purposes of this motion, that Fenkell has standing to raise the conflict issue.

representation, only to be called to account by an aggrieved former client. Nor does Mr.
Fenkell point to any privileged information that would be used against him if the
representation continued, or any other practical prejudice to his own position. I do not
find that the maintenance of the integrity of the legal profession, or of its standing in the
public's eye, is harmed by refusing to disqualify counsel here. *See Levin*, 579 F.2d at
283. Rather, I conclude that a flexible approach that is sensitive to the singular
circumstances of this matter is more appropriate. *See Carlyle Towers Condo Ass'n, Inc.*,
944 F. Supp. at 345 (citing *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 738 F. Supp.
1121, 1126 (N.D. Ohio 1990) (stressing the importance of a fact-specific inquiry in
motions to disqualify)). Particularly where traditional conflict of interest rules are
applied in circumstances that the rules may not have anticipated, a cautious and
balanced approach to remedying potential conflicts is warranted. *Cf. Lazy Oil Co. v.
Witco Corp.*, 166 F.3d 581, 589-90 (3d Cir. 1999) (adopting a balancing approach to
determining whether to require disqualification of class counsel where one member of a
class decides to oppose a settlement, creating client adversity).

## III.   Conclusion

The motion to disqualify has all the features of the untoward "procedural
weapon" courts have cautioned against. Groom Law Group did not suddenly appear in
this litigation without warning. The record shows that they have been involved since the
Complaint was filed in May of 2013. *See* Complaint, Doc. No. 1, at 37. Fenkell fails to
provide any explanation, reasonable or otherwise, for waiting a year to file his motion
for disqualification. Fenkell has not borne his burden of convincing me that the radical
disqualification he requests is absolutely necessary, and the only way to satisfy the
applicable ethical rules. His motion will be denied.

9

Having rejected Mr. Fenkell's motion because of its various deficiencies, I am not satisfied that the representation issue has been adequately resolved. It is the court's duty to supervise the attorneys practicing before it. *United States. v. FMC Corp.*, 495 F. Supp. 172, 176 (E.D. Pa. 1980) (citing *Richardson v. Hamilton Int'l Corp.*, 469 F.2d 1382, 1385 (3d Cir. 1972)). Therefore, I will direct plaintiff's counsel to submit a memorandum supplying authority on the issue whether their representation of Alliance ESOP and Barbie Spear violates Pennsylvania Rule of Professional Conduct 1.7, applicable to attorneys practicing in this District.[5] This memo should address 1) why there is no conflict issue related to continued multiple representation, and 2) what steps short of disqualification this court should take in the event a conflict appears.

Counsel for Mr. Fenkell shall file a similar memorandum regarding their own dual-capacity representation of Mr. Fenkell.

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge

---

[5] *See* E.D. Pa. Civ. R. 83.6; *see also Marino v. Usher*, No. 11-6811, 2014 WL 2116114, at * 9 (E.D. Pa. May, 21, 2014) (applying Pennsylvania Rules of Professional Conduct to Eastern District of Pennsylvania case). I note that the Alliance memorandum focused on the timeliness of Mr. Fenkell's motion, but did not supply any authority on the issue of whether the multiple representation violated Rule 1.7. *See* Pl. Br. at 3-7. This is likely because Mr. Fenkell did not cite to or discuss the rule.