IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

## MEMORANDUM OPINION

**RICHARD A. LLORET**                                                    **December 5, 2014**
**U.S. MAGISTRATE JUDGE**

  Defendants David Fenkell & Karen Fenkell ("Fenkells") filed a Motion to Quash subpoenas sent by Plaintiff Barbie Spear ("Spear") to six financial institutions believed to have had dealings with the Fenkells and their children. *See* Defendants David B. Fenkell and Karen Fenkell's Motion to Quash Plaintiff's Subpoenas to Produce Documents, Doc. No. 176 ["Def Motion"]. Beginning November 14, 2013, Spear sent these subpoenas to Fidelity Investments, Huntington National Bank, Lincoln Financial, The Lincoln National Life Insurance Company, Morgan Stanley, Sovereign Bank, and Vanguard Group, Inc. *See id.* at 1-2. The Fenkells argue that these subpoenas "are impermissible and improper under the circumstances of this case because (1) they seek to obtain records that constitute privileged and confidential private information of parties and non-parties; and (2) the Court has not declared judgment against the Fenkell Defendants so the discovery is irrelevant and not calculated to lead to admissible discovery at this time." *See Id* at 2.

  Spear filed an opposition to this Motion to Quash. *See* Barbie Spear's Opposition to Fenkell Defendants' Motion to Quash Plaintiff's Subpoenas to Produce Documents

["Pl. Br."], Doc. No. 207. In her response, Spear notes that her subpoenas are designed "(1) to discover information demonstrating the extent of David Fenkell's unlawful conversion of Alliance ESOP funds, (2) to trace the disposition of any ill-gotten proceeds, and (3) to assist in potentially freezing assets obtained via David Fenkell's unlawful commandeering of Alliance ESOP funds." *See* Pl. Br. at 1. Plaintiff further explains that these subpoenas seek to show the receipt of Alliance funds and other transfers among the Fenkell Defendants, their children, and third parties. *Id.* at 2. These claims would prove that money was "siphoned off and used for personal purposes." *Id.* According to the Plaintiff, the argument that these bank records are "private" is incorrect as a matter of law. *Id.* at 3.

Given well-settled case law in this jurisdiction and the need to move discovery on this matter forward, I find that Defendant's Motion to Quash is without merit and I will deny the motion.

## Standard of Review

Federal Rule of Civil Procedure 26(b)(1) allows discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

*See* Fed. R. Civ. P. 26(b)(1). Rule 26(b)(1) "is to be construed broadly and encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in this case." *See Great West Life Assur. Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978)). Discovery is generally permitted for any items that are relevant or may lead to the discovery of

2

relevant information. *See Transcontinental Fertilizer Co. v. Samsung, Co.*, 108 F.R.D. 650, 652 (E.D. Pa. 1985). Discovery is not limited to named parties in a case. *See Levithan*, 152 F.R.D. at 498 ("While it is true that [defendant's wife] is not a named defendant in this proceeding, we do not see how this insulates her or her business or her records from the discovery process."). A court may also modify a subpoena if it would somehow cause an undue burden to an individual. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).

The Plaintiff argues that she seeks this information in order "to confirm what is evident from the company files, to supplement Plaintiff's knowledge as to these transfers, and likely to identify more transfers because Alliance's records may not be complete." *See* Pl. Br. at 3. This information was gathered as a result of a preliminary analysis of Alliance records showing transfers from Mr. Fenkell's individual accounts to joint accounts, and finally to Mrs. Fenkell's individual accounts. *Id.* As the Fenkell Defendants deny receiving any impermissible transfers from the Alliance ESOP, these subpoenas, Plaintiff argues, go directly to the issue of liability. *Id.* Furthermore, these subpoenas are also intended to trace assets which may belong to the Alliance ESOP.[1]

Defendants contend that the Plaintiff may not go on a "pre-judgment fishing expedition. . ." into the status and location of assets owned by David, Karen, and the Fenkell children. *See* Memorandum of Points and Authorities in Support of Defendants David B. Fenkell and Karen Fenkell's Motion to Quash Plaintiff's Subpoenas to Produce Documents ["Def. Br."], Doc. No. 176-1, at 4. They also argue that privacy considerations outweigh Plaintiff's interest in obtaining such information and that the Federal Rules of

---

[1] Though not dispositive in this matter, Plaintiff notes that "Fenkell was ordered to turn over bank statements and tax return information at this very point in the *Chesemore* case." *See id.* at 4 n. 6. Fenkell also indicated that his tax returns were off-limits in the same litigation, suggesting that a less intrusive means of getting financial information might be through banking or investment records. *See id.* at 4 n. 8.

3

Civil Procedure bar this sort of pre-trial discovery into a defendant's finances. The Defendants are incorrect as a matter of law and their arguments are meritless.

These subpoenas are not designed to annoy or harass, but seek to trace funds that the Plaintiff alleges belong to the Alliance ESOP. Case law demonstrates that there is not a cognizable bar on retrieving financial information from parties during the discovery period.[2] *See Constitution Bank v. Levine*, 151 F.R.D. 278, 280 (E.D. Pa. 1993) (granting motion to compel documents which were "financial records pertaining to transactions involving the Levines, who are defendants in this suit over allegedly fraudulent transactions"); *Long v. H.D.J. Co, Inc.*, No. Civ.A.03-3054, 2004 WL 1427144 (E.D. Pa. June 14, 2004), at *1; *Johnson v. Smith*, No 05-4081, 2007 WL 178522, at *1-2 (S.D. Ill. Jan 18, 2007); *cf. Cacique, Inc. v. Tropical Cheese Industries, Inc.*, No. CIV. 03-2081 (D. N.J. June 29, 2006), at *3 (allowing for discovery of financial documents "for counsel and expert eyes only" in a dispute between companies). Defendant fails to demonstrate how such material might be privileged or otherwise protected under the Federal Rules. Instead, Defendants cite to a number of inapplicable insurance-related decisions to obscure an otherwise straightforward discovery issue. Releasing these documents could accelerate this litigation by clearly showing that the Fenkells have not transferred any Alliance money, or, in the alternative, prove that they have engaged in a

---

[2] The Fenkell defendants cite to a litany of cases found in *McCurdy v. Wedgewood Capital Mgmt. Co.*, No. Civ.A. 97-4304, 1998 WL 964185, at *10 (E.D. Pa. Nov. 16, 1998), a case that they believe demonstrates the fact that the Federal Rules do not permit pre-trial discovery of a party's finances. *See* Def. Br. at 6. The information in that case was protected pre-judgment because it implicated a defendant's ability to satisfy a judgment. *McCurdy*, 1998 WL 964185, at *10. The Plaintiff in our case seeks to trace funds, not find out whether the Fenkell Defendants can satisfy a judgment. Furthermore, the cited section of Wright & Miller's Federal Practice is entitled "Relevancy to the Subject Matter—Existence and Limits of Insurance." *See* 8 Wright & Miller, Federal Practice & Procedure § 2010, at 93 (1970).

4

number of suspect transfers. In allowing these documents to be released by various financial institutions, the first five digits of any Social Security number belonging to any of the Fenkells that appears on documents requested shall be redacted. No other information shall be redacted.

BY THE COURT:

 /s/ Richard A. Lloret
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE