**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

**RICHARD A. LLORET**                                        **February 5, 2014**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM OPINION

Alliance Holdings, Inc. and Kenneth Wanko (Alliance and Wanko, respectively) have moved under Fed. R. Civ. Pro. 12(b)(6) to dismiss the counterclaims and third-party claims of Paul Sefcovic, Lianne Sefcovic and Student Loan Advisory Management Services, LLC  (SLAMS) (collectively, the Sefcovic Parties). Doc. No. 125.  In order to put the motion, the counterclaims and third-party claims in context, it is necessary to start with the claims against the Sefcovic Parties. The amended complaint (Doc. No. 68) alleges four causes of action against Sefcovic Parties:

1.  knowing participation in prohibited transaction under the Employee Retirement Income Security Act (ERISA) section 502(a)(3), 29 U.S.C. § 1132(a)(3) (Fourth Claim for Relief, Amended Complaint ¶¶ 182-84);

2.  knowing participation in gratuitous transfers, in violation of ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3) (Fifth Claim for Relief, Amended Complaint ¶¶ 185-88);

3.  aiding and abetting Fenkell in the breach of his corporate fiduciary duties (Twelfth Claim for Relief, Amended Complaint ¶¶ 237-244); and

1

4.  a civil conspiracy with David B. Fenkell (Thirteenth Claim for Relief, Amended Complaint, ¶¶ 256-65).

In response, the Sefcovic Parties have asserted several counter-claims and third-party claims:

1.  In the First Counterclaim, Paul Sefcovic seeks indemnification under ERISA § 502(a)(3) and (g) because he was a member of the Alliance Holdings, Inc. (Alliance) Compensation Committee, and therefore entitled to indemnification under Alliance's by-laws. Doc. No. 91 at 75-76 (Sefcovic Parties Answer, Counterclaims and Third-Party Complaint).[1]

2.  In the Second Counterclaim, Paul Sefcovic seeks indemnification under Pennsylvania law. Doc. No. 91 at 76-78.

3.  The Third Counterclaim seeks contribution and equitable indemnification under federal common law and state law in favor of the Sefcovic Parties and against Alliance and Spear. Doc. No. 91 at 78-79.

4.  The Fourth Counterclaim, asserted by Lianne Sefcovic and SLAMS, alleges that Alliance and Spear breached an "Advisory Services Agreement" contract with Student Loan Management and Research Services, LLC (SLMRS), and that Lianne Sefcovic and SLAMS were the intended third-party beneficiaries of the contract. Doc. No. 91 at 79-80.

5.  Count I of the third-party complaint alleges that Kenneth Wanko, "by virtue of his position with Alliance, caused Alliance to breach the Advisory Services Agreement  between Alliance and SLMRS, and that Lianne

---

[1] Page references to filed documents are to the number assigned by the ECF filing system, which may or may not correspond to the pagination supplied in the original document.

Sefcovic and SLAMS were the intended third-party beneficiaries of the agreement. Doc. No. 91 at 80-81.

In their motion to dismiss, the Alliance Parties argue that

1.    The Sefcovic Parties lack statutory standing to bring a claim under the Employee Retirement Income Security Act ("ERISA") because they are not parties authorized to sue under the statute. 29 U.S.C. § 1132(a).

2.    State-law indemnification and contribution are unavailable because the underlying claims are based on federal law.

3.    The Sefcovic Parties' pleadings do not suffice, under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), because

a.    Paul Sefcovic has not alleged that he has satisfied the contractual conditions to seek indemnification under the Alliance by-laws, and

b.    the Sefcovics and SLAMS fail to plausibly allege any actionable misconduct by Alliance.

c.    Lianne Sefcovic and SLAMS fail to state plausible breach of contract claims against Alliance and Wanko because they were not parties to or third-party beneficiaries of the Advisor Services Agreement, nor do they allege the existence of a valid contract on which their claim could be based.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Twombly*, 550 U.S. at 555. A complaint "does not need detailed factual allegations," but "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556.

The Court of Appeals has made clear that after *Iqbal* "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, a complaint must set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678. In *Fowler* the Court of Appeals set forth a two part-analysis for reviewing motions to dismiss in light of *Twombly* and *Iqbal*:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Id.* at 210-11, *quoting Iqbal*, 556 U.S. at 679. The Court explained that "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (*citing Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'") *Iqbal*, 556 U.S. at 679, (*quoting* Fed. R. Civ. P. 8(a)(2))). The facts must be viewed in the light most favorable to the non-

moving party. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

### A. *ERISA Federal Common Law Contribution Claims*

The Sefcovic Parties disavow that they are ERISA fiduciaries. Doc. No. 91 at 71; 29 U.S.C. § 1002(21); *see Confer v. Custom Eng'g Co.,* 952 F.2d 34, 36 (3d Cir. 1991) ("In determining who is a fiduciary under ERISA, courts consider whether a party has exercised discretionary authority or control over a plan's management, assets, or administration.") Nor do they have any other recognized status under ERISA, such as participant or beneficiary. 29 U.S.C. § 1132(a)(3). The Alliance Parties contend that ERISA does not permit contribution claims by non-fiduciaries, such as the Sefcovic Parties. Doc. No. 125-2 at 4-5. The Sefcovic Parties contend that Federal common-law, under ERISA, permits their contribution claims. Doc. No. 149 at 11-13.

I agree with the Alliance Parties that there is no contribution claim in favor of a non-fiduciary, under federal common law, in response to ERISA liability under *Harris Trust and Savings Bank v. Salomon Smith Barney,* 530 U.S. 238 (2000). I have explained my reasoning elsewhere. Memorandum Opinion, Doc. No. 281 at 4-19.  In the absence of controlling Third Circuit case law, I have concluded that the rationale of *Chemung Canal Trust Co. v. Sovran Bank/Maryland,* 939 F.2d 12, 16 (2d Cir. 1991) (*citing to Firestone,* 489 U.S. at 110), the seminal case providing for contribution between co-fiduciaries faced with ERISA liability, has been undercut in the years since the decision, and that it should not be extended to provide a contribution claim for non-fiduciaries.

5

I will dismiss the Sefcovic Parties' federal common law contribution claims, contained in their Third Counterclaim, in response to the Amended Complaint's Fourth and Fifth Claims for Relief. Doc. No. 68 at ¶¶ 182-88.

### B. *State Law Contribution Claims*

I also agree with the Alliance Parties that only federal, not state law, contribution claims can be asserted against liability arising under ERISA. Again, I have explained my reasons elsewhere. Doc. No. 281 at 19-20. Thus, I will dismiss the Sefcovic Parties' state law contribution claims, contained in their Third Counterclaim, insofar as they respond to the Amended Complaint's Fourth and Fifth Claims for Relief. *See* Doc. No. 68 at ¶¶ 182-88.

By contrast, as I have explained elsewhere, Pennsylvania provides a contribution remedy against the state law claims of the Eleventh and Thirteenth Claims for Relief contained in the Amended Complaint. *See* Doc. No. 281 at 20-34. Nevertheless, contribution between two parties is predicated on them being joint tortfeasors *vis a vis* a third party. *See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F. Supp. 2d 515, 520 (E.D. Pa. 2008). In this instance Alliance Holdings, Inc. cannot be held liable in tort to itself for aiding and abetting Fenkell's alleged breach of fiduciary duty, or conspiring to breach a fiduciary duty to itself. Thus, any contribution claim by the Sefcovic Parties against Alliance Holdings, Inc., in response to the Eleventh and Thirteenth Claims for Relief contained in the Amended Complaint (Doc. No. 68, ¶¶ 228-36, 245-55), must be dismissed.

I will grant the motion to dismiss insofar as the Third Counterclaim seeks contribution against Alliance Holdings, Inc.

### C.  Indemnification Claims

#### 1.  *Common Law Indemnification Claims*

The Sefcovic Parties have asserted a common law claim for equitable indemnification against Alliance and Spear. Doc. No. 149 at 13. The Sefcovic Parties have cited to one case, *Daniels v. Bursey,* 329 F. Supp. 2d 975, 981 (N.D. Ill. 2004), which denied a motion to dismiss indemnification and contribution claims by a fiduciary in response to ERISA claims.  Doc. No. 149 at 14. The district court in *Daniels* adopted the reasoning of *Chemung,* among other cases. 329 F. Supp. 2d at 978-79. As I have indicated elsewhere, I do not find *Chemung* persuasive on its own facts, which involved implication of a right of contribution between co-fiduciaries, nor do I find any warrant for extending the rationale in *Chemung* and *Daniels* to provide a right of common-law indemnification for a non-fiduciary facing liability under *Harris. See* Doc. No. 288 at 11-14. The fact that ERISA itself generally bars voluntary indemnification among fiduciaries, with certain defined exceptions, seems incompatible with the implication of a general common law indemnification remedy for non-fiduciaries who knowingly violate ERISA. 29 U.S.C. §§ 1105, 1110. It is unlikely that the same Congress that determined contractual indemnification for ERISA violations by fiduciaries is "against public policy," with few exceptions, would then invite courts to create a generalized common law indemnification remedy for non-fiduciaries who assist in fiduciary malfeasance.

In addition to the reasons discussed above, a federal common law indemnification remedy likely would track typical state remedies and bar recovery for intentional or active tortfeasors. *See Bank v. City of Philadelphia*, 991 F. Supp. 2d 523, 530-31 (E.D. Pa. 2014) (quoting *Bancroft Life & Cas. ICC, Ltd. V. Intercontinental*

*Mgmt., Ltd.,* No. 10-704, 2012 WL 1150788, at *6 (W.D. Pa. Apr. 5, 2012). *See* Doc. No. 288 at 13. A party found liable under the Fourth or Fifth Claim for Relief would by definition have had some active or intentional role in the alleged ERISA violation. This, too, would bar a common law indemnification remedy.

I have explained elsewhere that under Pennsylvania law there is no common law indemnification remedy for a party who committed an intentional tort. *See* Doc. No. 288 at 13-14. Therefore, there can be no indemnification arising out of the Eleventh and Twelfth Claims for Relief (aiding and abetting a fiduciary breach and conspiracy to commit a fiduciary breach, respectively). Doc. No. 68 at ¶¶ 228-36, 245-55.

The result of all this is that the indemnification claims contained within the Third Counterclaim must be dismissed in their entirety.

### 2. *Paul Sefcovic's Contractual Indemnification Claims*

Paul Sefcovic's First and Second Counterclaims allege he is entitled to contractual indemnification under Alliance's by-laws. The First Counterclaim alleges that this right arises under ERISA. Doc. No. 91 at 75-76. The Second Counterclaim alleges that the right arises under state law.  Doc. No. 91 at 76-78.

As to the First Counterclaim, the Alliance Parties contend that Sefcovic is not among the class of  plaintiffs entitled to bring a claim under ERISA. *See* 29 U.S.C. § 1032(a)(3)  (ERISA § 502(a)(3)). Doc. No. 125-2, at 9-11. Sefcovic argues that he has standing to enforce his contractual right of indemnification as a matter of federal common law developed under ERISA. Doc. No. 149 at 11-13. Sefcovic relies in particular on *Northeast Department of ILGWU v. Teamsters Local Union No. 229,* 764 F.2d 147, 157-59 (3d Cir. 1985), in which the Court of Appeals recognized a federal common law

cause of action on behalf of two entities fighting about who should pay an employee's benefit claim under ERISA.

The Third Circuit has not decided whether contractual indemnification may be asserted in response to an ERISA claim. Cases in the Third Circuit Court of Appeals have held that some federal common law causes of action arise under ERISA and may be asserted by plaintiffs not identified in 29 U.S.C. § 1032(a)(3) (ERISA § 502(a)(3)). *See, e.g. Carl Colteryahn Dairy, Inc. v. W. Pennsylvania Teamsters & Employers Pension Fund,* 847 F.2d 113, 124 (3d Cir. 1988) (an employer can assert a fraud claim under federal common law against pension fund, where the employer was identified as a party who may bring suit for under 29 U.S.C. § 1411); *Northeast Department of ILGWU*, 764 F.2d at 157-59.

ERISA itself contains no language authorizing or permitting the enforcement of such an indemnification agreement, nor does Sefcovic fall within the class of people authorized to bring suit under ERISA. Sefcovic's reliance on *Northeast Department of ILGWU* is problematic. *Northeast Department of ILGWU* was a dispute between two entities over which one owed reimbursement of medical bills to an employee. The Court of Appeals split three ways on the question of exactly how the dispute "arose" under ERISA or federal common law. 764 F.2d 147, 151. Only Judge Becker's opinion adopted a straightforward federal common law theory under which the dispute "arose" under 28 U.S.C. § 1331, the general jurisdictional statute for federal questions. 764 F.2d 147, 157-58. Judge Sloviter opined that this approach had been rejected by the Supreme Court in *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1 (1983), and opted for a narrower theory: that an employer could sue for injunctive relief to prevent incurring a liability prohibited by

ERISA, under the Supreme Court's holding in *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85 (1983). *Id.* at 165. Judge Fullam preferred to resolve the question under subrogation principles, viewing the fund that paid Mrs. Fazio's medical bills as having succeeded to Mrs. Fazio's right to sue under 29 U.S.C. § 1032(a)(3). *Id.* at 167.

The highly unusual circumstances of that case caused Judge Becker to comment that

> finding jurisdiction in cases such as the one at bar . . . would expand the scope of federal jurisdiction over ERISA-related actions only minimally because the vast majority of ERISA cases involving entitlement to benefits will fall under the express jurisdictional provisions of the statute. Indeed, the instant case would have been in federal court without question had not the district court, out of sympathy for Mrs. Fazio, suggested that the parties pay her and reinstitute suit. For the odd case that does not fall under § 1132, a finding of federal jurisdiction promotes certainty and uniformity by having federal courts decide issues of federal common law.

*Id.* at 159. Since two of the three panel members did not adopt Judge Becker's federal common law theory, the case is not a firm foundation for expanding the reach of federal common law to the circumstances presented in this case. Sefcovic does not bring a suit for injunctive relief to prevent imposition of a liability prohibited by ERISA (Judge Sloviter's theory), nor has he inherited standing rights conferred by statute on another (Judge Fullam's). Even under Judge Becker's theory of federal jurisdiction, Sefcovic's *prima facie* claim for indemnification does not involve the interpretation of a plan governed by ERISA, but construction of Alliance's by-laws, which do not apply only to potential ERISA liabilities. By contrast, in *Northeast Department of ILGWU* the dispute involved two plans governed by ERISA, both of which contended the other plan was obligated to pay the employee's health benefit. There was no doubt *someone* had to pay, under ERISA. *Id.,* at 150.

Here, there is no claim by Sefcovic that the contractual right of indemnification was compelled by ERISA. To the extent that it implicates ERISA at all, Sefcovic's claim would be that ERISA does not prevent him from receiving the agreed upon indemnification. But this alignment puts him on the wrong side of *Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1 (1983), the case that occupied a great deal of attention in *Northeast Department of ILGWU. Franchise Tax* teaches that one seeking to avoid a potential federal defense does not present a federal question subject to a federal court's jurisdiction. 463 U.S. at 10-11; *see Northeast Department of ILGWU,* 764 at 156 (Judge Becker), 165 (Judge Sloviter). Sefcovic's claim for indemnification likely is not governed by federal common law, even under Judge Becker's theory, because it does not compel the interpretation of "the meaning and enforceability" of contract provisions contemplated and governed by ERISA, such as the two ERISA plans involved in *Northeast Department of ILGWU. See id.* at 157-58.

*Northeast Department of ILGWU* does not provide a broad charter for the creation of federal common law causes of action, under ERISA, to be asserted by parties not authorized to sue under the statute, nor was it intended to. The case stands for the proposition that under limited circumstances a cause of action might be implied under ERISA, even for a party not authorized to bring suit under 29 U.S.C. § 1132. The more difficult question, whether Sefcovic's case is one of those circumstances, is left unanswered by *Northeast Department of ILGWU.*

Turning to the cases relied on by Alliance, none deal specifically with the question whether a non-fiduciary should be permitted to assert a claim for contractual indemnification when faced with ERISA liability. *See* Doc. No. 125-2 at 9. At least one

court actually has considered the question whether a contractual right of indemnification asserted in response to an ERISA claim arises under federal common law. *See Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709 (N.D. Cal. 1994). *Bourns* permitted a former fiduciary to assert his contractual indemnification claim when faced with an ERISA claim. *Id.* at 712-17. The court held that the contractual indemnification right could be asserted under federal common law arising under ERISA, so long as the indemnification agreement did not violate ERISA's provisions. *Id.* at 714; *see* 29 U.S.C. § 1110; 29 C.F.R. § 2509.75–4 (permitting indemnification by fiduciaries that meet certain criteria).

A difficulty with applying the holding in *Bourns* is that the standing issue present here was unaddressed there. Wells Fargo clearly had standing to bring a claim, since it was a fiduciary, whereas Sefcovic does not claim to be a fiduciary. Another difficulty is that indemnification of fiduciaries is explicitly addressed in ERISA, while indemnification of non-fiduciaries is not addressed. *Id.* Finally, *Bourns* was decided in 1994, well before *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002). Because *Knudson* provides a guide to decision in this case and cuts against the holding in *Bourns*, I am persuaded I should not follow *Bourns*.

In *Knudson* an insurer was entitled under an insurance policy to reimbursement of medical expenses in the event the insured recovered in tort from a third-party. 534 U.S. at 207-209. The insured made a recovery and disagreed with the insurer over how much reimbursement was due, so the insurer brought a suit under ERISA in federal court. *Id.* The Supreme Court held that there was no remedy under ERISA for money damages against the insured, because money damages was not an "equitable" remedy

permitted under ERISA section 502(a)(3), but rather, a classic form of "legal" relief. *Id.* at 209-10. *Knudson* makes it plain that there would be no right, under ERISA section 502(a)(3), to money damages for breach of the indemnification contract at issue in this case.

Our Court of Appeals has taken a careful approach to the creation of federal common law causes of action under ERISA and other statutes. In *Painters of Philadelphia Dist. Council No. 21 Welfare Fund v. Price Waterhouse*, 879 F.2d 1146, 1152 (3d Cir. 1989), the Court of Appeals rejected an effort to imply a right of action under ERISA for professional malpractice in favor of a non-fiduciary, explaining that *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985) "dictated" the result.[2] The Court refused to consider an argument that the remedy could be found under federal common law because the argument had not been raised below. *Id.* The Court in *Trenton v. Scott Paper Co.,* 832 F.2d 806, 810 (3d Cir. 1987), informed by *Russell*, refused to imply a cause of action in favor of employees where there was no remedy explicitly provided in ERISA. Relying on *Russell* and several other Supreme Court cases, the Court of Appeals in *Bowers v. Nat'l Collegiate Athletic Ass'n*, 346 F.3d 402, 420 (3d Cir. 2003) rejected a contribution remedy in the context of a broad remedial statute that supplied no evidence of Congressional intent to provide such a remedy. 346 F.3d at 425-30.

The holding in *Knudson* makes it unlikely that our Court of Appeals would imply a federal common law remedy for money damages under ERISA in this case. The

---

[2] In *Russell* the Court refused to imply a right of action not spelled out in ERISA, relying in part on its opinions in *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77 (1981) and *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981). *Russell,* 473 U.S. at 147.

approach in *Price Waterhouse*, *Scott Paper Co.* and *Bowers* has been to carefully examine both the statute itself and relevant Supreme Court precedent in an effort to discern whether a remedy is permitted. Whether a federal common law right of action should be supplied is closely aligned with the analysis of whether the right of action should be implied under a statute. *See Bowers*, 346 F.3d at 421-23 (applying *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77 (1981) and *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630 (1981)). Sefcovic has supplied no reason to think that where Congress and the Supreme Court (in *Knudson*) have explicitly rejected a contract remedy for damages under ERISA itself, the Court of Appeals would imply the same remedy under federal common law. Accordingly, the First Counterclaim must be dismissed.

Sefcovic's Second Counterclaim mirrors his First Counterclaim, but asserts that his contractual right of indemnification is enforceable under state law. Doc. No. 91 at 76-78. The Alliance Parties do not assert that this counterclaim is preempted by ERISA,[3] but contend that Sefcovic fails plausibly to allege his cause of action. Doc. No. 125-2 at 11-13. Alliance claims that Sefcovic's "illegal conduct with respect to SLAMS has nothing to do with his Compensation Committee indemnities." *Id.* p. 6. As Sefcovic points out, Alliance's position ignores its own Complaint, which alleges that "Sefcovic was aware of

---

[3] The Supreme Court reserved opinion on the issue whether a state law contract claim for reimbursement of insurance benefits would be preempted under ERISA. *Knudson*, 534 U.S. at 220. The question whether a state law contract claim is preempted under ERISA would involve an analysis of whether the state claim "relate[s] to" an employee benefit plan governed by ERISA. 29 U.S.C. § 1144(a); *see Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1185 (3d Cir. 1996).

Fenkell's alleged illegal activities . . . and failed to disclose same to the Compensation Committee." Doc. 149 at 15.

Whether or not the activities for which Sefcovic seeks indemnification fall within – or without – the right of indemnification established in the by-laws is a matter unsuited for resolution on a motion to dismiss. Sefcovic's counterclaim spells out the source of the claimed right in the by-laws, and identifies him as a member of the class of people entitled to indemnification. Doc. 149 at 9-10; Doc. No. 91 at 74, 75. The counterclaim plausibly asserts that this lawsuit is a "claim, action, suit or proceeding" in which Sefcovic is "involved in any manner" as a result of serving as an officer on Alliance's Compensation Committee. *Id.* At least with regard to this argument, the counterclaim sets out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678.

The Alliance Parties argue that Sefcovic's indemnification right is limited by a provision of the by-laws that permits Sefcovic to initiate an "Indemnitee Action" only after having submitted his claim to the Corporation and giving them 30 days to pay the claim. Doc. 125-2 at 12. Since Sefcovic did not submit his claim to Alliance and wait the 30 days, Alliance argues he has no right of indemnification. *Id.* The Alliance Parties contend (and Sefcovic does not dispute) that I may look to the terms of the indemnification agreement, attached to their motion, in resolving the motion to dismiss, citing to *Kernaghan v. BCI Commc'ns, Inc.,* 802 F.Supp. 23 590, 593 n.2 (E.D. Pa. 2011), which in turn cited to *Watson v. Secretary Pa. Dept. of Corrections,* 436 F3d. Appx. 131, 133 (3d Cir. 2011).

Sefcovic argues that, under Pennsylvania law, his failure to submit a claim was discharged by a "supervening impracticability" – *i.e.*, excused by the intervening lawsuit

filed by Alliance. Doc. No. 149 at 15; Doc. 91 at 78. He also argues that his assertion of a Counterclaim is not an "Indemnitee Action," initiated by him, but rather a defensive posture taken up after the filing of the lawsuit by Alliance. Doc. No. 149 at 15. Thus, he argues, since his filing of a counterclaim did not "initiate" an "Indemnitee Action," he is freed from the responsibility to supply Alliance with notice and an opportunity to pay the indemnification claim. *Id.* at 16.

Pennsylvania law applies to the interpretation of the indemnification contract, as this litigation is, at its core, a dispute between a Pennsylvania corporation and a former officer over alleged breaches of fiduciary duties.  *See* Doc. No. 281 at 33-34; Doc. No. 288 at 13-14. This particular ramification of that dispute – whether the corporation's by-laws provide for indemnification of a third party allegedly implicated in the former officer's conduct – introduces nothing that would change the choice of law decision.

The Alliance Parties do not cite to any authority for their argument that Sefcovic's right to indemnification has been forfeited by his failure to comply with the 30 day notice provision in the by-laws. Pennsylvania disfavors forfeitures, and they are strictly construed. *Liazis v. Kosta, Inc.*, 421 Pa. Super. 502, 511-12 (1992) "Forfeitures are odious," said the Supreme Court of Pennsylvania in 1894, and nothing much has changed since then. *Axford v. Thomas*, 160 Pa. 8, 28 A. 443 (1894). The preference is to avoid a construction of the contract that requires forfeiture, and to construe the contract in favor of indemnification, if it is ambiguous. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, No. 86 MAP 2012, 2014 WL 7088712, at *12 (Pa. Dec. 15, 2014); *see* RESTATEMENT (SECOND) OF CONTRACTS, § 227 cmts. b, d (1981).

> The policy favoring freedom of contract requires that, within broad limits . . . the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition

of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture.

*Id.*, at comment b. Here, the contract language is at best ambiguous. Section 2.12(a) of the by-laws provides a right of indemnification "provided, that no such right of indemnification shall exist with respect to an Action initiated by an indemnitee . . . against the Corporation (an "Indemnitee Action") except as provided in the last sentence of this Paragraph (a)." The last sentence of Paragraph (a) provides that an indemnitee "shall be entitled to be indemnified" in three alternative circumstances – the three circumstances are separated by the word "or." These circumstances are (i) institution of an Indemnitee Action under Section 2.12(c); (ii) "if the indemnitee is successful . . . in *another Indemnitee Action*" (emphasis supplied); or (iii) if indemnification is included in a settlement or court award in "*such other Indemnitee Action*" (emphasis supplied). It appears, based on the emphasized language, that the by-laws contemplate two kinds of Indemnitee Actions, either under Section 2.12(c) or "another Indemnitee Action," as the language of Section 2.12(a)(ii) puts it.

Section 2.12(c) provides that if a written claim for indemnification is not paid within 30 days by the Corporation, an "indemnitee *may* at any time thereafter initiate an Indemnitee Action to recover the unpaid amount of the claim and, if successful . . . the indemnitee shall also be entitled to be paid the expense of prosecuting such Indemnitee Action" (emphasis supplied). The language is permissive. There is no language in Section 2.12(c) specifically prohibiting an indemnitee claim in the absence of compliance with the notice and review requirements. The language of subsection 2.12(a) provides an alternative to the Indemnitee Action contemplated under subsection 2.12(c). The difference between this alternative Indemnitee Action and the action

contemplated under subsection 2.12(c) seems to be that the Corporation agrees to pay the Indemnitee's expenses incurred in the Indemnitee Action itself (as opposed to the third-party litigation that generated the claim for indemnification in the first place) if the Indemnitee is successful in an action under subsection 2.12(c). The Corporation also agrees to a limitation on defenses that may be raised in an action brought in compliance with subsection 2.12(c). The effect of section 2.12, when construing its various subsections together, seems to be to confer significant benefits on a party who complies with the notice and review requirements of subsection 2.12(c), but not to extinguish a right to pursue an indemnification action in some other fashion.

At this preliminary stage, it is enough to conclude that the language of Section 2.12 does not compel the interpretation sought by Alliance. I make no finding on the correct interpretation of the contract, which awaits the development of facts about the parties' intentions and course of dealings. The motion to dismiss is therefore denied, as to the Second Counterclaim.[4]

### 3. Lianne Sefcovic's and SLAMS breach of contract claims

Lianne Sefcovic and SLAMS have asserted breach of contract claims in the Fourth Counterclaim (against Alliance and Spear) and in Count I of the Third-Party Complaint (against Wanko). Doc. No. 91 at 79, 80. Alliance argues that (1) there was no contract during the period in question, because Alliance never executed a proposed 2-month extension that would have provided an additional payment of $55,000 to SLMRS, 90% of which would have been paid to SLAMS; (2) neither Lianne Sefcovic and SLAMS were intended third-party beneficiaries of the contract, and so are not entitled to relief; and

---

[4] I need not address the other arguments raised by Mr. Sefcovic in opposition to the motion to dismiss, and I express no opinion on their merits. *See* Doc. No. 149 at 14-16.

(3) Wanko was not a party to the contract, and so cannot be held liable for breach. Doc. No. 125-2 at 15-18.

Lianne Sefcovic and SLAMS contend that (1) Alliance's board minutes approving the two-month extension is a sufficient writing to trigger the extension, and (2) they have alleged sufficient facts to establish their status as third-party beneficiaries under the contract. [5]

Paragraph 30 of the Fourth Counterclaim reads as follows:

30. Upon information and belief, Alliance's Board of Directors approved a two-month extension of the Advisory Services Agreement between Alliance and SLMRS on September 25, 2012. Alliance never executed an extension of the Advisory Services Agreement resulting in a total of $55,000 not being paid to SLMRS for that two-month period of time and a loss of 90% of that dollar amount to SLAMS.

Alliance argues that this allegation alleges the *non-existence* of a contract. Doc. No. 125-2 at 17-18. While it is true that the language of paragraph 30 is awkward, the overall tenor of the Fourth Counterclaim is clear enough: Alliance agreed to pay during the two-month period and breached its obligation. Nor does the Advisory Services Agreement say that an extension, as such, must be executed in order to create an enforceable obligation. Section 5.2 of the Advisory Services Agreement provides that "[n]o amendment . . . of any provision of this Agreement by either party shall be effective unless the same shall be in writing and signed by the party to be bound." Doc. No. 125-4 at 5. In this instance the "party to be bound" is Alliance.  Sefcovic and SLAMS argue that the minutes of the board of directors approving the extension would suffice to bind Alliance. Doc. No. 149 at 22. As the facts must be viewed in the light most favorable to

---

[5] Sefcovic and SLAMS do not dispute Alliance's argument about Wanko. Based on this concession, I conclude that Count I of the Third-Party Complaint should be dismissed.

the non-moving party, *see Big Apple BMW, Inc.*, 974 F.2d at 1363, I find that Sefcovic and SLAMS have adequately pled the existence of a contract.

The second aspect of Alliance's argument is that Lianne Sefcovic and SLAMS – who are concededly not parties to the contract – are not intended third-party beneficiaries and therefore are not entitled to enforce the contract. Alliance cites to *Scarpitti v. Weborg*, 530 Pa. 366 (1992) for the proposition that

> save for a narrow exception that is inapplicable here, a party can establish third-party beneficiary status only by showing that "both contracting parties . . . expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself" . . . *citing Spires v. Hanover Fire Ins. Co.*, 70 A.2d 828, 830-31 (1950).

Doc. 125-2 at 16.

*Scarpatti* in fact stands for something quite different. The Pennsylvania Supreme Court used the quote from *Spires* as the starting point for explaining that a case subsequent to *Spires*, *Guy v. Liederbach*, 501 Pa. 47 (1983), had adopted the RESTATEMENT (SECOND) OF CONTRACTS § 302 (1979) as the appropriate standard for analyzing third-party beneficiary claims. *Scarpitti*, 530 Pa. at 370-71. RESTATEMENT § 302 provides that

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Id.* at 371. The question remains whether under the correct standard Sefcovic and SLAMS have alleged sufficient facts to make their third-party claim plausible, under *Iqbal, Twombly* and *Fowler.* I find that SLAMS has made the requisite showing, and Lianne Sefcovic has not.

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" *Fowler*, 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678 (internal quotations omitted). There must be "sufficient factual matter" in the Fourth Counterclaim "to show that the claim is facially plausible," as to SLAMS and Lianne Sefcovic. *Id.* Paragraph 34 of the Counterclaim alleges only that "Lianne Sefcovic and SLAMS are intended third-party beneficiaries of the Advisory Services Agreement." The two part analysis in *Fowler* requires me to separate legal conclusions from well-pleaded facts. 578 F.3d at 210-11. While the line between well-pleaded facts and legal conclusions is often murky, it is not here. Paragraph 34 is a legal conclusion.

Paragraph 30 of the Fourth Counterclaim, quoted above, plausibly alleges that Alliance's breach resulted in a loss to SLAMS, who was entitled to 90% of the payments made to SLMRS by Alliance under the alleged contract. This fact allegation directly bears on the requirement that "the performance of the promise will satisfy an obligation of the promisee [SLMRS] to pay money to the beneficiary [SLAMS]." *See* RESTATEMENT § 302(1)(a). The allegation suffices under *Fowler's* standard, as to SLAMS.  It is appropriate to recognize the beneficiary's interest in enforcing the contract, in the circumstances of this case, where SLMRS itself has not made a contract claim. *See* RESTATEMENT § 302(1); *Guy*, 501 Pa. 47 at 61 (action by beneficiary was "appropriate" under § 302(1) where contracting party either "cannot or will not" bring suit); Doc. No.

87 (SLMRS chose not to bring counterclaim in contract). I will therefore deny the motion to dismiss the Fourth Counterclaim, as to SLAMS.

Paragraph 30 does not mention Ms. Sefcovic as a person who was entitled to receive a benefit from SLMRS if Alliance paid. Neither do the other allegations of the Fourth Counterclaim, nor of the Answer, incorporated by reference in the Fourth Counterclaim.  Ms. Sefcovic has not pointed me to any allegations that satisfy this particular burden. I have combed through the Answer, in particular paragraphs 49-57 and 111, in an effort to find some facts that would satisfy RESTATEMENT (Second) § 302(1)(a) or (b). I found none. Paragraph 50 of the Answer admits that Lianne Sefcovic "created" SLAMS in 2010. Doc. No. 91. This is not enough. Paragraph 53 of the Answer denies that "Paul and Lianne Sefcovic caused SLMRS to funnel approximately 90 percent of the payments it received from Alliance to SLAMS, for the direct benefit of Paul and Lianne Sefcovic." Doc. No. 91. The denial seems focused on an objection to the verb "funnel," but a denial is a denial. In Ms. Sefcovic's response to the motion, counsel alleges she was the owner of SLAMS, but that allegation is not supported by a reference to Ms. Sefcovic's pleadings. *See* Doc. No. 149 at 21. Nor do I intimate whether such an allegation, if contained in the Counterclaim, would have sufficed under RESTATEMENT § 302. I merely find that the pleading as it currently stands is deficient. Lianne Sefcovic has not alleged facts that plausibly show that payment by Alliance "will satisfy an obligation of the promisee [SLMRS] to pay money to the beneficiary [Ms. Sefcovic] or that the circumstances indicate that SLMRS intended "to give the beneficiary [Ms. Sefcovic] the benefit of the promised performance." RESTATEMENT (Second) § 302(1)(a) and (b).

If given a chance to amend the Fourth Counterclaim, Lianne Sefcovic might be able to articulate "sufficient factual matter" to support the legal conclusion in paragraph 34. Accordingly, I will dismiss the Fourth Counterclaim as to Ms. Sefcovic, with leave to amend by filing and serving an amended Counterclaim within 14 days of the date of the order of dismissal. Alliance shall respond within 14 days after the date the amended Fourth Counterclaim is served on it.

Turning to the breach of contract claim against Mr. Wanko in the Third-Party Complaint, I have reviewed the allegations of the Third-Party Complaint, the Answer and the Counterclaims. Nowhere to be found are allegations that show that Kenneth Wanko was a party to the contract. Rather, the Sefcovic Parties allege that the contract was between Alliance and SLMRS. Doc. No. 91, ¶ 51.[6] Mr. Wanko points out that it "is axiomatic that a person who is not a party to a contract cannot . . . be held liable for the breach of that contract." Doc. No. 125-2 at 16 (citations omitted). I agree. The Sefcovic Parties do not address this particular problem. Doc. No. 149 at 18-23. I don't think there is much that can be said, and so I will enter an order dismissing the Third-Party Complaint.

BY THE COURT:


 *s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge

---

[6] "Defendants aver that any payments by Alliance to SLMRS were made pursuant to and in accordance with a written Advisory Services Agreement between Alliance and SLMRS, in exchange for valuable services that SLMRS provided to Alliance pursuant thereto."