# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

**RICHARD A. LLORET**                                                                                           **April 13, 2015**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM

Plaintiffs Alliance Holdings, Inc. ("Alliance") and Barbie Spear ("Spear") in her capacity as the trustee for the Alliance Holdings Employee Stock Ownership Plan ("Alliance ESOP") filed a Motion for Leave to File a Second Amended Complaint on March 13, 2015. *See* Plaintiffs' Motion for Leave to File Second Amended Complaint ("Plaintiffs' Mot."), Doc. No. 322. Plaintiffs also filed a brief in support of their motion. *See* Plaintiffs' Memorandum of Law in Support of Motion for Leave to File Second Amended Complaint ("Plaintiffs' Br."), Doc. No. 322-2. Plaintiffs' seek leave pursuant to Federal Rule of Civil Procedure 15 to file this Second Amended Complaint to assert new claims against existing defendants and new defendants associated with Stonehenge Financial Holdings, Inc. ("Stonehenge"). Plaintiffs' Mot. ¶ 2.

First, Plaintiffs seek to expand their existing claims against John Witten, Barry Gowdy, Ronald Brooks, and Stonehenge for alleged independent ERISA violations as functional fiduciaries of the Alliance ESOP. *Id.* ¶ 3. They also seek leave to assert a number of existing claims against Bradley Pospichel, Michael Endres, James Henson, Daniel Jessee, David Meuse, and James Pickett. *Id.* ¶ 4 (seeking to add these individuals as defendants to their First, Second, Third, Fourth, Fifth, Twelfth, and Fourteenth Claims for Relief). While these expanded claims may implicate new parties, the

Plaintiffs state that these additional claims "will not require the parties to delve into any new factual territory." *Id.* ¶ 5.

Two parties filed briefs opposing this motion. Defendants David B. Fenkell, Karen G. Fenkell, and DBF Consulting, LLC (the "Fenkell Parties") filed a brief in opposition. *See* Fenkell Parties' Brief in Opposition to Plaintiffs' Motion for Leave to File a Second Amended Complaint ["Fenkell Br."], Doc. No. 332. Though not specifically addressed in Plaintiff's Motion for Leave, the Fenkell Parties argue that additional claims against David Fenkell appear in the Second Amended Complaint. *See* Fenkell Br. at 3. Specifically, the new Prayer for Relief found in Items A(5)-(6) constitute new claims against Mr. Fenkell, while Items A(6) and F include additional claims against DBF Consulting, Mrs. Fenkell, and the Stonehenge Defendants. *Id.* at 4. They request the court deny the motion, or, in the alternative, strike Paragraphs 49, 91, 111, 166(f), 167(b), 170, 180, and 185 from the proposed Second Amended Complaint. *Id.*

The Stonehenge Parties also filed a brief in opposition. *See* Memorandum in Support of Stonehenge Parties' Opposition to Plaintiffs' March 13, 2015 Motion for Leave to File a Second Amended Complaint ["Stonehenge Br."], Doc. No. 336. They oppose this Motion for Leave on multiple grounds. First, they argue the Plaintiffs' motion contradicts prior court rulings, based on a position taken in Alliance's pleadings and briefs, which held Stonehenge was not a fiduciary under ERISA. *See id.* at 2 (citing Motion to Dismiss, Doc. No. 152, ¶ 2 ("The Stonehenge Parties lack statutory standing to bring an ERISA claim because they are not fiduciaries or any other party authorized to sue under ERISA") (citing 29 U.S.C. § 1132(a)); Report and Recommendation of Dec. 12,

2

2014, Doc. No. 281, at 5[1] (stating that Stonehenge Parties are not ERISA fiduciaries) (citing 29 U.S.C. § 1002(21); *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 36 (3d Cir. 1991)).

Second, Stonehenge argues that the Plaintiffs do not satisfy the "good cause" standard under Federal Rule of Civil Procedure 16. Stonehenge Br. at 2. As the Plaintiffs have failed to comply with the Court's prior Scheduling Orders, and their fiduciary theory is premised on a 2003 fee agreement letter that Stonehenge claims was in their possession since at least November 2012, they have not demonstrated "good cause" under the rule. *Id.* at 2-3. Third, they argue that an amendment to the complaint "would impose significant and incurable prejudice." *Id.* at 3. Fourth, Stonehenge argues that this proposed complaint is demonstrative of bad faith and undue delay on the part of the Plaintiffs, "[g]iven that the Plaintiff's new theory is premised entirely upon information that had been in their possession since at least Fall 2012, the timing bespeaks bad faith." *Id.* at 4. Their fifth and final ground is that any amendment to the complaint to add new claims and parties would ultimately be futile. *Id.* at 4. Plaintiffs filed a response to these claims on April 6, 2015. *See* Plaintiffs' Reply Memorandum in Support of Motion to Leave to File Second Amended Complaint ("Pl. Rep. Br."), Doc. No. 337.

I find that Plaintiffs have failed to satisfy the liberal requirements of Rule 15 of the Federal Rules of Civil Procedure. Therefore, I will deny this Motion.

---

[1] That Report and Recommendation also stated that Stonehenge did not "have any other recognized status under ERISA, such as participant or beneficiary." *See* Report and Recommendation of Dec. 12, 2014, Doc. No. 281, at 5 (citing 29 U.S.C. § 1132(a)(3)).

3

## Discussion

### 1. The Relationship of Federal Rules of Civil Procedure 15 and 16

Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave [to amend a complaint] when justice so requires." Rule 16 states that once a scheduling order is in place, "good cause" must be shown by any party seeking to modify the order. *See* Fed. R. Civ. P. 16(b); *Chancellor v. Pottsgrove School Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) (noting that Rule 16 is a "stricter standard" than Rule 15). The *Chancellor* case addresses the differences between Rule 15 and 16. In summarizing the findings of seven different circuit courts, the court in *Chancellor* found that "each of these courts has come to the same conclusion: once the pretrial scheduling order's deadline for filing motions to amend the pleadings has passed, a party must, under Rule 16(b), demonstrate 'good cause' for its failure to comply with the scheduling order before the trial court can consider, under Rule 15(a), the party's motion to amend its pleading." *See* 501 F. Supp. 2d at 701. "Good cause" under Rule 16(b) "focuses on the diligence of the party seeking the modification of the scheduling order." *See id.* (citations omitted). Assuming a party is not diligent, there is no good cause permitting the modification of any scheduling orders and allowing a party to file a motion to amend pleadings. *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

The liberal standard for amendment under Rule 15 is not boundless. "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *See Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Undue delay, bad faith, dilatory motive, and unfair prejudice describe "instances where permitting amendment would be

4

inequitable.²" *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d. Cir. 2002). A court denying a party's leave to amend under Rule 15 must articulate a reason, either inequity or futility, in order to remain consistent with the Federal Rules of Civil Procedure. *See id.* (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs argue in their reply brief that Rule 16, governing the good cause standard, does not apply. *See* Pl. Rep. Br. at 3. They explain that

> [i]n their opposition, the Stonehenge defendants point to an Order entered on August 20, 2013. (Dkt. 61.) But that was not the sort of scheduling order that would trigger Rule 16, as the Stonehenge defendants contend. Instead, in response to the Stonehenge defendants' then pending motion to dismiss filed on July 15, 2013, plaintiffs simply sought additional time under Rule 15(a)(1)(b) to amend their pleading as of right, and the Court—in that specific instance—granted plaintiffs' request. (See Dkts. 60, 61.) The Court did not set a deadline for amended pleadings, nor did it even allude to Rule 16; it simply granted an agreed motion for an extension of time. The Stonehenge defendants do not and cannot point to any other Rule 16 scheduling order entered in this case that imposed a deadline to amend pleadings because there is none.

*Id.* Thus, Plaintiffs argue, the liberal pleading standards found in Rule 15 are applicable, not the "stricter" standards found in Rule 16(b)(4).

Stonehenge contends that Rule 16(b)(4) does apply, as the deadline for filing an amended complaint "had already expired and nothing about the Court's subsequent Order operated to vacate or otherwise modify the earlier amendment deadline. Moreover, key deadlines in other Rule 16 Scheduling Orders also have expired (i.e., completion of document requests and interrogatories), a fact that independently requires the application of Rule 16 to Plaintiffs' Motion." *See* Stonehenge Br., at 22 n. 16. As the

---

² *Grayson* winnows the standard announced three years later in *Hill* down to the principles of inequity or futility. The first four reasons for denying a motion for leave fall under the inequitable standard. The last, that any claims asserted would be futile, is its own standard. The court explained that some of these first four claims overlap, noting, for instance, that "dilatory motive is but an example of bad faith." *See Grayson*, 293 F.3d at 108 n. 7.

5

Plaintiffs cannot establish any good cause, their motion for leave to amend should fail. *Id.* at 23.

As I conclude I should exercise my discretion to deny the proposed amended complaint under Rule 15, I need not resolve the dispute over the applicability of Rule 16.

### 2. <u>Undue Delay and Prejudice Under Rule 15</u>

The Plaintiffs seek to assert additional claims against Stonehenge defendants "based on their newly-discovered status as functional fiduciaries, and to add a few additional Stonehenge-related defendants discovered to have been complicit in—and to have benefitted from—the same underlying series of events." *See* Pl. Resp. Br. at 5. The basis for this motion to amend comes from deposition testimony provided by John Witten ("Witten"), which apparently revealed information regarding a September 2003 amendment to a fee agreement provided Stonehenge with veto power over the Alliance's ESOP's choice of lender for its Section 133 ESOP loan. *See* Pl. Br. at 3. "Witten explained that the purpose of Stonehenge's veto power was 'that [Alliance] agree[s] to do this thing [Stonehenge] want[s] and we will use our best efforts to continue to engage in [the ESOP Structured Finance Program] that we all make money on.'" *Id.* (citing 1/26/15 Witten Dep. at 119:5-18, Exhibit C).

Stonehenge posits a different interpretation of that deposition testimony. They note that "Plaintiffs essentially admit that Mr. Witten's January 26 deposition testimony did not constitute new or previously unavailable evidence, acknowledging that it 'confirmed' the plain language of the 2003 Fee Amendment." Stonehenge Br. at 25 (citing Pl. Br. at 3, 4, 9, 15).[3] The 2003 Letter was in the possession of the Plaintiffs since,

---

[3] Plaintiffs do indeed write that this testimony was a "confirmation" of the plain language of the 2003 Fee Agreement. *See* Pl. Br at 3 ("With these facts now confirmed

6

at the very latest, November 2012. *See* Stonehenge Br. at 2 (citing Exhibit A, Letter from John Witten to Henry Hockeimer). Stonehenge also highlights the fact that letters discussing the September 2003 amendment appear in the initial complaint and the first amended complaint. *Id.* at 2-3 (citing Complaint, Doc. No. 1, Exhibit 3; Amended Complaint, Doc. No. 68, Exhibit 3).

The facts militate against Plaintiffs' motion to amend. The prejudice to other litigants is manifest and unfair. Alliance took a position early in this case that Stonehenge and its principals were not fiduciaries of the ESOP. See Motion to Dismiss, Doc. No. 152, ¶ 2. Stonehenge did not dispute that position, and based on that undisputed fact I entered an order dismissing Stonehenge's contribution claims. *See* Report and Recommendation of Dec. 4, 2014, at 5 (citing 29 U.S.C. § 1002(21)). Discovery to date has been conducted on the assumption that Stonehenge is not a fiduciary of the ESOP. *See* Stonehenge Br. at 15. Discovery is scheduled to close on April 29, 2015. It is inconceivable to suggest that, according to the Plaintiffs, "the amendments will not upset the Court's current schedule." Pl. Br. at 4. This case involves attorneys from numerous states, representing various parties and corporations, who will be required to extend the existing discovery schedule, re-open depositions and re-open written discovery. *See* Stonehenge Br. at 28 n. 20 (outlining the logistical problems of granting this Motion for Leave nearly two years after the filing of the initial complaint).

---

by Witten's testimony. . . ."); *Id.* at 4 ("As confirmed during Witten's deposition testimony. . . ."); *Id.* at 9 ("Based on these newly confirmed facts showing Stonehenge's discretion, control, or authority over ESOP assets or management of the ESOP, plaintiffs seek to amend their complaint to assert additional claims against the current Stonehenge defendants."); *Id.* at 15 ("Witten's deposition confirmed that all of the current individual Stonehenge defendants, along with the new proposed individual defendants, held contractual responsibilities under the ESOP Structured Finance Program.").

7

Further, this Motion for Leave seeks to add a number of new parties to the actions, parties who are currently unrepresented in this matter. The process of retaining and then educating new counsel, along with whatever motion and discovery practice they need, will take months. All of this will take place years after Alliance had in its possession the 2003 fee agreement letter upon which its new fiduciary theory is founded. Mr. Witten's recent deposition was no bombshell. *See* Alliance Br. at 3 (citing 1/26/15 Witten Dep. at 119:5-18). It did nothing to change the contours of this theory, based on the veto power Stonehenge exercised over certain financing arrangements. Rather, as Alliance acknowledges, his deposition simply served to confirm the arrangement. Introducing a contradictory litigation position after depositions have concluded is prejudicial. Doing it after inducing the court to rely on the original litigating position is more so.  Knowing of the claim since before litigation began completes the prejudicial trifecta.[4] Both undue delay and unfair prejudice attend this new theory.

Stonehenge also argues that Plaintiffs' motion was filed in bad faith; less than a week after the submission of a February 24, 2015 status report. *See* Stonehenge Br. at 31. They accuse the Plaintiffs of "lying in wait" to assert claims. *Id.* Plaintiffs respond by

---

[4] As Stonehenge points out, the theory rests on the dubious notion that *unexercised* veto power over Alliance's refinancing choices equals functional fiduciary status. Stonehenge Br. at 41-43 (citing 29 U.S.C. § 1002(21)(A)(i) (noting that a person is a fiduciary if he or she "exercises any discretionary authority or discretionary control respecting management . . . or exercises any authority or control respecting. . . disposition of its assets); *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 914 (7th Cir. 2013) (declining to extend functional fiduciary status to company that could substitute investment funds); *Trustees of the Graphic Commc'n Int'l Union v. Bjorkedale,* 516 F.3d 719, 733 (8th Cir. 2008) (holding that the functional fiduciary subsection's reach is limited to instances where a person actually exercises authority); *Gold Star, Inc. v. Mass Mut. Life Ins. Co.*, 22 F. Supp. 3d 72, 78 (D. Mass. 2014) (writing that "mere possession of authority" is insufficient to show an actual exercise of authority or control)). I need not resolve the more difficult question whether the claim is futile, because I find that there was undue delay in making it and that it is unfairly prejudicial.

8

claiming they had circulated a proposed Second Amended Complaint to all counsel two weeks before filing the Motion for Leave with the court. *See* Pl. Resp. Br. at 11. There is no need to make a finding of bad faith. It remains clear that the Motion for Leave, because of the long delay and previous litigating positions of the parties.

Though Stonehenge makes a number of other arguments regarding the futility of the claims and other theories implicating different ERISA positions, I see no need to address them. The three grounds for denying a motion to amend are in the alternative. Having found two of them satisfied, I do not address the futility argument.

### 3. Judicial Estoppel

Stonehenge argues that judicial estoppel is an appropriate ground for denying this motion. Judicial estoppel is designed to prevent parties from "changing positions according to the exigencies of the moment." *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is applicable when a party asserts one position in a legal proceeding, prevails, and then asserts a contrary position later. *Id.* at 749-50. "In deciding whether to apply judicial estoppel, a court considers various factors, including whether the party's position is clearly inconsistent with its earlier position and whether the party changing position would gain an unfair advantage over the opposing party." *In re Armstrong World Industries, Inc.*, 432 F.3d 507, 517-18 (3d Cir. 2005) (citing *New Hampshire*, 532 U.S. at 750-51).

Judicial estoppel is appropriate when a party has (1) "adopted irreconcilably inconsistent positions," (2) adopted these positions in "bad faith," and (3) the judicial estoppel "is tailored to address the harm and . . . no lesser sanction would be sufficient." *Chao v. Roy's Const., Inc.*, 517 F.3d 180, 186 (3d Cir. 2008). Our Court of Appeals has admonished that judicial estoppel is an "extreme remedy, to be used only "when the

9

inconsistent positions are 'tantamount to a knowing misrepresentation to or even fraud on the court.'" *Id.* (quoting *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,* 337 F.3d 314, 324 (3d Cir. 2003) (quoting *Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 738 n. 6 (8th Cir. 1987)).

In earlier submitted pleadings, Plaintiffs' alleged that Stonehenge lacked statutory standing to bring ERISA claims because they were not fiduciaries under 29 U.S.C. § 1132(a). *See* Motion to Dismiss, Doc. No. 152, ¶ 2. I agreed with Plaintiffs' position, finding that Stonehenge was not a fiduciary duty pursuant to ERISA. *See* Report and Recommendation of Dec. 4, 2014, at 5 (citing 29 U.S.C. § 1002(21)). Now, Plaintiffs wish to assert claims against Stonehenge as an ERISA fiduciary, premised on the fact that Witten's testimony "revealed" that they had veto power over the Section 133 loans. *See* Alliance Br. at 3.  The record does not establish bad faith, the second element of the doctrine. "Bad faith," in the context of judicial estoppel, is "tantamount to a knowing misrepresentation to or even fraud on the court." *Chao*, 517 F.3d at 186 (internal quotations and citations omitted). I find neither occurred.

As for the third element under *Chao*, judicial estoppel is a claim precluding result, an "extreme remedy." *Id.*  Here, I will simply deny Alliance the opportunity to amend its pleading to assert the claim in this litigation. That result is neither claim preclusive nor a sanction.

*s/Richard A. Lloret*

HON. RICHARD A. LLORET

U.S. Magistrate Judge
