| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

RICHARD A. LLORET                                          June 12, 2015
U.S. MAGISTRATE JUDGE

## MEMORANDUM

## Introduction

Plaintiffs[1] and Third-Party Defendants[2] (the "Alliance Parties") have filed a motion to dismiss a number of counterclaims and third-party claims asserted by the defendants and third-party plaintiffs (the Fenkell Parties).[3] Doc. No. 231. The Fenkell Parties have responded (Doc. No. 238), and I held oral argument on the motion on April 22, 2015. The motion covers a variety of counterclaims and third-party claims, and it is helpful to mention and briefly describe those claims at the outset before going through them one by one.

1. *First Counterclaim and First Third-Party Claim*

The first counterclaim is for contractual indemnification against Alliance Holdings, Inc. (Alliance), AH Transition Corp. (AH Transition) and AHI Inc.

---

[1] Alliance Holdings, Inc. ("Alliance"), A.H.I., Inc., and AH Transition Corp., and Barbie Spear, in her capacity as Trustee of the Alliance Holdings, Inc. Employee Stock Ownership Plan ("Alliance ESOP" or "ESOP").
[2] Kenneth Wanko, Eric Lynn and Barbie Spear, in her individual capacity; and third-party defendants Robert Massengill, Raymond Kalouche, Leo Pound, and Thomas Mistler (collectively, the "Outside Directors") (altogether, the "Alliance Parties").
[3] David B. Fenkell, Karen G. Fenkell and DBF Consulting (collectively, the "Fenkell Parties").

(AHI). The first third-party claim is for contractual indemnification claims against Alliance only. Footnote 1 of the third-party complaint explains that there was doubt about the status of Alliance Holdings, Inc., because the amended complaint purported to pursue claims of Alliance Holdings, Inc. as a fiduciary of the Alliance ESOP, but in fact seemed to assert claims on the part of Alliance in its own capacity. Doc. No. 214, at 2 n.1. For this reason the Fenkell Parties also filed a third-party claim against Alliance, on its own behalf and not as a fiduciary.

2. *Second Counterclaim and Second Third-Party Claim*

These are contribution claims against plaintiffs Alliance, AHI, AH Transition and Barbie Spear, by counterclaim, and third-party defendants Alliance (see Doc. No. 214, at 2, n.1), Barbie Spear (in her individual capacity), Kenneth Wanko and Eric Lynn, by third-party complaint.

3. *Third Counterclaim and Third Third-Party Claim*

These claims assert that, assuming Alliance assets were ESOP assets, there were three different prohibited transactions involving Barbie Spear, in violation of 29 U.S.C. § 1106(a), ERISA § 406(a)(1)(D).

4. *Fourth Counterclaim*

The fourth (and last) counterclaim, against Spear and Alliance, asserts that the current lawsuit is a prohibited transaction under 29 U.S.C. § 1106(b), ERISA § 406(b).

5. *Fourth Third-Party Claim*

    The claim asserts that third-party defendants Kenneth Wanko, Eric Lynn and several Doe Defendants engaged in a variety of violations of 29 U.S.C. §§ 1106(a) (party in interest transactions) and 1106(b) (fiduciary transactions).

6. *Fifth Third-Party Claim*

    This claim alleges that Spear, Wanko, Lynn and Doe Defendants knowingly participated in prohibited transactions in violation of 29 U.S.C. § 1132(A)(3).

7. *Eighth Third-Party Claim*

    The Fenkell Parties assert that Alliance directors, including Wanko, Spear and several others, failed to monitor Ms. Spear in her capacity as named Trustee. *See, e.g. Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1464-66 (4th Cir. 1996) (those with the capacity to appoint or remove ERISA fiduciaries are themselves fiduciaries with an obligation to monitor).

8. *Ninth Third-Party Claim*

    The claim seeks declaratory judgment against Spear, Wanko and outside directors to the effect that they are not entitled to indemnification.

9. *Tenth Third-Party Claim*

    David Fenkell, as an ESOP plan participant, asserts a shareholder derivative claim on behalf of the Alliance ESOP against current Alliance directors for an alleged breach of their fiduciary duty under Pennsylvania law for bringing this lawsuit.

*10. Eleventh Third-Party Claim*

David Fenkell, as an ESOP participant, claims that Spear had a duty as an ERISA fiduciary to bring the shareholder derivative suit elaborated upon in the tenth third-party claim (Doc. No. 214, ¶¶ 165-174). Fenkell also claims that other directors breached their fiduciary duty to monitor Spear to ensure that she brought the derivative action. *Id.* Finally, Fenkell claims that directors and officers knowingly participated in Spear's breaches. *Id.*

*11. Equitable Relief*

The Alliance Parties ask that all claims for equitable relief by David Fenkell be dismissed because of unclean hands. Doc. No. 231-2, at 51-52 (ECF page references).

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Because this motion deals with a wide variety of substantive claims, I will discuss the legal standards that pertain to the individual claims when I discuss each claim in detail.

Plaintiffs claim that the counterclaims and third-party claims have not adequately stated a claim for relief, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009). Doc. No. 231-2, at 16. Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556.

The Third Circuit Court of Appeals has made clear that after *Iqbal* "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler,* 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of *Twombly* and *Iqbal*:

> [f]irst, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Id.* at 210-11, *quoting Iqbal*, 556 U.S. at 679. The Court explained that "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has

not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, *quoting* Fed. R. Civ. P. 8(a)(2).

## Discussion

## I. Indemnification: first counterclaim and first third-party claim

Plaintiffs argue that Fenkell's indemnification claims should be dismissed because

> (a) the documents under which the indemnification claims arise bar indemnification as a result of Fenkell's fiduciary misconduct, as found in the *Chesemore*[4] litigation;
>
> (b) ERISA § 410 bars indemnification;
>
> (c) Fenkell's misconduct generally bars indemnification; and
>
> (d) Fenkell's claim for indemnification is premature, and he failed to make a "written undertaking" to pay back the indemnification in the event it turns out he is not entitled to it, as required under the documents providing for indemnification.

Doc. No. 231-2, at 6-11.

Assuming the well-pleaded facts in the counterclaim and third-party claim to be true, as I must under *Iqbal*, *Twombly*, and *Fowler*, I will grant a portion of the relief sought by plaintiff, deny the motion as to the balance of the indemnification claims, and stay the remaining indemnification claims until they mature.

### a. Indemnification based on Fenkell's employment contract

As alleged in paragraph 22 of the Second Amended Third-Party Claim, Fenkell had an employment agreement with Alliance (not the Alliance ESOP) under paragraph 21 of which he is entitled to indemnification for expenses incurred as a Plan

---

[4] *See Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012).

Administrator, and specifically for expenses incurred as a result of the *Chesemore* litigation. Doc. No. 214, at 9, ¶ 22. The plaintiff's argument is focused on whether the Alliance By-Laws and the Alliance ESOP plan documents permit indemnification (*see* Doc. No. 231-2, at 17-22), and mentions the employment agreement only once, in passing. Doc. No. 231-2, at 17.[5] The motion asks me to dismiss all indemnification claims in their entirety. *Id.*

Plaintiff's motion asserts that Pennsylvania law prohibits indemnification "in any case where the act or failure to act giving rise to the claim for indemnification is determined by a court to have constituted willful misconduct or recklessness." Doc. 231-2, at 20 (citing to Pa. C.S.A. § 1746(b) and *Brown v. Creative Collections, Inc.* No. 01-2809, 2002 WL 32345937, at *3 (E.D. Pa. June 10, 2002) (indemnification for intentional acts under an insurance policy was against public policy). This ground for dismissal would apply to Fenkell's indemnification claims under his employment contract, although the employment contract is not mentioned at the point in plaintiffs' brief where the Pennsylvania policy is discussed. *See* Doc. No. 231-2, at 20.

Fenkell has been judged to have breached his fiduciary duties only with respect to the 2007 Trachte deal, which was the subject of the *Chesemore* litigation. His claims for

---

[5] A copy of the employment agreement is attached as Exhibit 6 to the Amended Complaint. Doc. No. 68-6. A copy of an amendment to the employment agreement is attached as Exhibit 7. Doc. No. 68-7. Paragraph 150 of the Amended Complaint references the employment agreement. Doc. No. 68, at 35. Paragraph 150 of the Answer to Amended Complaint states only that the documents "are the best evidence of the contents thereof," and that to the extent the allegations of paragraph 150 are "inconsistent with such document(s), the Fenkell Parties deny the allegations." Doc. No. 168, at 71. The Fenkell Parties adopt the definition of the employment agreement contained in the Amended Complaint in their third-party complaint. Doc. No. 214, at 9, ¶ 22. I take it from all this that the parties agree that Exhibits 6 and 7 to the Amended Complaint are the employment agreement and its addendum. *But see infra* at 8, n. 6.

indemnification in this case go well beyond the *Chesemore* litigation. *See* Doc. 214, ¶ 25 (seeking indemnification for losses incurred in the *Chesemore* litigation, this litigation, and the related Pennsylvania state case).

Fenkell simply does not engage on the issue of whether there is a public policy against indemnification for willful misconduct under Pennsylvania law. *See* 15 Pa. C.S.A. § 1746(b). Doc. No. 238, at 18-25. Pennsylvania's public policy against indemnification for willful misconduct is clear. *Id.*; *see Brown*, No. 01-2809, 2002 WL 32345937, at *3. I find that the lack of argument on the subject is a tacit acknowledgment of the obvious: Fenkell's claims for contractual indemnification for his *Chesemore* expenses cannot be maintained in the face of a clear public policy rejecting such indemnification. Insofar as Fenkell's indemnification claims relate to expenses arising from his defense of the *Chesemore* litigation, they must be dismissed. The intention of the parties or interpretation of the contract is irrelevant in the light of the Pennsylvania public policy. *See Brown*, No. CIV.A. 01-2809, 2002 WL 32345937, at *3 ("Whatever the parties intended for the Agreement language to mean, a contractual provision will not be upheld where it is contrary to a clearly expressed public policy.")[6]

---

[6] Paragraph 22 of the second cause of action in the third-party complaint alleges that Karen Fenkell is entitled to indemnification for defense of the *Chesemore* litigation under the "September 2012 Amendment to Employment Agreement." Doc. No. 214, at 9. The pleading refers to "Section 21 of the Employment Agreement." I have reviewed Exhibits 6 and 7 of the amended complaint. Exhibit 7 purportedly amends Section 21 of the original agreement to provide for indemnification of Karen Fenkell for the *Chesemore* litigation defense costs. Doc. No. 68-7, at 5. I have found no "Section 21" in the original agreement. *See* Doc. No. 68-6. That is likely because pages 8 and 9 of the original agreement have been omitted in the copy of the agreement attached as Doc. No. 68-6. *See* Doc. No. 68-6, ECF page 8 (original document page 7) and page 9 (original document page 10). Paragraph 150 of the Amended Complaint, which references the

To be clear, plaintiffs have not alleged that Karen Fenkell was adjudged to have violated any fiduciary duty. Her claims for indemnification under the employment contract will not be dismissed, but stayed with the rest of the surviving claims.

b.     *Indemnification under the ESOP documents*

In addition to indemnification under his employment contract, Fenkell seeks indemnification under the ESOP documents. Doc. Doc. 214, at 9, ¶ 21.[7] Plaintiffs resist this under the language of the ESOP documents, as well as under Pennsylvania's policy against indemnification of willful misconduct.

The ESOP Plan provides in Section 13.10 that a plan administrator can be indemnified for expenses and liability

> reasonably incurred by him in connection with any action to which he may be a party by reason of his service as a Plan Administrator *except in relation to matters as to which he shall be adjudged in such action to be personally guilty of negligence or willful misconduct in the performance of his duties.*

Doc. No. 231-2, at 8 (emphasis supplied by Plaintiffs); Doc. No. 231-4, at 27. Somewhat more broadly, section 4.1(e) of the ESOP Trust provides for indemnification of the Trustee "except where the litigation is occasioned by the fault of the Trustee or involves a question of the Trustee's fault." Doc. No. 231-2, at 19; Doc. No. 231-5, at 13. Plaintiffs

---

employment agreement as Exhibit 6, does not mention that the copy attached is missing pages. Doc. No. 68, at 35. Plaintiffs should rectify this.

[7] The "ESOP documents" consist of two integrated documents, the "Alliance Holdings, Inc. Employee Stock Ownership Plan" ("ESOP Plan") (Attached to Plaintiffs' Memorandum as Exhibits A.1 and A.2 (Doc. No. 231-3 and 231-4), and the Alliance Holdings, Inc. Employee Stock Ownership Plan Trust Agreement ("ESOP Trust") Attached to Plaintiffs' Memorandum as Exhibit B *(*Doc. No. 231-5).

argue that Fenkell's adjudged misconduct in the *Chesemore* litigation is a total bar of indemnification. Neither the ESOP Plan nor the ESOP Trust supports this reading. Fenkell seems to concede that the effect of the judgment in *Chesemore* is to deny him contractual indemnification for his defense of that litigation. As for the rest of his indemnification claims, they are unaffected by the ESOP Plan's language, as he has not been "adjudged" negligent, or guilty of willful misconduct. The same goes for the Trust: the *Chesemore* litigation's judgment against Fenkell means that the ligation involved "a question of the Trustee's fault." The two documents warrant dismissal of claims arising from the *Chesemore* litigation, but no others.

      *c.*     *Indemnification Claims Arising from the Alliance By-Laws*

Alliance argues that Fenkell cannot be indemnified under the Alliance By-Laws because Fenkell did not provide a "written undertaking . . . to repay the amount advanced if it should ultimately be determined that the indemnitee is not entitled to be indemnified for such expenses." Doc. No. 231-6, at 13, § 2.12(b) (Alliance By-Laws); Doc. No. 231-2, at 11. Fenkell argues that such a "written undertaking" is not required, under the "doctrine of discharge by supervening impracticability." Doc. 238, at 16.

Pennsylvania law applies to this litigation because the core of this case is a dispute between a Pennsylvania corporation and a former officer over alleged breaches of fiduciary duties. *See* Doc. No. 281 at 33-34; Doc. No. 288 at 13-14. This particular ramification of that dispute – whether the corporation's by-laws provide indemnification of a former officer – introduces nothing that would change the choice of law decision.

The Alliance Parties argue that Fenkell forfeited his right to indemnification by his failure to comply with the "written undertaking" requirement in the by-laws. They also contend that I may look to the terms of the by-laws themselves, attached to their motion, in deciding this motion. *See Kernaghan v. BCI Commc'ns, Inc.,* 802 F.Supp. 23 590, 593 n.2 (E.D. Pa. 2011), which in turn cited to *Watson v. Secretary Pa. Dept. of Corrections,* 436 F3d. Appx. 131, 133 (3d Cir. 2011).

Pennsylvania disfavors forfeitures, and they are strictly construed. *Liazis v. Kosta, Inc.*, 421 Pa. Super. 502, 511-12 (1992). "Forfeitures are odious," said the Supreme Court of Pennsylvania in 1894, and little has changed since then. *Axford v. Thomas*, 28 A. 443, 443 (Pa. 1894). The preference is to avoid a construction of the contract that requires forfeiture, and to construe the contract in favor of indemnification, if it is ambiguous. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014) (if there is ambiguity, the contract is to be construed "to further the contract's prime purpose of indemnification"); *see* RESTATEMENT (SECOND) OF CONTRACTS, § 227 cmts. b, d (1981).

> The policy favoring freedom of contract requires that, within broad limits . . . the agreement of the parties should be honored even though forfeiture results. When, however, it is doubtful whether or not the agreement makes an event a condition of an obligor's duty, an interpretation is preferred that will reduce the risk of forfeiture.

*Id.* at cmt. b.

"Contract language is ambiguous if it is reasonably susceptible to more than one construction and meaning." *Pennsylvania Nat. Mut. Cas. Ins. Co.,* 106 A.3d at 14. Here, "it is doubtful whether or not the agreement makes an event a condition of an obligor's duty," in the Restatement's language. Section 2.12(b) by its terms applies to

claims for advancement of defense expenses. This is not the same as the indemnification of expenses incurred by the indemnitee. Advancing expenses saves the putative indemnitee from pulling money out of his or her pocket and making a later claim for reimbursement from Alliance. Understandably, this section provides for an undertaking to repay in the event a court concludes the putative indemnitee is not entitled to indemnification.

Section 2.12(a) of the by-laws provides a right of indemnification by way of reimbursement, as opposed to advancement of fees, "provided, that no such right of indemnification shall exist with respect to an Action initiated by an indemnitee . . . against the Corporation (an "Indemnitee Action") except as provided in the last sentence of this Paragraph (a)." The last sentence of Paragraph (a) provides that an indemnitee "shall be entitled to be indemnified" in three alternative circumstances – the three circumstances are separated by the word "or." These circumstances are (i) institution of an Indemnitee Action under Section 2.12(c); (ii) "if the indemnitee is successful . . . in *another Indemnitee Action*" (emphasis supplied); or (iii) if indemnification is included in a settlement or court award in "*such other Indemnitee Action*" (emphasis supplied). The by-laws contemplate two kinds of Indemnitee Actions, either under Section 2.12(c) or "another Indemnitee Action," as the language of Section 2.12(a)(ii) puts it.

Section 2.12(c) provides that if a written claim for indemnification is not paid within 30 days by the Corporation, an "indemnitee *may* at any time thereafter initiate an Indemnitee Action to recover the unpaid amount of the claim and, if successful . . . the indemnitee shall also be entitled to be paid the expense of prosecuting such Indemnitee Action" (emphasis added). The language is permissive. There is no language

in section 2.12(c) prohibiting a suit in the absence of a "written undertaking." Instead, the effect of that section appears to state that on submission of a written claim, Alliance may evaluate a claim prior to a lawsuit. If Alliance opts not to pay the claim and turns out to be wrong, it pays the expenses for Indemnitee Action as well as the underlying expenses that triggered the indemnification claim in the first place. Absent such a written claim, Alliance undertakes no obligation to pay for expenses and attorney's fees incurred in the Indemnitee Action. The Corporation also agrees to a limitation on defenses that may be raised in an action brought in compliance with section 2.12(c).

In sum, a tenable interpretation of section 2.12 is that if an Indemnitee wishes to have Alliance advance expenses, he or she must provide the written undertaking required in section 2.12(b). Since Fenkell does not seek an advancement of fees, the written undertaking provision of section 2.12(b) does not apply. Doc. No. 214, at 12, 13 (Prayer for Relief). While section 2.12 confers some benefits on a party who complies with the procedures of 2.12(b), it does not require that an indemnification action may only proceed if a "written undertaking" is supplied.[8]

At this preliminary stage, it is enough to conclude Section 2.12 is subject to a reasonable interpretation that does not require a written undertaking. *See Pennsylvania Nat. Mut. Cas. Ins. Co.,* 106 A.3d at 14. I need not (and do not) make a definitive finding about the correct interpretation of the contract.

---

[8] Fenkell also argues that the doctrine of supervening impracticability discharges any duty to supply the written undertaking. Doc. No. 238, at 16. I need not address this argument in light of my conclusion that dismissal is not appropriate for other reasons.

*d.* *ERISA Section 410*

ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110. Alliance argues this section bars Fenkell from indemnification, as a matter of public policy, and that his indemnification claims should be dismissed. Doc. 231-2, at 19. I disagree. As Fenkell points out, he seeks indemnification not from the ESOP assets but from his employer, Alliance. Doc. No. 238, at 19-22. This means his indemnification "falls within the safe harbor provided by 29 C.F.R. § 2509.75-4," because it leaves him fully responsible for fiduciary violations, but permits a party other than the ESOP to pick up the tab if they are contractually liable. *Perlman v. Perlman*, 919 F.Supp.2d 512, 523 (E.D. Pa. 2013). Alliance has reiterated its position that its assets are, at least as of August 2011, no longer ESOP plan assets. If that is the case, indemnification by Alliance is not prohibited. *Id.* Whether the facts may tell a different story after further litigation cannot be resolved on the pleadings.

*e.* *Indemnification Claims are Premature*

Plaintiffs correctly argue that Fenkell's indemnification claims are premature, under Pennsylvania law. *See McClure v. Deerland Corp.*, 401 Pa. Super. 226, 231-33 (1991) (claim for indemnification is premature until expense is actually paid); *Invensys Inc. v. Am. Mfg. Corp.*, No. CIV.A. 04-3744, 2005 WL 600297, at *3 (E.D. Pa. Mar. 15, 2005) (same).

Given that the indemnification claims are premature, the question is whether dismissal without prejudice or a stay is the appropriate remedy. *See Nat'l Cas. Co. v. Tom's Welding, Inc.*, No. CIV.A. 11-3101, 2012 WL 2064451, at *4 (E.D. La. June 7, 2012) (stay, rather than dismissal); *Liberty Mut. Fire Ins. Co. v. Mark Yacht Club on Brickell Bay, Inc.*, No. 09-20022-CIV, 2009 WL 2633064, at *7 (S.D. Fla. Aug. 25, 2009) (stay, rather than dismissal). The law suit in its entirety will not be dismissed, as it was in *Invensys*, 2005 WL 600297, at *9. It seems prudent to stay the remainder of the indemnification claims until they mature.

  f.  Summary

To summarize, I will grant plaintiff's motion to dismiss with prejudice the First Counterclaim and First Third-Party Claim only as to those claims for indemnification arising out David B. Fenkell's defense of the *Chesemore* litigation, based upon Pennsylvania's clear public policy against such indemnification. I find that leave to amend would be futile, cause undue delay, and be unfairly prejudicial to the other parties to this action. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3d Cir. 2004). As to all other claims for indemnification, including Karen Fenkell's contractual indemnification claims, I will deny plaintiff's motion, but stay the indemnification claims until they mature, after the dispute underlying the indemnification claims. A party may move to lift the stay by motion explaining why the indemnification claim has matured.

## II. Contribution: second counterclaim and second third-party claim

As a preliminary matter, defendants have asserted contribution claims against Barbie Spear and Alliance both by counterclaim and third-party claim. There is a lack of

clarity in the complaint about the capacity in which Alliance asserts certain claims. *See* Doc. No. 168, at 110, n.5. Defendants point to no such lack of clarity *vis a vis* Barbie Spear, who appears as a plaintiff only in her capacity as "Trustee of the Alliance Holdings, Inc. Employee Stock Ownership Plan." Doc. No. 68, at 1. Given the identity of theories and allegations between the counterclaim's second cause of action and the second third-party cause of action, I will dismiss all counterclaims against Barbie Spear not explicitly founded upon her capacity as a named Trustee of the ESOP. All claims against Barbie Spear in her individual capacity, or as a fiduciary in some other capacity than as a named Trustee of the ESOP, should be asserted as third-party claims.

a. *Fiduciary status*

Plaintiffs contend that the contribution claims contained in the Second Counterclaim and Second Third-Party Claim should be dismissed because they do not allege the "fiduciary status" of the Alliance parties. Doc. No. 231-2, at 12. Alliance points out that "courts have recognized a right to contribution only among ERISA *fiduciaries*" (emphasis in the original). *Id.* As a result, a party seeking contribution in the context of an ERISA claim must plead facts that demonstrate that the target of the contribution claim was acting as an ERISA fiduciary concerning the events that gives rise to the claim. *Id.*[9] Alliance also alleges that the counts do not adequately allege knowing participation in fiduciary breaches. *Id.* at 17.

---

[9] I have previously ruled that contribution is not available to non-fiduciaries who are facing claims under ERISA. *See* Doc. No. 281, at 5-19. Whether fiduciaries can assert a claim for contribution among themselves is more difficult question, and one that has not been resolved by the Third Circuit. *See id.; Ruggieri v. Quaglia*, CIV. A. 07-CV-756, 2008 WL 5412058, *5, 6 (E.D. Pa. Dec. 24, 2008) (not decided by the Third Circuit); *see In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 549-52 (S.D. Tex.

ERISA defines fiduciary status in three different ways. *Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.*, 93 F.3d 1171, 1179 (3d Cir. 1996). One can be (1) named a fiduciary in the plan documents, (2) appointed to some fiduciary status through action taken pursuant to the plan documents, or (3) one can function as a fiduciary, without the label. *Id.* 29 U.S.C. § 1002(21)(A) describes the ways in which one can become a fiduciary without the label (i.e. as a "non-named" or "functional" fiduciary):

> with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or

---

2005) (discussing divergent approaches). There is a Circuit split on the subject. *Compare Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 866 (8th Cir. 2007) (no right of contribution) and *Kim v. Fujikawa*, 871 F.2d 1427, 1433 (9th Cir. 1989) (same) *with Chemung Canal Trust Co. v. Sovran Bank/Maryland*, 939 F.2d 12, 16 (2d Cir. 1991) (right of contribution for fiduciary), *Alton Memorial Hospital v. Metropolitan Life Ins. Co.,* 656 F.2d 245, 250 (7th Cir. 1981) (assuming without deciding that rights of contribution and indemnity existed), *and Free v. Briody*, 732 F.2d 1331, 1336-37 (7th Cir. 1984) (implying a federal common law remedy of indemnification for an inactive fiduciary against his more culpable co-fiduciary because Congress "intended to protect trustees"); *but see Summers v. State St. Bank & Trust Co.*, 453 F.3d 404, 413 (7th Cir. 2006) (holding that whether ERISA defendants have a right contribution is unsettled, noting that *Alton Memorial Hospital* assumed such a right, but did not "actually discuss the question, which remains an open one in this circuit.") Courts within the Eastern District of Pennsylvania have come to different conclusions. *See Compare Cohen*, 845 F. Supp. at 291 (following *Chemung* by implying a contribution remedy between co-fiduciaries) *and Site-Blauvelt Engineers, Inc. v. First Union Corp.,* 153 F. Supp. 2d 707, 709-10 (E.D. Pa. 2001) (same) *with Glaziers & Glassworkers Union Local 252 Annuity Fund v. Newbridge Sec., Inc.,* 823 F. Supp. 1191, 1194 (E.D. Pa. 1993) (refusing to imply a contribution remedy in favor of a fiduciary).

responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Determination of ERISA fiduciary status is ordinarily a fact-intensive inquiry ill-suited for determination on a motion to dismiss. *See Woods v. Southern Co.*, 396 F. Supp. 2d 1351, 1365 (N.D. Ga. 2005) (citing cases).

### 1. Fiduciary status of Alliance

Defendants have plausibly alleged that Alliance was a fiduciary. Alliance was a named fiduciary "at all times since the Alliance ESOP's inception," a fact not controverted by plaintiffs. Doc. No. 214, at 14, ¶ 32.

### 2. Functional fiduciary status of Barbie Spear

The third-party contribution count alleges that Spear was a functional fiduciary because she exercised discretionary authority and control over the management of the ESOP, disposition of ESOP assets, and administration of the ESOP. *Id.* at 15, ¶ 34. She did so through "the operation of the eligibility and vesting provisions of the ESOP, the determination of participant claims, and other matters involving the administration of the Alliance ESOP" on behalf of Alliance, the Trustee. *Id.* She was the primary point of contact for ESOP participants and worked on ESOP compliance matters with counsel. I*d.* Defendants also claim that if, as plaintiffs allege, the assets of Alliance were in fact assets of the ESOP, then Spear as an officer and employee of Alliance functioned in a variety of ways as a "non-named" fiduciary concerning Alliance assets. *See* Doc. No. 214, at 15-17, ¶¶ 37, 38.

### 3. Functional fiduciary status of Kenneth Wanko and Eric Lynn

The third-party contribution count alleges that Wanko and Lynn were "non-named" fiduciaries because of their high level positions with Alliance and intimate

involvement and control over the negotiation and consummation of the 2007 Trachte deal. *Id.* at 18, ¶¶ 45, 46.[10]

### b.    *Party in interest status*

The third-party complaint's contribution count alleges that Wanko, Lynn, and Spear were ERISA "parties in interest," and knowingly participated in Fenkell's breaches. *Id.* at ¶¶ 36, 47-48. There appears to be no real dispute that as officers and employees of Alliance Wanko, Lynn and Spear were parties in interest. *See* 29 U.S.C. § 1002(14)(H). Similarly, the counterclaim's contribution count alleges that AHI and AH Transition were parties in interest. Doc. No. 168, at 118 ¶ 21; 29 U.S.C. § 1002(14)(C) ("an employer any of whose employees are covered by such plan").

### c.    *"Knowing participation" by AHI and AH transition*

Defendants allege that

> In their capacity as Alliance ESOP parties in interest, AHI and AH Transition had knowledge of the actions of David Fenkell that allegedly constituted the breaches of ERISA fiduciary duty and other violations alleged in the First Amended Complaint and not only did not make any effort to remedy such alleged breaches or violations, but did not even raise or discuss the same, until commencing this action.

Doc. No. 168, at 121, ¶ 29. This falls short of a "knowing participation" claim under *Harris Trust and Savings Bank v. Salomon Smith Barney,* 530 U.S. 238 (2000), for a number of reasons. First, a "knowing participation" claim involving a non-fiduciary must involve a "prohibited transaction." *Id.* at 241. Defendants have not alleged the transactions in which the two entities were involved, nor have they explained why

---

[10] Plaintiffs point out that Judge Conley determined Wanko and Lynn were not fiduciaries in the Chesemore litigation. Doc. No. 231-2, at 16 (citing *Chesemore*, 886 F. Supp. 2d at 1016). While this does not bode well for defendants' theory of liability, the finding does not result in issue preclusion as a matter of law. *See infra*, at 35-36.

the transactions were prohibited. *Twombly* demands much more. 550 U.S. at 555.
Second, the only allegation of knowledge is somehow derived from the entities' status as
"parties in interest." One becomes a party in interest by being an "employer any of
whose employees are covered by" an ESOP plan. 29 U.S.C. § 1002(14)(C). How this
relates to the kind of knowledge of a prohibited transaction that might make one liable
under *Harris Trust,* the reader is left guessing. This is the kind of conclusory allegation
*Twombly* forbids. 550 U.S. at 555. Third, one has to *participate* in a transaction to be
liable under *Harris Trust.* Paragraph 29 alleges the two entities did not make an
effort to remedy breaches of trust and did not mention them to others. This may
demonstrate an unfortunate lack of pluck, but it does not amount to participation.

I will dismiss the second counterclaim against AHI and AH Transition.

d.    *"Knowing participation"*[11] *by Spear*

1.    <u>*Harris Trust* claims for contribution</u>

Defendants argue that they have properly pled facts in the third-party's
contribution count that are sufficient to show knowing participation in prohibited
transactions by Barbie Spear. Doc. No. 238, at 21. Defendants allege that Spear, as a
functional fiduciary and a party in interest, knowingly participated in Fenkell's alleged
breaches of fiduciary duty by facilitating the Alliance transactions involving the
Stonehenge Parties. Doc. No. 214, at 15-17, ¶ ¶ 37, 38.  Spear's acts of facilitation include
communicating with the Stonehenge Parties *(id.* at 16, ¶ 37), maintaining sufficient
payroll to satisfy regulatory requirements germane to the Stonehenge transactions, and

---

[11] It is plausible to believe that Alliance, whether as a fiduciary or on its own account,
knew what Fenkell did. It is not necessary to analyze Alliance's "knowing
participation" in Fenkell's adjudicated and alleged misdeeds.

marketing, negotiating and structuring option contracts to buy companies that would nominally increase payroll to satisfy regulatory requirements. *Id.* As to the Stonehenge transactions, these third-party contribution claims are more than the type of conclusory pleadings, bereft of facts, condemned in *Twombly*, 550 U.S. at 555. The pleadings allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* at 555-56. I will deny the motion to dismiss as it pertains to the third-party claim for contribution against Spear, under *Harris Trust*, arising out of the Stonehenge transactions.[12]

As to any other transactions, the allegations of Ms. Spear's "knowing participation" fall short of the plausibility standard required under *Twombly*. *Id.* The allegations are the kind of conclusory allegations I need not take into account: "In their capacity as Alliance ESOP fiduciaries, Alliance and Barbie Spear knowingly participated in all actions in the First Amended Complaint and in the *Chesemore* Case that have been alleged to constitute alleged breaches of ERISA fiduciary duty by David Fenkell." Doc. No. 214, at 17, ¶ 39. *See Fowler,* 578 F.3d at 210-11. The pleading does not contain facts showing how Spear, as a party in interest, participated—much less knowingly participated—in the variety of breaches and alleged breaches recounted in the amended complaint. To make out a contribution claim defendants have to plausibly allege that Ms. Spear committed a joint tort with Mr. Fenkell. If the chosen theory of liability is *Harris Trust*, defendants have to allege facts showing how Spear knowingly participated

---

[12] I note that Plaintiffs focus on Ms. Spear's alleged lack of knowledge in their brief. Doc. No. 231-2, at 28. I have questioned elsewhere exactly what type of activity constitutes "participation" in a prohibited transaction. *See infra,* at 42, n. 21. As the issue has not been briefed I will leave it for another day.

in prohibited transactions. They have failed to do so, except with respect to the Stonehenge transactions. I will dismiss the third-party contribution claims against Ms. Spear, except for those arising out of the Stonehenge transactions.

### 2. *Spear's liability as a functional fiduciary*

Paragraph 35 of the second cause of action describes the facts that defendants claim show Spear is a functional fiduciary. Doc. No. 214, at 15. In paragraph 38, defendants allege that Spear, in her fiduciary capacity, participated in "the alleged breaches of ERISA fiduciary duty that involved alleged actions by David Fenkell, or other Defendants, as set forth in the First Amended Complaint and in the *Chesemore* case." Doc. No. 214, at 16.

As to the claims based on Spear's alleged status as a functional fiduciary, "nexus" allegations are missing. Title 29 United States Code section 10o2(21)(A) defines the ways in which someone can be a functional fiduciary. *Pegram v. Herdich*, 530 U.S. 211, 225-26 (2ooo) teaches that the "to the extent" phrase in the statute imposes a nexus requirement between the alleged fiduciary status and the assets and transactions in question.[13] In this case there is no connective tissue linking the activities in paragraph 35, defining Spear's functional fiduciary status, with the fiduciary breaches (other than the Stonehenge transactions) alluded to in paragraph 38.

---

[13] Without actually connecting the allegation to any particular contribution claim, defendants allege that Spear exercised discretionary authority over assets of Alliance "alleged to be plan assets of the Alliance ESOP in the First Amended Complaint." Doc. No. 214, at 17, ¶ ¶ 38. These allegations do not add anything to the problem created by the absence of facts that describe how Spear participated in the fiduciary lapses described in the amended complaint.

For instance, the reader is left with zero information about how Ms. Spear's duties "with respect to the operation of the eligibility and vesting provisions of the ESOP" and the "determination of participant claims" intersected with David Fenkell's fiduciary violations outlined in the *Chesemore* case, or with his alleged violations concerning the DBF, SLMRS and Brookdale transactions. *See, e.g.,* Doc. No. 68, at ¶¶ 166-169 (DBF transactions), 170-173 (SLMRS transactions), 180 (Brookdale), 196-202 (*Chesemore* liability). Except for claims based on the Stonehenge transactions, I will dismiss claims for contribution based on Ms. Spear's status as a functional fiduciary.

### 3. Knowing participation and functional fiduciary liability of Wanko and Lynn

As for Wanko and Lynn, the defendants allege that they participated as fiduciaries at a high level and in intimate detail in the negotiation and consummation of the 2007 Trachte deal. *Id.* at 18, ¶¶ 45 (Wanko) and 46 (Lynn). These allegations are more than the type of conclusory pleadings, bereft of facts, condemned in *Twombly*, 550 U.S. at 555. Instead, the pleadings "raise a right to relief above the speculative level" and allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements. *Id.* at 555-56. No more is required. I will deny the motion to dismiss as it pertains to the third-party claim for contribution against Wanko and Lynn arising out of the 2007 Trachte deal.

The defendants also allege that Wanko and Lynn knowingly participated, as fiduciaries and parties in interest, in "all actions" alleged in the amended complaint. *Id.* at 19, ¶¶ 47, 48. There is no description of the fiduciary breaches at issue, and no description at all about how Wanko and Lynn "knowingly participated" in these breaches. The allegations are the kind of conclusory pleadings condemned in

*Twombly*, 550 U.S. at 555. I will grant the motion to dismiss as it pertains to all third-party claims for contribution against Wanko and Lynn not arising out of the 2007 Trachte deal.

  *e.*   *Counterclaim and third-party claim for contribution against Alliance.*

  There are more than sufficient facts alleged in the counterclaim's second cause of action to plausibly establish that Alliance may have committed joint torts with Fenkell in its capacity as one species or another of ERISA fiduciary. *See, e.g.*, Doc. No. 168, at 21-23, 27, 29, 32 (providing the sources of fiduciary responsibility, a description of various transactions over which liability is asserted in the complaint, a description of various transactions over which liability is asserted in the complaint, and an account of Alliance's involvement with these transactions). As to those counts of the complaint in which ERISA fiduciary duties inure to the ESOP and its shareholders, this means a plausible contribution claim has been made out against Alliance. I will deny the motion to dismiss as to contribution claims arising from causes of action other than the amended complaint's Ninth, Tenth, Thirteenth, and Fourteenth claims for relief.

  By contrast, the amended complaint's Ninth, Tenth, Thirteenth, and Fourteenth claims for relief allege duties owed by Fenkell to Alliance, rather than to the ESOP.[14] Alliance cannot be a joint tortfeasor owing a contribution duty to itself. *See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 552 F. Supp. 2d 515, 520 (E.D. Pa. 2008) (contribution is owed by joint tortfeasors to a third party); *see also Mattia v. Sears,*

---

[14] The Ninth claim for relief alleges Fenkell committed fraud against Alliance. Doc. No. 68, at 49. The Tenth claim for relief alleges a violation of Fenkell's fiduciary duty as a corporate officer of Alliance. Doc. No. 68, at 51. The Thirteenth and Fourteenth claims for relief allege that Fenkell and others are liable for civil conspiracies that victimized Alliance. Doc. No. 68, at 56, 57.

*Roebuck & Co.*, 366 Pa. Super. 504, 508 n.2 (1987) (same). The doctrine of contributory negligence is the proper avenue for asserting a plaintiff's contribution to its own injury. *See Alton Mem'l Hosp. v. Metro. Life Ins. Co.*, 656 F.2d 245, 250 (7th Cir. 1981) (no third-party claim against plaintiff for contribution, rather, the claim must be alleged as an affirmative defense of contributory negligence under Fed. R. Civ. P. 8(c)); *see Reott v. Asia Trend, Inc.*, 618 Pa. 228, 241 (2012) (contributory negligence is an affirmative defense under Pennsylvania law). To the extent the counterclaim's second count and the third-party complaint's second count are based upon liability arising from the amended complaint's Ninth, Tenth, Thirteenth and Fourteenth claims for relief, the contribution claims in the two pleadings will be dismissed with prejudice as to Alliance.[15] Leave to amend, as to these claims, would be futile, cause undue delay, and be unfairly prejudicial to the other parties to this action. *See Alston,* 363 F.3d at 235-36.

     *f.    Counterclaims for contribution against Ms. Spear*

I will dismiss the counterclaim for contribution against Ms. Spear, with leave to amend only as to the named Trustee theory of contribution. The counterclaim's demands for contribution against Barbie Spear in any other capacity but as named Trustee are not proper as counterclaims, since she has only appeared as a plaintiff in that limited capacity. Doc. No. 68, at 1. I will dismiss with prejudice any counterclaims not arising from her status as named Trustee. Leave to amend, as to these claims in the context of a counterclaim, would be futile, cause undue delay, and be unfairly prejudicial to the other parties to this action. *See Alston,* 363 F.3d at 235-36. Claims against Spear

---

[15] It is plausible to believe that Alliance, whether as a fiduciary or on its own account, knew what Fenkell did. It is not necessary to analyze Alliance's "knowing participation" in Fenkell's adjudicated and alleged misdeeds.

25

individually, or in any capacity other than as named Trustee, are properly brought in the third-party complaint, and defendants may file a motion for leave to amend their third-party complaint if they deem it necessary to include these types of claims.

This leaves only a theory of contribution against Barbie Spear in her capacity as named Trustee of the ESOP. The defendant does not define when Ms. Spear served as named Trustee of the ESOP, nor does he allege facts that tie fiduciary lapses by Fenkell specifically to Spear's tenure or activity as named Trustee. *See* Doc. No. 168, at 118, ¶¶ 24 (alleging only that Alliance "has appointed" Barbie Spear), 25-32 (allegations concerning participation in Fenkell's alleged misconduct that are not tied to the period when Spear served as Trustee and appear to long precede it); Doc. No. 68, ¶ 10 (alleging that Spear has been the Alliance ESOP's "sole trustee" since July 2, 2012). While the plaintiff's allegation that Spear was "sole" Trustee since July 2, 2012 does not eliminate the possibility that she was one of several Trustees before that, under *Twombly* the defendant bears the burden of alleging well-pleaded facts to show that Ms. Spear participated in the alleged misconduct as part of her tenure and status as named Trustee.

Precision about this issue is particularly important in the context of a contribution claim. Ms. Spear is responsible for contribution, in her capacity as named Trustee, only if she committed a joint tort with Fenkell. *See Pennine Res., Inc. v. Dorwart Andrew & Co.*, 639 F. Supp. 1071, 1075 (E.D. Pa. 1986). Whether an act is a "joint tort" subject to contribution depends upon a variety of factors: whether the injury to the victim is indivisible, whether the same evidence of wrongdoing is involved, whether the tortious acts are severable in time, whether the parties had an opportunity

26

to guard against each other's conduct, and whether liability arises from different legal duties attaching to the different parties. *Id.* at 1074-75. *Twombly*, *Iqbal* and *Flowers* require more than simply saying "contribution." Here, the theory of liability permissible in the counterclaim is quite narrow, and no specific facts are alleged that plausibly "show" joint liability by Ms. Spear in her specific capacity as named Trustee. The motion to dismiss will be granted and the count dismissed, with leave to amend as to Ms. Spear's liability in her capacity as named Trustee.

## III.  Prohibited transactions (Barbie Spear): third counterclaim and third third-party claim

The third counts of both the counterclaim and third-party complaint allege three theories of liability against Barbie Spear, (1) that Ms. Spear breached her duty as a "named" fiduciary, (2) that she breached her duty as a "functional" fiduciary and (3) that she knowingly participated in a number of prohibited transactions involving ESOP assets. Doc. No. 168, at 122-25 (Counterclaim, Third Cause of Action); Doc. No. 214, at 20-24 (Third-Party Complaint, Third Cause of Action). The counts also allege that Barbie Spear received kick-backs in violation of 29 U.S.C. § 1106(b)(3). Both counts base their claim on plaintiff's allegation that assets of Alliance were assets of the ESOP. *See* Doc. No. 168, at 123, ¶ 36; Doc. No. 214, at 21, ¶ 56. If so, the defendant alleges that various payments to Spear are payments to a "party in interest,"[16] in violation of 29 U.S.C. §§ 1106(a)(1)(D) and 1106(b), and illegal kickbacks, in violation of 29 U.S.C. § 1106(b)(3). Fenkell alleges he is entitled to bring these actions in his capacity as a former employee and "participant" in the Alliance ESOP. Doc. No. 168, at 123, ¶34; Doc.

---

[16] There appears to be no dispute that Spear, as an employee and officer of Alliance, fits the bill as a "party in interest." *See* 29 U.S.C. § 1002(14)(C).

No. 214, at 21, ¶ 54. Barbie Spear contends that these counts do not properly allege that Spear caused the questioned transactions, and do not properly allege that Spear was a fiduciary.

### a.  *Realignment of fiduciary liability theories*

For the same reasons I dismissed the second counterclaim as to Barbie Spear, I will dismiss the third: she is only a plaintiff in her capacity as named Trustee, and the allegations as to this particular theory of liability are insufficient. I will grant leave to amend under the same terms as I did with the second counterclaim. Since a claim that Barbie Spear was a "named" fiduciary is properly a counterclaim, not a third-party claim,  I will dismiss that aspect of the third third-party count that alleges "named" fiduciary liability against Spear. This dismissal will be with prejudice, because I find that leave to amend would be futile, would cause undue delay, and would be unfairly prejudicial to other parties. *See Alston*, 363 F.3d at 235-36. To the extent defendants wish to allege "named" fiduciary theories of liability, they must do so by an amended counterclaim.

### b.  *Liability under* <u>*Harris Trust*</u>

In the second cause of action in both the counterclaim and third-party complaint, defendants sought contribution in the event defendants suffer loss. By contrast, the third cause of action in both the counterclaim and the third-party complaint seeks a remedy for David Fenkell, an ESOP participant, against Spear, alleging that she participated in prohibited transactions. *See* Doc. No. 168, at 123 ¶ 34; Doc. No. 214, at 21, 54. To be liable under this theory, Spear need not be a fiduciary; she need only knowingly participate in a transaction prohibited under ERISA. *Harris Trust*, 530 U.S.

at 241. The Court's opinion in *Harris Trust* rested on a careful reading of 29 U.S.C. § 1132(a)(3). *Id.* at 246. That statute provides that a civil action may be brought:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of [ERISA Title I] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations . . .

*Id*; 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)). The Court reasoned that this section permitted an action by a defined class of individuals, "participant[s], beneficiar[ies], or fiduciar[ies]," to pursue "appropriate equitable relief" against any person, not just against a co-fiduciary. *Id.* at 246-47. The Court rejected the "alternative and intuitively appealing interpretation" of the statute proposed by the defendants, that absent an explicit duty imposed on them under ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), they were not among the persons against whom Congress intended to authorize a cause of action. *Id.* at 245, 247.

*Harris Trust* held that liability attaches to any participant in a prohibited transaction, not just to fiduciaries. The question under *Harris Trust* is simply this: does the pleading allege sufficient facts that plausibly show that Barbie Spear knowingly participated in prohibited transactions? The answer is yes.

Defendants assert, and plaintiffs do not dispute, that Barbie Spear is a "party in interest" under 29 U.S.C. § 1002(14). The statute defines a party in interest to include employee and officers of an employer "any of whose employees are covered by" the ESOP. *Id.* at 1002(14)(C),(H). Alliance is such an employer, and Spear is an Alliance employee. Since plaintiffs assert that Alliance assets are plan assets in the complaint (Doc. No. 68, at 8, ¶ 25) defendants assume so, without agreeing. Doc. No. 214, at 21, ¶ 56. If Alliance assets are ESOP assets, so the theory goes, transfers of Alliance assets to a

party in interest – Spear - create presumptively prohibited transfers, for which no exception exists. Doc. No. 214, at 22, 23, ¶¶ 56-60; 29 U.S.C. § 1106(a)(1). In this fashion a number of seemingly mundane Alliance payments to Spear become prohibited transfers in which Spear was a participant.

Plaintiffs argue that there are no allegations that Spear caused the purportedly prohibited transactions. Doc. No. 231-2, at 29. The holding in *Harris Trust* makes this point irrelevant. *Harris Trust* interpreted the statute to permit liability for "knowing participation" in a prohibited transaction, not only for causing a transaction. *Harris Trust,* 530 U.S. at 245, 247. It rejected a competing and "intuitively appealing interpretation" that liability could only be had against fiduciaries who caused prohibited transaction, under 29 U.S.C. § 1106(a). *Id.*

Plaintiffs also contend that the knowledge element in *Harris Trust* liability requires that a person not only engage in a transaction knowingly, *i.e.*, not by accident, but that the person "know the transaction was prohibited and received ill-gotten proceeds of the transaction." Doc. No. 231-2, at 29, n. 11; *Harris Trust*, 530 U.S. at 251. The actual language of *Harris Trust* bears scrutiny: "Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee . . . knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust." *Harris Trust*, 530 U.S. at 251. This means that "the transferee must . . . have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Id.* These "circumstances" about which a transferee must have had "actual or constructive knowledge" "involve a showing that the *plan fiduciary,* with

actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." *Id.*

The "facts satisfying the elements of a § 406(a) transaction" in this instance are that (a) plan assets are involved, (b) that a transfer took place, and (c) that an employee of Alliance (the ESOP fiduciary) was the transferee. Defendants obviously have established that Spear knew that a "transfer" took place, and that Spear was an employee of Alliance. A more puzzling question is whether defendants properly have alleged that Spear knew or should have known that plan assets were involved in the transfer.

Neither party supplies analysis of this precise question, as plaintiffs focused on other avenues of attack and defendants responded in kind. *See* Doc. No. 231-2, at 29-33. The context in which the issue was raised by plaintiffs, in a footnote, was an attack on Spear's fiduciary status, not an analysis of the knowledge requirements. *Id.* at 28-29. I have reviewed the allegations of the third cause of action carefully. There is no explicit allegation that Alliance knew or should have known that the transfers complained of involved plan assets. There is a plausible showing that both Alliance and Spear knew of the facts that trigger the conclusion that Alliance assets were ESOP plan assets. As to whether either Alliance or Spear was subjectively conscious that those facts meant that Alliance assets were plan assets, there is nothing in the third cause of action that addresses the point. At this juncture in the litigation I am not willing to venture an

opinion on the legal issue.[17] It seems best to treat the issue after a full development of the facts and after the parties have addressed the issue in more detail.

I will deny plaintiffs' motion insofar as it is directed at the *Harris Trust* liability theory contained within the third cause of action of the third-party complaint. Because this cause of action is directed to Spear as an individual, I will grant the motion to dismiss the third-cause of action in the counterclaim.

### c.    *Functional fiduciary liability*

Plaintiffs' argument gets more traction against defendant's "functional" fiduciary theory. Plaintiffs argue that defendants have not alleged facts that plausibly show that Spear acted as a functional fiduciary. Doc. No. 231-2, at 31-32. I disagree. The pleading details facts that plausibly show that Spear, as an officer and employee of Alliance, had discretionary authority over Alliance assets. Doc. No. 214, at 21, ¶ 55 (officer and employee of Alliance), and Doc. No. 168, at 123 ¶ 35 (Spear's exercise of authority or control over the management and administration of Alliance, the ESOP, and the disposition of Alliance assets). Since the Alliance assets were ESOP assets under plaintiffs' theory of the case, defendants have plausibly stated a claim that Spear was functional fiduciary over *some* ESOP assets. 29 U.S.C. § 1002(21)(A)(i) (one who "exercises any . . . authority or control respecting management or disposition of [plan] assets" is defined as a fiduciary).

Going a step further, plaintiffs argue that there must be a nexus between the assets over which Spear exercised functional fiduciary capacity and the assets that were

---

[17] This particular point also seems germane to the statute of limitations argument raised by plaintiffs. Doc. No. 231-2, at 35, 36.

part of an allegedly prohibited transfer. Doc. No. 231-2, at 32. Plaintiffs argue that defendants' allegations fall short in this regard. *Id.* A person may be a fiduciary "to the extent" he (1) exercises "discretionary" authority or control respecting plan management, (2) exercises "any" authority or control respecting management or disposition of plan assets, (3) renders compensated investment advice respecting plan property, or (4) has any discretionary authority or responsibility in the administration of a plan. 29 U.S.C. § 1002(21)(A). The "threshold question" is "whether that person was acting as a fiduciary . . . when taking the action subject to complaint. *Pegram v. Herdich*, 530 U.S. 211, 225-26 (2000) (the statute's "to the extent" phrase imposes a nexus requirement between fiduciary status and the assets and transaction in question).

To establish functional fiduciary liability, defendants must allege facts that show one of the four types of fiduciary status, and also show that the alleged fiduciary was "acting as a fiduciary . . . when taking the action subject to complaint." *Id.* Here, the third cause of action alleges Ms. Spear's fiduciary status, but does not connect that status to the acts complained of. For instance, Ms. Spear is allegedly an employee and officer of Alliance. Doc. No. 214, at 21, ¶ 55. She received pay from Alliance. *Id.* at 22, ¶ 57. There is no allegation that she acted as a fiduciary "when taking the action subject to the complaint," *i.e.*, paying wages. In fact, there is no allegation that she even took the action, must less that she took it while having fiduciary status *vis a vis* the assets used to pay the wages. Nor are there allegations that she acted as a fiduciary *vis a vis* the $10,000 allegedly paid by Alliance to defray the cost of her wedding. *Id.* at 22, ¶ 58. The same holds true for the allegation that she received $100,000 from Alliance "in connection with" the Trachte transaction. *Id.* at 22, ¶59. While the third cause of action

need not allege these connections to establish liability under *Harris Trust*, the nexus must be shown in order to show functional fiduciary liability. *See Pegram*, 530 U.S. at 225-26. I will dismiss the allegations of the third cause of action insofar as they purport to allege functional fiduciary liability.

## IV. The Counterclaim's Fourth Cause of Action Against Barbie Spear and Alliance

The counterclaim's fourth (and last) cause of action alleges that Barbie Spear and Alliance, as named fiduciaries, engaged in a prohibited transaction by (a) asserting that Alliance is not an operating company and (b) instituting this lawsuit. Doc. No. 168, at 127, ¶ 45. Plaintiffs contend that the count must be dismissed because (1) these acts cannot constitute self-dealing at the expense of the plan, since any recovery would be on behalf of the plan, and (2) no "transactions" are identified. Doc. No. 231-2, at 34-35. As far as I can tell, defendants have offered no argument specific to this particular cause of action. *See* Doc. No. 238, at 29-33.

Defendants allege that Spear and Alliance engaged in a prohibited transaction under ERISA section 406, 29 U.S.C. § 1106.[18] Doc. No. 168, at 127, ¶ 45. Section 1106 prohibits "transactions" with a party in interest involving plan assets, if the transaction "constitutes" one of five types of action: (1) "sale or exchange, or leasing," (2) "lending of money or other extension of credit," (3) "furnishing of goods, services, or facilities," (4) "transfer to, or use by or for the benefit of a party in interest," and (5) "acquisition . . . of any employer security or employer real property." 29 U.S.C. § 1106(a). Defendants have

---

[18] Paragraph 45 references the correct ERISA section but the wrong statue, section 1108. Doc. No. 168, at 127, ¶ 45. Section 1108 provides exemptions for transactions prohibited under section 1106.

not explained how the filing of a lawsuit or advancing a theory about plan assets as part of that lawsuit "constitutes" one of the five classes of transactions prohibited under section 1106(a). Nor do I see it. Filing a lawsuit and advancing a theory of liability as part of that lawsuit simply do not fit the language of 29 U.S.C. § 1106: they are not "transactions" as that term is used in the statute. There is no indication that Congress meant to include these types of activities as "transactions" prohibited in section 1106.[19]

The same problem arises under 29 U.S.C. § 1106(b). The statute prohibits transactions in which a fiduciary (1) deals with the assets of the plan in his own interest, (2) acts in a transaction on behalf of a party "whose interests are adverse to the interests of the plan" or (3) receives consideration on his own account from a party to a transaction involving plan assets. Dealing, acting and receiving are all actions taken in the context of a "transaction" involving assets of the plan. Again, defendants have not explained how filing this lawsuit or advancing a theory about plan assets fits one of these three types of self-dealing "transactions." As for Spear's act in electing a Board of Directors of Alliance for either "self-dealing purposes" (Doc. No. 168, at 128, ¶ 48) or to "protect her rights of employment" (*id.* ¶ 49), defendants do not explain how this is a "transaction" under section 1106. Doc. No. 238, at 29-34. Nor do I see it. This dismissal will be with prejudice, because I find that leave to amend would be futile, would cause

---

[19] There is a strong presumption against interpreting a statute to prohibit First Amendment petitioning activity, such as filing lawsuits and advancing legal theories within the context of such a lawsuit. *See California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972); *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138-40 (1961); *Mariana v. Fisher*, 338 F.3d 189, 197 (3d Cir. 2003).

undue delay, and would be unfairly prejudicial to other parties. *See Alston*, 363 F.3d at 235-36.

## V.  Fourth Third-Party Claim Against Wanko, Lynn, and Doe Defendants (Prohibited Transactions Assuming Alliance Assets are ESOP Assets)

The fourth cause of action in the third-party complaint alleges that Kenneth Wanko and Eric Lynn, as "parties in interest" of the Alliance ESOP, engaged in several prohibited transactions involving ESOP assets. Doc. No. 214, at 24-30. The cause of action depends upon the assumption that Alliance assets were assets of the ESOP. *See id.* at 25, ¶ 67.

The cause of action alleges that Wanko and Lynn were parties in interest because they were functional fiduciaries, since they "exercised discretionary authority over the management of Alliance, its assets, and the Alliance ESOP and its assets." *Id.* at 25, ¶¶ 66 (Wanko), 71 (Lynn). In particular, the fourth cause of action alleges that Wanko and Lynn exercised significant discretionary authority over the Trachte transaction in 2007. *Id.* Based on Wanko and Lynn's functional fiduciary status, and the assumption that Alliance assets were ESOP plan assets, defendants allege that several payments by Alliance to Wanko and Lynn arising from the Trachte deal were prohibited transfers of plan assets to a "party in interest" to which no exemption applied. *Id.* at 26, ¶¶ 68-69 (Wanko), 72-74 (Lynn).

Plaintiffs argue that there are insufficient allegations that Wanko and Lynn were functional fiduciaries. Doc. No. 231-2, at 36. I disagree. The allegations supply facts establishing a plausible basis to believe that Wanko and Lynn operated as functional fiduciaries with regard to the 2007 Trachte deal, accepting all well-pleaded facts as true.

36

Plaintiffs argue that the *Chesemore* court held that Wanko and Lynn were not fiduciaries with respect to the Trachte litigation. Doc. No. 231-2, at 36. Plaintiffs do not argue that Fenkell is barred by the doctrine of issue preclusion from alleging and proving that Wanko and Lynn were functional fiduciaries, as Fenkell was not aligned as an adversary to Wanko and Lynn in the *Chesemore* litigation. 4/7/2015, Transcript of Oral Argument, at 23. Issue preclusion is an affirmative defense, but may be the basis of a dismissal, under Rule 12(b)(6), if the prior judicial opinion determined the issue, and no fact-finding is needed to determine that the elements are clearly established in the prior opinion. *See M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162-63 (3d Cir. 2010). In this case plaintiffs conceded at oral argument that not all the elements of issue preclusion can be established. I will not dismiss based on a *quasi*-issue-preclusion theory.

Plaintiffs also argue that Fenkell's claims are time-barred under ERISA's 3-year statute of limitations. Doc. No. 231-2, at 36. The statute provides for a 6-year statute of limitations from the date of the "last action which constituted part of the breach," except that no action may be commenced "after . . . three years after the earliest date on which the [third-party] plaintiff had actual knowledge of the breach or violation . . ." 29 U.S.C. § 1113. Plaintiffs claim that Fenkell was president and CEO of Alliance, its only director, and a Trustee of the ESOP, and that he knew that "Alliance's revenues were predominantly non-operating revenues" and knew of "the receipt by Wanko, Lynn, and Spear of payments, if any, in connection with the Trachte sale." Doc. No. 231-2, at 36-37. Plaintiffs also note that the *Chesemore* court determined that when the Trachte sale closed in 2007 "Fenkell knew his interest in the phantom stock plan potentially

conflicted with his obligation to act in the interest of Alliance and the Alliance ESOP."
*Id.* at 36.

Plaintiffs' statute of limitations argument depends upon a determination of exactly when Fenkell knew of the facts that undergird the theory that Alliance assets are ESOP plan assets. Plaintiffs contend that the "*Chesemore* court's holding clearly establishes that Fenkell had actual knowledge of all relevant facts more than three years prior to the filing of his claims in this action." *Id.* at 37. I disagree. The *Chesemore* court's holding related to the fiduciary conflict Fenkell faced as a result of the phantom stock plan at issue in *Chesemore*. Fenkell's theory in this case is based on plaintiffs' allegation that Alliance assets were ESOP assets in 2007. Notice of his conflict of interest over the phantom stock plan underlying the *Chesemore* litigation does not necessarily mean Fenkell had notice of the facts that underlie Alliance's legal conclusion that Alliance assets were ESOP assets. *See* Doc. No. 68, at 5-7, ¶¶ 17-25 (facts about Alliance's operations).

I am left with an affirmative defense and pleadings that do not provide the facts needed to establish the defense. When "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify [a] Rule 12 dismissal." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (quoting *Barefoot Architect, Inc. v. Bunge,* 632 F.3d 822, 835 (3d Cir.2011)); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105, n.13 (3d Cir. 2010) ("For the defendant to prevail . . . the plaintiff's tardiness in bringing the action must be apparent from the face of the complaint") (citation omitted). Fenkell is not required to plead facts sufficient to overcome a statute of limitations defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381

F.3d 267, 277 (3d Cir. 2004) (citing to *Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003)). In this case the knowledge necessary to trigger the 3-year statute of limitations likely means an awareness of the facts that undergird the conclusion that Alliance assets were ESOP assets. The facts establishing that knowledge certainly are not "apparent from the face of the [third-party] complaint." *W. Penn Allegheny Health Sys., Inc.,* 627 F.3d at 105, n.13; *see Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 787 (3d Cir. 2001) (requiring "a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation *but also that those events supported a claim of breach of fiduciary duty or violation under ERISA*" (citation and internal quotations omitted) (emphasis in original)).[20]

I will deny the motion to dismiss the fourth cause of action in the third-party complaint.

## VI.  The Third-Party Complaint's Fifth Cause of Action (Prohibited Transactions Arising out of the 2007 Trachte Deal)

In the third-party complaint's fifth cause of action, David Fenkell, as an ESOP participant, alleges that Kenneth Wanko, Eric Lynn, and Barbie Spear knowingly participated in prohibited transactions involving the 2007 Trachte deal. Doc. No. 214, at 32-35. Plaintiffs argue the cause of action should be dismissed, for several reasons: (1) the allegations of ERISA violations are too vague; (2) there are insufficient allegations establishing that Wanko, Lynn, and Spear were functional fiduciaries with respect to the Trachte transaction; (3) the district court in *Chesemore* held that Wanko and Lynn were

---

[20] Plaintiffs seem to agree that this is the appropriate knowledge standard. *See* cases cited to at Doc. No. 231-2, at 37.

not fiduciaries; (4) there are insufficient allegations of "knowing participation." Doc. No. 231-2, at 37-38. In addition, as to Spear, plaintiffs argue that ERISA does not provide a compensatory damage remedy, only a remedy for restitution of plan assets received in violation of the statute, and there are insufficient allegations that the assets she received were plan assets. *Id.* at 39.

Plaintiffs complain that Fenkell has failed to specify which of the "complex array of fiduciary breaches and prohibited transactions" Wanko, Spear, and Lynn participated in. Doc. No. 231-2, at 37. A related argument is that defendants have not adequately pled that Wanko, Spear, and Lynn "knowingly participated" in prohibited transactions. *Id.* at 38.

The fifth cause of action alleges that that Wanko was the "principal negotiator" of the 2007 Trachte transaction, who "took control of the Trachte sale process," and therefore "knowingly participated in the ERISA violations that were the subject of the *Chesemore* Case." Doc. No. 214, at 32, ¶ 85. In a similar vein, defendants allege that Lynn was the "Alliance portfolio manager" for Trachte and was a member of the board of directors who had full knowledge of all aspects of the 2007 Trachte transaction. Id. at 33, ¶ 87. Spear, as an employee and officer of Alliance, participated in negotiating the 2007 Trachte transaction, "and had full knowledge of the transaction and the consideration to be received" from the transaction. *Id.* at 33, ¶ 89-91.

There is no heightened pleading requirement for ERISA breach of fiduciary duty claims. *See Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (noting Fed. R. Civ. P. 9(b) does not apply to ERISA fiduciary duty claims unless there is an allegation of fraud). Fenkell did not have to plead the different fiduciary violations with the

particularity that would have been required of an allegation of fraud. Here, he has alleged that the district court in the *Chesemore* case held that "Alliance and David Fenkell breached their ERISA duties" (Doc. No. 214, at 32), a shorthand method of defining the prohibited transactions. *See* 886 F. Supp. 2d 1007, 1055 (prohibited transaction by Fenkell), 1056 (fiduciary violation by Alliance for failure to monitor Fenkell). I find that the prohibited transactions are adequately identified so that plaintiffs are on notice of the allegations. Plaintiffs are familiar with the *Chesemore* opinion and the Alliance and Fenkell fiduciary violations are spelled out clearly and succinctly in the opinion.

Plaintiffs also contend that there are insufficient allegations of knowing participation in fiduciary breaches. Plaintiffs argue that "the complaint does not allege that these individuals knew that Fenkell 'exercised his control to arrange a transaction that would use plan assets to benefit him personally' thereby 'enter[ing] a prohibited transaction in his role as a fiduciary,'" Doc. No. 231-2, at 16 (citing to *Chesemore,* 886 F. Supp. 2d at 1056). The fifth cause of action alleges that Wanko, Lynn, and Spear participated in the negotiations of the 2007 Trachte transaction, and had full knowledge of the details of the transaction and the nature of the consideration exchanged. Doc. No. 214, at 31-35. Based on these allegations, the pleading alleges that Wanko, Lynn, and Spear "knowingly participated in the ERISA violations that were the subject of the *Chesemore* Case." Doc. No. 214, at 33, ¶ 87 (as to Lynn); *see id.* at 32, ¶ 85 (Wanko) (same language employed), and *id.* at 34, ¶ 91 (Spear) (same language employed). In addition, the allegations state that Wanko, Lynn and Spear profited personally from the

completion of the transaction. Thus, they had both an opportunity and a motive to "knowingly" participate.

As for what they are charged with knowing about, it was obvious that the stock transaction with Trachte involved a party in interest, and could only avoid being a prohibited transaction if the acquisition was for adequate consideration. *Chesemore*, 886 F. Supp. 2d at 1047. The adequate consideration determination depended on a good faith assessment by the Trachte fiduciaries, since the securities involved were not publicly traded. *Id.* The district court in Wisconsin found that the fiduciaries on the Trachte side were beholden to Alliance, and little more than "cheerleaders" for the premium value paid to Alliance. *Id.* at 1046. The valuation of the deal was quite high, at a price Alliance had tried and failed to get from an independent third-party before turning to an "in house" transaction with a compliant Trachte board. *Id.* at 1054.

It does not take a speculative leap to infer that highly-placed Alliance officers involved in the negotiation of the Trachte deal would know these details. The fifth cause of action alleges "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Twombly*, 550 U.S. at 556. I find that the claim is sufficiently plausible to survive a motion to dismiss. The allegations are not "threadbare recitals of the elements" or "mere conclusory statements." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678). There is "sufficient factual matter" to show plausibly (1) that prohibited transactions took place, (2) that plaintiffs participated[21] in them and (3) that plaintiffs did so knowingly. *Id.*

---

[21] Certainly it appears that Wanko, Lynn, and Spear were "participants" in the ordinary definition of "participant:" "a person who takes part in something." COMPACT OXFORD

Plaintiffs also argue that there are insufficient allegations that Wanko, Lynn, and Spear were functional fiduciaries with respect to the Trachte transaction. Doc. No. 231-2, at 38. A party does not have to be a fiduciary[22] to knowingly participate in a fiduciary violation. *See Harris Trust*, 530 U.S. at 245, 247. For the same reason, it does not matter that the *Chesemore* court found that Wanko and Lynn were not fiduciaries in the Trachte matter.[23] They do not have to be fiduciaries in order to be liable for knowingly participating in a fiduciary violation, under *Harris Trust.*

Plaintiffs contend that Spear is only liable for equitable relief if she received proceeds of the prohibited transactions identified in the *Chesemore* opinion. *See Nat'l Sec. Sys. Inc. v. Iola*, 700 F.3d 65, 87-88 (3d Cir. 2012), cited to in Doc. No. 231-2, at 29. *Iola* makes clear that there is no compensatory damage remedy for a violation of 29 U.S.C. § 1132(a)(3), only an equitable action for restitution of trust assets. *See also Harris Trust*, 530 U.S. at 251; *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 254-55 (1993); *Mellon Bank. v. Levy*, 71 F. App'x 146, 149 (3d Cir. 2003) (dismissal affirmed because there was no allegation defendant received trust assets). The allegation in the fifth cause

---

ENGLISH DICTIONARY, at 740 (3d ed. 2008).Whether that is what "participant" means under 29 U.S.C. § 1132(a)(3) has not been briefed. Plaintiffs focused on the specificity of the knowledge allegations and the detail with which the prohibited transactions were described in the fifth cause of action, and defendants responded in kind.

[22] Plaintiffs' citation to *Renfro v. Unisys Corp.,* 671 F.3d 314, 324 (3d Cir. 2011) is misplaced. That case held that 29 U.S.C. § 1132(a)(3) did not authorize a suit against an entity that was both a non-fiduciary and not a party in interest. *Renfro v. Unisys Corp.*, 671 F.3d 314, 325, n.6 (3d Cir. 2011). Defendants have alleged that Wanko, Lynn, and Spear were parties in interest, as employees and officers of Alliance, and plaintiffs have not disputed that characterization. *See* 29 U.S.C. § 1002(14)(C).

[23] Plaintiffs do not contend that defendants are bound under the doctrine of issue preclusion by this finding in the *Chesemore* litigation. 4/22/2015 Transcript of Oral Argument, at 23-24.

of action is that Spear received a payment "in connection with" the Trachte transaction. Doc. No. 214, at 22, ¶ 59, incorporated by reference at 34, ¶ 92. That is not enough. The fifth cause of action does not rely on the theory that Alliance assets are plan assets, in contrast to the third and fourth causes of action. Spear is alleged only to have received Alliance assets, in the fifth cause of action, not ESOP assets. I will grant the motion to dismiss the fifth cause of action against Spear.

## VII. The Eighth Cause of Action: "Failure to Monitor"

The eighth third-party cause of action alleges that Wanko, Spear, Robert Massengill, Raymond Kalouche, Leo Pound, and Thomas Mistler, as members of the Alliance board of directors, failed to adequately monitor Spear, who allegedly committed fiduciary breaches identified in counts one through four of the counterclaims. Doc. No. 214, at 44.[24]

Plaintiffs argue that because the underlying fiduciary violation allegations fail to state a claim, the failure to monitor claim cannot survive. Doc. No. 231-2, at 40. Plaintiffs also contend that defendants have failed to allege that the directors had notice of the alleged fiduciary breaches, an essential element of a failure to monitor claim. *Id.* at 41. Finally, plaintiffs contend that Spear was not a member of the board when the supposed fiduciary breaches occurred, and therefore had no duty to monitor. *Id.* at 42.

---

[24] The counterclaim causes of action seek indemnification (first cause of action), contribution (second cause of action), a remedy for alleged prohibited transactions in the form of payments to Barbie Spear (third cause of action), and a remedy for alleged prohibited transactions by Barbie Spear and Alliance in bringing this lawsuit and arguing that Alliance assets are ESOP assets (fourth cause of action). Doc. No. 168, at 110-130.

I agree with the plaintiffs' first point, which seems unexceptionable: if there is no fiduciary violation, there is no failure to monitor claim. *See In re Constellation Energy Grp., Inc.*, 738 F. Supp. 2d 602, 614 (D. Md. 2010); *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010). To the extent that the underlying fiduciary violation claims have been dismissed, the derivative failure to monitor claim will be dismissed, as well.

Plaintiffs' second point is that defendants have not alleged the directors had notice of the fiduciary violations. Defendants allege that the directors "knew of the . . . fiduciary breaches . . ." Doc. No. 214, at 44. This suffices. It is not implausible. *Twombly* and *Iqbal* do not require defendants to attach an exhibit book to their pleading in support of each factual allegation. The cases stand guard against factually implausible pleadings that seek to avoid reality by reciting no more than the legal formula defining a claim for relief.

Plaintiffs' third point depends upon a question of fact: the exact dates of Barbie Spear's tenure as a member of the board of directors. Plaintiffs have alleged she was a board member from September 25, 2012 until February 20, 2013. Doc. No. 68, ¶ 10. Defendants have responded that they are without knowledge sufficient to form a belief as to this point. Doc. No. 168, at 6, ¶ 10. Plaintiffs have not asked me to convert the motion to dismiss into a summary judgment motion, nor have they provided an affidavit or undisputed document outside the pleadings upon which I might rely in granting summary judgment. It seems clear enough that if Barbie Spear was not a director at the time a fiduciary breach occurred, she had no duty to monitor.

The theory of this count is founded on the directors' authority to "appoint and remove the Trustee of the Alliance ESOP" and to "monitor the performance of the Trustee of the Alliance ESOP[.]" Doc. No. 168, at 170, ¶ 125. Ms. Spear is the only named Trustee mentioned. Paragraph 126 alleges that "[a]t all times relevant to this Eighth Cause of Action of this Third-Party Complaint, Barbie Spear was serving as the Trustee of the Alliance ESOP." *Id* ¶ 126. The duty to monitor is defined by Ms. Spear's role as named Trustee. *Id.*

Taking the counterclaim's four causes of action in order, the first cause of action is not founded on a breach of fiduciary duty but on an agreement to indemnify. There can be no breach of a duty to monitor if there is no allegation of fiduciary breach. I will dismiss with prejudice the failure to monitor claim, insofar as it purports to be based on the first count of the counterclaim. I find that permitting amendment would be futile, would cause undue delay, and would be unfairly prejudicial to the other parties. *See Alston*, 363 F.3d at 235-36.

I have dismissed with leave to amend the second and third counts of the counterclaim, insofar as they are based on liability of Ms. Spear as a named Trustee. I also have dismissed with prejudice any other claims against Ms. Spear, because the claims are properly brought by third-party complaint. The failure to monitor claims will be dismissed under the same conditions, and for the same reasons.

The fourth count of the counterclaim advanced a theory that filing this lawsuit and pursuing certain theories postulated in the lawsuit constituted knowing participation in a prohibited transaction. I dismissed this count with

prejudice. The derivative failure to monitor claim also is dismissed with prejudice, for the same reason.

Paragraph 130 of the eighth count alleges that the various directors are liable for (a) knowing participation in co-fiduciary breaches, (b) enabling co-fiduciary breaches through their own breaches and (c) knowing of co-fiduciary breaches and not taking reasonable efforts to remedy them. Doc. No. 168, at 171. These are the sort of legal conclusions that I may safely disregard, under *Fowler*, 578 F.3d at 210-11. I cannot decipher what paragraph 130 would add to the rest of the count that would save it from dismissal. Given the breadth and extent of the rest of the counterclaims and third-party claims brought in the hundreds of pages written by defendants, I cannot see how permitting the defendants to expand on the allegations of paragraph 130 will move the litigation forward. I find that permitting amendment would be futile, would cause undue delay, and would be unfairly prejudicial to the other parties. *See Alston*, 363 F.3d at 235-36.

The plaintiffs' motion to dismiss the eighth cause of action will be granted. The nature of the dismissal – with or without prejudice – will track the disposition of the underlying fiduciary claims against Ms. Spear, insofar as the claims are based on allegations that she breached a duty as a named Trustee. As to paragraph 130, the dismissal will be with prejudice.

## VIII.  The Ninth Cause of Action: Declaratory Relief

Defendants seek a declaration that Wanko, Spear, and other directors are not entitled to indemnification under the ESOP trust agreement. Doc. No. 214, at 46-47. Plaintiffs note that the ESOP trust agreement provides for indemnification of the

trustee, and that defendants do not allege that Wanko and the other directors were ESOP trustees – nor could they. Doc. No. 231-2, at 43. Second, plaintiffs argue that Fenkell has no standing to bring the claim, because the indemnification, if it is paid, comes from the plan sponsor (Alliance), not the ESOP. *Id.* Fenkell's standing is founded on his status as a participant of the ESOP. Since the ESOP will suffer no loss if Alliance pays to indemnify the trustee, Plaintiffs argue that Fenkell has no standing. *Id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992) (plaintiff must suffer a concrete and particularized injury in fact to have constitutional standing)). Plaintiffs also argue that the claim is not ripe, since defendants do not allege there have been any indemnification claims yet. *Id.*

In the context of a declaratory action, the doctrine of "ripeness" demands that I examine three factors: "[1] the "adversity of interest" between the parties, [2] the "conclusivity" that a declaratory judgment would have on the legal relationship between the parties, and [3] the "practical help, or utility," of a declaratory judgment." *Armstrong World Industries v. Adams*, 961 F.2d 405, 411 (3d Cir. 1992) (quoting *Step Saver Data Sys. v. Wyse Tech*, 912 F.2d 643, 647 (3d Cir. 1990)).

The contingent nature of the indemnification right asserted here undercuts the vitality of all three *Armstrong* factors. It is certainly possible that events may pan out in such a way that no indemnification claim will be asserted, which makes the "adversity" of the parties "minimal." *Id.* at 420. The same contingency undercuts the "conclusivity" of the declaratory judgment. *Id.* at 422. If I were to grant declaratory judgment today, the parties would still have nothing more than an "if, then" advisory opinion, dependent on whether a claim for indemnification comes to fruition. *Id.* It is not clear that a

declaratory judgment at this point would have "would have . . . [a] significant effect on either plaintiffs' or defendants' course of conduct." *Id.* at 423.

A claim that is not ripe, under the Constitution's "case or controversy" clause, is non-justiciable. *See Acierno v. Mitchell*, 6 F.3d 970, 974 (3d Cir. 1993); *Morgan v. McCotter*, 365 F.3d 882, 887-88 (10th Cir. 2004). A court does not have jurisdiction over such a claim, and dismissal is appropriate. *Acierno*, 6 F.3d at 978. The concept of ripeness can implicate both Constitutional and prudential concerns. *Id.*, at 974. In this instance I am convinced that the case is not ripe, in a Constitutional sense. This is not a case in which the allegedly unripe claim is merely one of two claims in the alternative, so that in a straightforward and concrete way the outcome of the litigation will determine which of the two alternative remedies is triggered. *See Dimensional Music Publ'g, LLC v. Kersey ex rel. Estate of Kersey*, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006) (plea in the alternative should not be analyzed under ripeness doctrine). Indemnification might never be made, no matter what the outcome of this litigation.

I will dismiss the ninth cause of action without prejudice.

## IX. The Tenth Cause of Action: Shareholder Derivative Action Against Alliance Board Members

In the tenth third-party cause of action Fenkell, as an ESOP participant, brings a shareholder derivative claim on behalf of the ESOP against officers and directors of Alliance. Doc. No. 214, at 49. Fenkell claims that Wanko, Spear, Lynn, Robert Massengill, Raymond Kalouche, Leo Pound and Thomas Mistler breached their fiduciary duties under Pennsylvania law to the sole Alliance shareholder (the ESOP). *Id.* The specifics of the claim are that the third-party defendants (a) asserted in the

complaint in this litigation that Alliance and its subsidiaries are not operating

companies, the consequence of which is that Alliance assets are ESOP assets, and (b)

spent Alliance money to pursue their claim. *Id.* at 51. Defendants allege the third-party

defendants have been unjustly enriched by taking these positions, but do not explain

how. *Id.* at 52, ¶ 157(c).

a. *Fenkell's standing as an "equitable shareholder"*

Plaintiffs argue that Fenkell does not have standing to bring this derivative action

because he is not an Alliance shareholder, and his status as an ESOP participant does

not "confer on him the rights of a shareholder." Doc. No. 231-2, at 48. Fenkell disagrees,

claiming that as an ESOP participant he is an "equitable shareholder" with standing to

pursue this derivative action. Doc. No. 238, at 50.

The parties argue two sides of an issue that has not been decided by either the

Court of Appeals for the Third Circuit or by the Pennsylvania courts. The question is

whether under Pennsylvania law an ESOP participant has standing, as an "equitable

shareholder," to bring a shareholder derivative claim against Alliance, granting that the

ESOP itself is the only shareholder in Alliance. Citing to *In Re U.S. Sugar Corp. Litig.,*

669 F. Supp. 2d 1301, 1325-26 (S.D. Fla. 2009), plaintiffs argue that the answer is "no."

Citing several other cases, defendants argue that the answer is "yes." Doc. No. 238, 15

51. *See Housman v. Albright,* 368 Ill.App.3d 214, 219-20 (2006) (under Delaware law

ESOP participants were equitable stockholders who could maintain a shareholders'

derivative suit); *State ex rel. Elish v. Wilson,* 189 W. Va. 739, 745-46 (1993) (same);

*Brown v. Dolese,* 154 A.2d 233, 239 (Del. Ch. 1959) (equitable owner of shares has

standing to bring derivative claim); and *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d

399, 407-08 (7th Cir. 2000) (holding that ESOP participants were only potential shareholders and had no standing under Delaware law).

Pennsylvania choice-of-law rules control, and Pennsylvania law governs the substance of this issue, since it involves the internal affairs of a Pennsylvania corporation. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179, n. 10 (3d Cir. 2005). The parties have not cited to any Pennsylvania cases deciding the issue, nor have I found any.[25] There are several jurisdictions that have permitted an equitable shareholder to pursue a derivative action. *See Edgeworth v. First Nat. Bank of Chicago*, 677 F. Supp. 982, 993 (S.D. Ind. 1988) (citing to cases from the Fifth, Seventh, and Tenth Circuits); *see also* A. Eric Kauders, Jr., *Corporate Law*, 33 U. RICH. L. REV. 841, 855, n. 108 (1999) (Florida, West Virginia and Delaware permit such an action). Given the uncertain state of Pennsylvania law, I will not grant a motion to dismiss on this basis.

>    b.    *Lack of demand on the Board of Directors*

Plaintiffs argue the claim should be dismissed because defendant did not make a demand on the board of directors, in compliance with Pennsylvania law. Doc. No. 231-2, at 44, citing to *Warden v. McLelland*, 288 F.3d 105, 110-11 (3d Cir. 2002) (citing to *Cuker v. Mikalauskas*, 692 A.2d 1042 (Pa. 1997)). Plaintiffs point out that Federal Rule of Civil Procedure 23.1 requires that Fenkell must plead with particularity his efforts to demand or otherwise obtain relief from the board, or his reasons for not obtaining relief or making the effort. *Id.* at 45. Plaintiffs also point out that Pennsylvania law does not recognize a "futility" exception to the demand

---

[25] At least one older Pennsylvania Supreme Court case suggested, under very different circumstances, that an equitable shareholder had standing to pursue shareholder remedies. *See Carter v. Producers' & Refiners' Oil Co.*, 164 Pa. 463, 467 (1894).

requirement; rather, a showing that the demand would have caused irreparable harm is the only excuse. *See Warden,* 288 F.3d at 111.

Fenkell argues that under section 7.01(d) of the American Law Institute's Principles of Corporate Governance,

> the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

Doc. No. 238, at 49. Fenkell points out that *Cuker*, the case cited in *Warden*, invited Pennsylvania courts to consider ALI principles other than the ones adopted in *Cuker* (sections 7.02 – 7.10 and 7.13), and several Pennsylvania courts have applied section 7.01(d) in cases involving closed corporations. *Id.* (citing to *Warden,* 288 F.3d at 112-13). Alliance is a closed corporation, since it has only one shareholder, the Alliance ESOP.

It seems sensible to reserve decision on whether to apply section 7.01(d) until summary judgment. Section 7.01(d), if applicable, permits me to exercise discretion to waive a pre-suit demand on Alliance. While Alliance is technically a closed corporation, it is obvious that there are many, many participants in the Alliance ESOP. It is not clear to me, at this juncture, whether section 7.01 should be applied in this particular case, nor is it clear that I should exercise discretion to waive the pre-suit demand requirement. A decision on these points will benefit from focused argument by counsel and a more complete factual record.

c.    *Business judgment rule*

Plaintiffs also argue that the decision to commence suit was protected by the business judgment rule, and that Fenkell has failed to allege facts sufficient to overcome the business judgment rule. Doc. No. 231-2, at 47. Pennsylvania's version of the business judgment rule insulates a director from liability for a business decision made

> (1) in good faith; (2) where the director or officer is not interested in the subject of the business judgment; (3) is informed with respect to the subject of the business judgment to the extent he reasonably believes to be appropriate under the circumstances; and (4) rationally believes that the business judgment in question is in the best interests of the corporation.

*In re Lampe,* 665 F.3d 506, 516-17 (3d Cir. 2011). Plaintiffs contend that defendants have not pled facts "that would defeat application of the business judgment rule," but point to no cases holding that a party needs to plead around this affirmative defense. *See In re Tower Air, Inc.,* 416 F.3d 229, 238 (3d Cir. 2005) ("Generally speaking, we will not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint under Rule 12(b)(6)") (citing *In re Adams Golf Inc. Sec. Litig.,* 381 F.3d 267, 277 (3d Cir.2004)).[26] The cases cited to by the plaintiffs involved resolution of this issue at trial. *See, e.g., Viener v. Jacobs,* 834 A.2d 546, 557 (2003) (refusing to apply business judgment rule after trial); *In re Zambrano Corp.,* 478 B.R. 670, 676 (Bankr. W.D. Pa. 2012) (bankruptcy trial). Defendants have pled that the decision to proceed with litigation was tainted with the

---

[26] Interestingly, plaintiff in *In re Tower Air, Inc.* affirmatively pled that the Delaware business judgment rule did not vitiate his complaint. 416 F.3d at 238. Plaintiff was stuck with having to overcome an affirmative defense raised on the face of its own pleading. *Id.* Even so, and even with Delaware's significantly more protective version of the business judgment rule, plaintiffs avoided dismissal of a number of counts. *Id.* at 239-42.

directors' self-serving intent to protect their financial position. Doc. No. 214, at 51¶
57(a)-(b). Whether the business judgment rule insulated the directors' decision
cannot be resolved on a motion to dismiss.

        *d.*      *Failure to conform with Fed. R. Civ. Pro. 23.1*

        Plaintiffs correctly argue that the defendant has failed to comply with the
pleading requirements of Fed. R. Civ. P. 23.1(b), which imposes a number of
particularized pleading requirements on a shareholder derivative complaint. Doc. No.
231-2, at 45.

        I will dismiss the Tenth Cause of Action with leave to amend.

## X.    Eleventh Third-Party Cause of Action: Failure to Bring a Shareholder Derivative Action, Failure to Monitor, and Knowing Participation

        In the eleventh third-party cause of action, Fenkell claims that Barbie Spear, as
an ESOP Trustee, breached her fiduciary duty by failing to bring a shareholder
derivative action against Alliance Board Members (including herself). Doc. No. 214, at
59, ¶ 172. The grounds of the shareholder derivative action Fenkell alleges Spear should
have brought are set out in the tenth third-party cause of action and reiterated in ¶¶
160-171 of the eleventh cause of action. *Compare id.* at 48-53 *with id.* at 54-59. Fenkell
also alleges that the Alliance Board members (Robert Massengill, Raymond Kalouche,
Leo Pound, and Thomas Mistler) breached their duty to monitor Spear to ensure she
brought the shareholder derivative claim. *Id.* at 173. Finally, Fenkell alleges that
Kenneth Wanko and Eric Lynn, as well as Massengill, Kalouche, Pound and Mistler,
knowingly participated in the breaches of fiduciary duty alleged in the eleventh count.
*Id.* at 174.

The eleventh cause of action is predicated on the tenth. I have chosen to dismiss the tenth cause of action only because of non-compliance with Fed. R. Civ. P. 23.1. I have rejected the more substantive bases for dismissal. Since Rule 23.1 does not apply to the eleventh cause of action, I will not dismiss the eleventh cause of action.

## XI. Equitable Relief

Plaintiffs seek to dismiss Fenkell's claims for equitable relief, based on his "unclean hands." Doc. No. 231-2, at 51. I will deny this motion for various reasons. The doctrine is an affirmative defense. *See In re Gabapentin Patent Litig.*, 648 F. Supp. 2d 641, 651 (D. N.J. 2009). Ordinarily, a party is not required to "plead around" an affirmative defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d at 277. The doctrine applies "when a party seeking relief has committed an unconscionable act immediately related to the equity the party seeks in respect to the litigation," but the "nexus between the misconduct and the claim must be close." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (citation and internal quotation omitted). The elements of the doctrine demand a fact-intensive analysis of the nature of the alleged wrongful conduct, the claim for relief, and the relationship between the two. *See In re New Valley Corp.*, 181 F.3d 517, 524-25 (3d Cir. 1999).

Plaintiffs' motion attempts to use the defendant's adjudicated wrongful conduct in regard to one deal in 2007 as a defense to every claim by the defendant arising out of any and all transactions. This may or may not be appropriate, but it is certainly not self-evident that the law or the facts of this case require such a result. Alliance itself was adjudicated to have committed fiduciary violations in the *Chesemore* litigation, which may affect how I apply the equities in this situation. Application of the doctrine is not

mandatory, but lies within the sound discretion of the court, reason enough not to apply it to grant a motion to dismiss. *Id.* Exactly how (or whether) common law equitable defenses, such as "unclean hands," should be applied in response to a claim for relief under ERISA is an issue that may be more fraught than one would suppose. *Cf. US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1546-47 (2013) (Third Circuit's application of equitable principles to mitigate recovery of reimbursement under ERISA vacated and remanded based on an interpretation of ERISA statutory policy).

The motion to dismiss Fenkell's equitable claims will be denied.

## XII.  Conclusion

I will enter an order denying plaintiffs' motion in part and granting it in part.


BY THE COURT:


_s/Richard A. Lloret_____
RICHARD A. LLORET
U.S. MAGISTRATE JUDGE