IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SPEAR, et al. | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | |
| FENKELL, et al. | : | NO. 13-02391 |

RICHARD A. LLORET  June 26, 2015
U.S. MAGISTRATE JUDGE

**MEMORANDUM**

In a case captioned *Alliance Holdings, Inc. v. Squire Patton Boggs*, 14-cv-05780 (E.D. Pa. 2014), Alliance Holdings ("Alliance") sued its former attorneys, Squire Patton Boggs ("Squire"), claiming Squire gave Alliance bad advice on ERISA related transactions. Doc. No. 1. Alliance, as trustee for the Alliance ESOP, sued Stonehenge in this case over some of the same transactions. *See Spear et. al. v. Fenkell et. al.*, 13-cv-2391, Doc. No. 68. Alliance and Squire have been discussing settlement. Stonehenge has subpoenaed Squire and other law firms working on the settlement negotiations, seeking a copy of the settlement agreement. Alliance has moved to quash the subpoenas. Stonehenge argues the settlement agreement is discoverable information.

The policies underlying Fed. R. Evid. 408 and Fed. R. Civ. P. 26(b) are in tension. Rule 408 prohibits the admission of a settlement agreement only for a narrow set of purposes. Rule 26(b) provides for wide ranging discovery of evidence that is relevant "to a claim or defense," or is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). For good cause, a court may order discovery of "any matter relevant to the subject matter involved in the action." *Id*. For good cause, a court may enter a protective order forbidding or limiting discovery into certain matters. Fed. R. Civ. P. 26(c)(1)(A),(C).

1

A strong public policy encouraging settlement animates Rule 408. The rule severely restricts adverse use of settlement agreements and negotiations. Fed. R. Evid. 408(a). The policy underlying Rule 408 has led courts to adopt a more demanding standard than Rule 26(b)(1) when it comes to discovery of settlement agreements. *See In re Flat Glass Antitrust Litig.*, No. 11-658, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013). A party seeking discovery of a settlement agreement must make a particularized or heightened showing of relevance or need. *See Doe v. Methacton Sch. Dist.*, 164 F.R.D. 175, 176 (E.D. Pa. 1995) (party seeking discovery of a settlement agreement must meet heightened showing of relevance or need); *Fid. Fed. Sav. & Loan Ass'n v. Felicetti*, 148 F.R.D. 532, 534 (E.D. Pa. 1993) (effect of particularized showing is to switch burden of proof to the party seeking discovery); *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (party seeking discovery of settlement agreement must introduce evidence that the agreement is collusive).

The Third Circuit has not addressed the issue. The rule in the Seventh and Second Circuits is that a settlement agreement may not be discovered unless there is independent evidence that it is collusive. *See Grant Thornton,* 886 F.2d at 1046; *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co. of Chicago,* 834 F.2d 677, 684 (7 Cir.1987). This rule has the benefit of being clear and simple to administer. Stonehenge has not made any showing of collusion.

Courts in the Eastern District of Pennsylvania have imposed a "heightened" or "particularized" showing of relevance or need. *See Methacton Sch. Dist.*, 164 F.R.D. at 176. This heightened standard puts the burden on the party seeking discovery, *Felicetti*, 148 F.R.D. at 534. The question is what "heightened" or "particularized" mean, exactly.

Clearly it means a more substantial requirement than ordinarily applied under Fed. R. Civ. P. 26(b).

Rule 408 provides that a settlement agreement may not be introduced to show the amount or validity of a disputed claim, or to "impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). The rule permits admission of a settlement agreement for a few other purposes, "such as proving a witness's bias or prejudice [or] negating a contention of undue delay[.]" Fed. R. Evid. 408(b). Rule 408, like its kin, Fed. R. Evid. 404, sets out prohibited and permitted uses of certain evidence. At a minimum, then, it is reasonable to require a party seeking discovery of a settlement agreement to show that the agreement is relevant to a permitted purpose under Rule 408. *Cf. United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992) (party seeking to introduce other bad acts under Rule 404(b) must explain the inferential chain which ties the evidence to a proper purpose, and no part of the inferential chain can involve an inference forbidden by the rule). This more "particularized" showing of relevance contrasts with the general standard of relevance in Rule 401, which requires only that evidence be relevant to any fact of consequence to a determination of the action.

Evidence Rule 401 requires only that evidence have a "tendency" to make a fact of consequence more or less likely. The case law requires a "heightened" showing of relevance when seeking discovery of a settlement agreement. It seems appropriate to require that a party show a "likelihood" that the evidence will prove a fact of consequence, rather than a mere tendency. *See Methacton Sch. Dist.*, 164 F.R.D. at 176.

I find that the "heightened" and "particularized" showing of relevance under *Methacton Scho. Dist.* and *Felicetti* means that Stonehenge bears the burden of showing

3

that the settlement agreement is likely to be admissible for a permitted purpose, under Rule 408. The standard is less demanding than the showing of collusion required under *Grant Thornton* and *Mars Steel Corp*. Neither does it require Stonehenge to make the kind of showing required before one can obtain attorney work-product. *See, e.g.* Fed. R. Civ. P. 26(b)(3); *Raso v. CMC Equip. Rental, Inc.*, 154 F.R.D. 126, 128 (E.D. Pa. 1994) (party must show substantial need for the materials and an inability to acquire them elsewhere without substantial hardship). The standard takes into account the policy under Rule 408 while permitting discovery if there is a showing that the document is likely to be admissible for a permitted purpose.

Stonehenge lists several reasons why they would like to have the settlement agreement:

> the settlement agreement and the Alliance litigation with Stonehenge concern the same "spread" transactions;
>
> in the Squire action Alliance alleges a "scheme" by David B. Fenkell, former head of Alliance, and Carl Draucker, a Squire partner;
>
> Alliance has admitted that Squire knew about the DBF Consulting agreement and payments, which form part of the claim against Stonehenge;
>
> Stonehenge's chief counsel spoke with Draucker about the spread transactions, and DBF, and was not advised of legal problems;
>
> Draucker advised Fenkell on the DBF transactions;
>
> Barbie Spear, an officer with Alliance, testified at her deposition about Squire's advice, saying she "wasn't allowed to go to the bathroom without calling Carl Draucker."
>
> Squire's advice is at issue in the case against Stonehenge.

Doc. No. 374, at 4-5.

Listing these reasons is not the same as explaining why the settlement agreement is likely to be relevant to a permitted purpose under Rule 408. The reasons advanced by

4

Stonehenge boil down to a desire to show (1) the validity or invalidity of claims and defenses; (2) the amount of the claim, or facts that might diminish the amount of a claim; (3) inconsistency in positions taken by either Alliance or Squire. Doc. No. 374, at 5-7. All these are forbidden purposes under Fed. R. Evid. 408.

Stonehenge does suggest one potentially legitimate purpose: if the settlement agreement contains an agreement by Alliance to indemnify Squire from future claims, this might tend to prove bias on the part of a Squire witness at trial. Doc. No. 374, at 7. This assumes such an indemnification agreement, and assumes a Squire witness at trial. Stonehenge has not shown that either supposition is likely. If there is some special reason to believe Alliance was motivated to indemnify Squire against claims triggered by Squire's advice to others, Stonehenge has an obligation to advance it. "Broad assertions" about witnesses that might be produced at trial, and the need to impeach them, are not enough. *See Methacton Sch. Dist.*, 164 F.R.D. at 176; *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1. Notwithstanding the lack of such a showing, it does not seem burdensome to require Alliance to produce a redacted copy of the settlement agreement, containing the names of the parties and dates of agreement, signature of the parties, and any indemnification provisions between Squire and Alliance. This will provide Stonehenge what it needs to impeach a potential Stonehenge witness for bias.

Stonehenge has not shown the "heightened" or "particularized" relevance or need for the settlement agreement that the cases require. *See, e.g. Key Pharm., Inc. v. ESI-Lederle, Inc.*, No. CIV. A. 96-1219, 1997 WL 560131, at *2-4 (E.D. Pa. Aug. 29, 1997) (showing particularized reasons why the settlement agreement itself would be a patent violation and restraint of trade). The motion to quash the subpoenas will be granted.

5

Alliance will be ordered to supply a redacted version of the settlement agreement as I have described above.

                                        **BY THE COURT,**

                                        *s/Richard A. Lloret*
                                        **RICHARD A. LLORET**
                                        **U.S. Magistrate Judge**