IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

RICHARD A. LLORET                                                                                            August 19, 2015
U.S. MAGISTRATE JUDGE

## MEMORANDUM

### Introduction

The Fenkell Parties, defendants,[1] filed a motion to dismiss (Doc. No. 267) the First Amended Cross-claims of Student Loan Management and Research Services, LLC (SLMRS). Doc. No. 252, at 12-15. SLMRS has responded. Doc. No. 280.

SLMRS' first cross-claim alleges misrepresentation and fraud against the defendant, David B. Fenkell. Doc. No. 252, at 11. The second cross-claim alleges that the defendants Fenkell and DBF Consulting, LLC (DBF) combined with others to "conceal from SLMRS ERISA violations that occurred as a result" of an advisory services agreement between the plaintiffs (the Alliance Parties) and SLMRS. *Id.* at 12, ¶ 299. The third cross-claim alleges that SLMRS detrimentally relied upon Fenkell and others in entering into the advisory services agreement with Alliance Holdings, Inc. *Id.* at 13; *see* Doc. No. 68, at 13 (¶ 52 of the First Amended Complaint). The fourth cross-claim seeks indemnity and contribution against Fenkell. Doc. No. 252, at 14.

The Fenkell Parties contend that the cross-claims are deficient under the familiar standards prescribed for review of a Rule 12(b)(6) motion in *Ashcroft v. Iqbal*, 556 U.S.

---

[1] David B. Fenkell, Karen G. Fenkell and DBF Consulting (collectively, the "Fenkell Parties").

662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *See* Doc. No. 267-1, at 6. The Fenkell Parties argue that count one of the cross-claims fails to satisfy the elements of fraud, under Pennsylvania law, and is deficient under Fed. R. Civ. P. 9(b), which requires that fraud be pled "with particularity." *Id.* at 7. The Fenkell Parties contend that count two fails to allege the elements of conspiracy, in particular, the commission of an overt act "by Mr. Fenkell or DBF Counsulting, LLC." *Id.* at 11. The Fenkell Parties also argue that there is no allegation of "'substantial assistance' to someone who performed wrongful conduct," an essential element of aiding and abetting. *Id.* at 12.  Fenkell argues that the detrimental reliance claim fails because SLMRS does not allege what promise or inducement Fenkell made that formed the predicate for SLMRS' reliance. *Id.* at 13.

Finally, Fenkell argues that SLMRS is not entitled to contractual or common law indemnity or contribution under Pennsylvania law: first, because there was no contractual indemnity, and second, because SLMRS has not pled the elements of a claim for either indemnity or contribution. *Id.* at 14-15.

### Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The party seeking dismissal has the burden of "showing no claim has been stated." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be

enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* at 556.

The Third Circuit Court of Appeals has made clear that after *Iqbal* "conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), *quoting Iqbal*, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of *Twombly* and *Iqbal*:

> [f]irst, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Id.* at 210-11, *quoting Iqbal*, 556 U.S. at 679. The Court explained that "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id.* (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, *quoting* Fed. R. Civ. P. 8(a)(2).

3

For fraud claims, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a party "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America,* 361 F.3d 217, 223–224 (3d Cir.2004). One can comply with Rule 9(b) by alleging "the date, time and place of the alleged fraud" or by otherwise "inject[ing] precision or some measure of substantiation into a fraud allegation." *Id.* (citing to *Lum,* 361 F.3d at 224).

## Statement of Facts

The cross-claims are quite brief. To the extent that language contained in the cross-claims is pertinent, it will be mentioned in the discussion. The allegations of the First Amended Complaint pertaining to SLMRS are more detailed, and it is helpful to summarize them here. *See* Doc. No. 68 (First Amended Complaint). SLMRS has explicitly referred to the allegations of the First Amended Complaint in its cross-claims. Doc. No. 252, at 11, ¶292; at 12, ¶ 299; at 13, ¶ 301; at 14, ¶ 305.

Fenkell was the president and CEO of Alliance Holdings, Inc. (Alliance) until 2012. Complaint, Doc. No. 68, at 2. Alliance had an employee stock ownership plan (ESOP). *Id.* The ESOP owned 60% of the stock of Alliance directly, while AH Transition Corporation (AH) owned 40% of Alliance's stock. *Id.* at 5. AH was wholly owned by the ESOP. *Id.* The assets of Alliance were assets of the ESOP, and were subject to ERISA's demanding requirements. *Id.* at 6. During Fenkell's tenure, "no one except Fenkell had fiduciary responsibility with respect to the ESOP[,] since Fenkell was the ESOP's sole

4

trustee. He was also the sole member of Alliance's Board of Directors and Alliance's President and CEO." *Id.*

During his tenure Fenkell caused

> Alliance and/or the Alliance ESOP to enter into contracts with corporate entities operated by Fenkell's business associates/friends. Pursuant to those contracts, the corporate entities were purportedly to provide services to Alliance, its subsidiaries, and/or the Alliance ESOP. In actuality, the corporate entities provided little or no services at all, but still received payments of Alliance ESOP plan assets under the contracts.

*Id.* at 2.

Fenkell arranged an "Advisory Services Agreement" between Alliance and SLMRS, under which Alliance paid SLMRS approximately $660,000 over a two year period, but received "no services." *Id.* at 13. SLMRS was a "party in interest" under ERISA, as was a related entity, Student Loan Advisory Management Services (SLAMS). *Id.* SLAMS owned a 90% interest in SLMRS, while an affiliate of Hiram College owned a 10% interest. *Id.* SLMRS paid 90% of the income received from Alliance to SLAMS, and 10% to the Hiram College affiliate. *Id.* at 14. Paul Sefcovic, a long-time friend of Fenkell's, along with his wife, Lianne Sefcovic, operated SLAMS. *Id.* The Sefcovics also "effectively controlled" SLMRS. *Id.* at 13. Paul Sefcovic was an attorney who served as "Chair of Alliance's Compensation Committee from at least 2005 until in or around September 2012." *Id* at 27.

## Discussion

**1.     Count One: Fraud and Misrepresentation**

Pennsylvania courts do not distinguish between fraud and intentional misrepresentation. *Giordano v. Claudio*, 714 F. Supp. 2d 508, 518 (E.D. Pa. 2010). The elements of the tort are

5

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (citations omitted).

SLMRS notes that its fraud claim is based upon the detailed allegations of the First Amended Complaint. *See* Doc. No. 280, at 7. SLMRS does not point out any allegations in the First Amended Complaint (Doc. No. 68) that Fenkell or DBF made material misrepresentations to SLMRS upon which SLMRS relied, to its detriment. *Id.* at 7-9. One would not expect such allegations. I have independently reviewed the First Amended Complaint. It contains much of interest about the relationship between the Fenkell Parties and the Alliance Parties, but says nothing about fraudulent misrepresentations by the Fenkell Parties directed to SLMRS, or detrimental reliance by SLMRS. Fraud must be alleged with particularity, under Fed. R. Civ. P. 9(b). *See California Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004). The pleadings must be precise and provide a measure of substantiation. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984). A necessary corollary is that one cannot satisfy the rule by referring to the particulars of a fraud against someone else.

I will grant the motion to dismiss the first cross-claim with leave to amend within 14 days of the order of dismissal.

### 2. Count Two: Aiding and Abetting, and Conspiracy to Conceal

The elements of a civil conspiracy are (1) an agreement between two or more people (2) to do an unlawful act, or a lawful act by unlawful means, (3) with malice, *i.e.*, an intent to injure. *See Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224,

235 (1997). The second cross-claim alleges that "if the allegations of the First Amended Complaint are true, Fenkell, DBF, Alliance, the Sefcovics, and SLAMS combined in order to conceal from SLMRS ERISA violations that occurred as a result of the Advisory Services Agreement." Doc. No. 252, at 12, ¶ 299. This is clear enough to put the Fenkell Parties on notice of the nature of the claim: that they intentionally combined with others to conceal from SLMRS the fact that by entering into the Advisory Services Agreement they would be exposed to ERISA liability. [2] The gist of defendants' argument is that Mr. Fenkell "never communicated with SLMRS . . . and therefore could not have induced SLMRS to enter into the Advisory Services Agreement . . ." Doc. No. 267-1, at 11. The short answer is that Fenkell did not have to directly induce SLMRS to enter into the Advisory Services Agrement in order to participate in a conspiracy to do so by wrongful means. SLMRS alleges that Fenkell, DBF and others "combined . . . to conceal from SLMRS ERISA violations" arising from the Advisory Services Agreement. Doc. No. 252, at 12. One might construe this as an allegation that intentional non-disclosure was the object of the conspiracy and the tortious predicate of the aiding and abetting claim. *See Gibbs*, 538 Pa. at 208 n. 12 ("The tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation[]") (citation omitted). The burden is on the Fenkell Parties to establish the basis for dismissal. Since the parties have not focused their argument on the presence or absence of an underlying tort, I will assume it is adequately pled and will deny the motion to dismiss the conspiracy claim.

---

[2] Whether concealment of ERISA violations is an unlawful act was not briefed by either party. As I note below, intentional non-disclosure is likely a tort recognized in Pennsylvania.

As the Fenkell Parties point out, aiding and abetting[3] is different from conspiracy. Doc. No. 267-1, at 12. SLMRS has to show (1) a breach of duty owed to SLMRS by another; (2) that the Fenkell parties knew of the breach of duty; and (3) that the Fenkell Parties gave substantial assistance or encouragement to the breaching party in committing the breach. *See Matlack Leasing, LLC*, No. CIV.A. 09-1570, 2010 WL 114883, at *11 (citations omitted).

Aiding and abetting is not a standalone tort. It is a method of attributing liability for a tort committed by another. SLMRS' memorandum of law says "both cross-defendants and their companies participated in inducing SLMRS to enter into the Advisory Services Agreement . . ." Doc. No. 280, at 11. Saying someone "induced" entry into an agreement is not the same as saying that they "fraudulently" or "tortiously" induced entry into an agreement. One might induce entry into an agreement by perfectly legitimate means, for instance, by paying consideration. Nevertheless, there is at least a fair intimation in count two that the underlying tort is intentional non-disclosure.

What is missing is an allegation that Fenkell and DBF gave substantial assistance to the tortfeasor in the commission of the underlying tort. *See Koken v. Steinberg*, 825 A.2d 723, 732 (Pa. Commw. Ct. 2003) (noting substantial assistance was adequately pled). A conspiracy focuses on the act of combination or agreement. Aiding and abetting focuses on the act of the aider and abettor in furthering the tort. A substantial act by Fenkell and DBF in furtherance of the intentional non-disclosure needs to be

---

[3] I conclude that Pennsylvania would recognize a cause of action for aiding and abetting a tort. *See Matlack Leasing, LLC v. Morison Cogen, LLP*, No. CIV.A. 09-1570, 2010 WL 114883, at *11 (E.D. Pa. Jan. 13, 2010).

plausibly shown. *Id.* It was not in the cross-claim. Nor does SLMRS point to any acts alleged in the First Amended Complaint that would fill the void. I have not seen anything in the First Amended Complaint that would fit the bill.

I will grant the motion to dismiss the cross-claim for aiding and abetting in count two, and deny the motion to dismiss the conspiracy allegations. I will grant leave to amend within 14 days of the date the order of dismissal is entered.

### 3.     Count Three: Detrimental Reliance

The elements of detrimental reliance are (1) a promise that (2) reasonably would be expected to induce "action or forbearance," (3) does in fact induce action or forbearance, and (4) should be enforced to avoid injustice. *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 634 (3d Cir. 2013) (citations and internal quotations omitted).

The Fenkell Parties argue that SLMRS has not alleged a promise. True enough. SLMRS says that "Fenkell and the Sefcovics caused Alliance and SLMRS to enter into the Advisory Services Agreement . . ." Doc. No. 252, at 13. SLMRS also alleges that it "took action in reliance on the inducements offered by counterclaim defendants." Doc. No. 252, at 13. In its memorandum of law, SLMRS argues that "[t]hey [Fenkell and the Sefcovics] . . . *promised* SLMRS that the Agreement was not a violation of ERISA or other applicable laws and regulations" (emphasis supplied). Doc. No. 280, at 12. But saying it in the memorandum does not count. Even "conclusory" allegations may not suffice under *Fowler*, which requires not just the utterance of incantatory words, but a showing, with facts. 578 F.3d at 210, *quoting Iqbal*, 556 U.S. at 678. Here, even the magic words are missing. "Causing" is not necessarily promising. Neither is "inducing."

9

A pleading that alleged a promise and followed up with some kind of plausible factual showing would be enough, under *Fowler*. The allegations of count three do not suffice.

I will grant the motion to dismiss count three of the cross-claims, with leave to amend within 14 days of the date of the order of dismissal.

### 4.   Count Four: Indemnification and Contribution

The cross-claims for indemnification and contribution in count four are derivative, and must be understood in the context of the claims against SLMRS in the First Amended Complaint. Doc. No. 68. I have summarized the allegations concerning SLMRS in the First Amended Complaint. *See infra,* at 4-5. I accept as true the allegations of the First Amended Complaint and SLMRS's cross-claim. *Fowler*, 578 F.3d at 210. As for legal conclusions contained in the pleadings, I may disregard them. *Id.*

As I explained before, in ruling on the motion to dismiss SLMRS' original cross-claims for contribution and indemnification, I find that SLMRS has no equitable indemnification remedy under ERISA, federal common-law, or Pennsylvania common-law. *See* Doc. No. 288, at 11-14. I will dismiss the indemnification claims in the First Amended Cross-claims with prejudice.

I also explained previously why SLMRS had no contribution remedy for ERISA claims, but may pursue a contribution claim against the Fenkell Parties for claims by the plaintiffs against SLMRS under Pennsylvania law. Doc. No. 288, at 9. I will grant the motion to dismiss contribution claims based on ERISA liability arising from the Fourth and Fifth Claims for Relief in the First Amended Complaint (Doc. No. 68) with prejudice, but deny the motion as to contribution claims for liability arising from the Eleventh and Thirteenth Claims for Relief in the First Amended Complaint. These two

claims under Pennsylvania law allege aiding and abetting a breach of corporate fiduciary duty and conspiring to breach a corporate fiduciary duty.

## Conclusion

I will enter an order granting the motion to dismiss Counts One and Three without prejudice, and grant leave to file amended claims within 14 days of the Order. As for Count Two, I will grant the motion to dismiss the aiding and abetting claim, with leave to amend, and deny the motion to dismiss the conspiracy claim. I will grant with prejudice the motion to dismiss Count Four, insofar as it seeks equitable indemnification under ERISA, federal common-law, or Pennsylvania law. I also will grant with prejudice the motion to dismiss as to claims for contribution arising from the Fourth and Fifth Claims for Relief in the First Amended Complaint, which allege that SLMRS is liable under ERISA. Finally, I will deny the motion to dismiss with respect to contribution claims arising out of the Eleventh and Thirteenth Claims for Relief in the First Amended Complaint, which allege accomplice and co-conspirator liability for breaches of corporate fiduciary duties under Pennsylvania law.

**BY THE COURT:**


*s/Richard A. Lloret*
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**