## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-02391** |

RICHARD A. LLORET                                          September 21st, 2015
U.S. MAGISTRATE JUDGE

### MEMORANDUM OPINION

The defendant and third-party plaintiff David B. Fenkell has filed a motion

seeking reconsideration of part of a previous ruling. Doc. No. 443. The plaintiffs, the

Alliance Parties,[1] have opposed the motion. Doc. No. 457. Mr. Fenkell filed a reply, Doc.

No. 460, to which the Alliance Parties sought to respond in a sur-reply. Doc. No. 462.

Mr. Fenkell has objected to the filing of Alliance's sur-reply. Doc. No. 463. I will grant

the Alliance Parties' motion to file a sur-reply, and treat Fenkell's objection as a

response to the sur-reply.

### A.      Characterizing Mr. Fenkell's Motion

Mr. Fenkell seeks relief under Rule 60(b) from my order dismissing with

prejudice Mr. Fenkell's third-party claim for contractual indemnification[2] under his

employment contract. *See* Doc. No. 433 (Order of June 12, 2015), ¶ 1; Doc. No. 432

(Memorandum), at 6-9; Doc. No. 443 (Fenkell's motion), at 2. Under Rule 60(b), "a

judgment may be altered or amended if the party seeking reconsideration shows . . . (1)

an intervening change in the controlling law; (2) the availability of new evidence that

---

[1] Alliance Holdings, Inc. ("Alliance"), A.H.I., Inc., and AH Transition Corp., and Barbie
Spear, in her capacity as Trustee of the Alliance Holdings, Inc. Employee Stock
Ownership Plan ("Alliance ESOP" or "ESOP")
[2] The First Cause of Action of the Third-Party Complaint contained the claim for
indemnification. Doc. No. 214, at 5-13.

was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Mr. Fenkell seeks relief under the third prong, claiming there is a need to correct a clear error of fact or to prevent manifest injustice.

The dismissal with prejudice was not a final judgment, since it did not end the litigation on the merits. *See Penn West Associates, Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004). My order of June 12, 2015 is not appealable, in the absence of a certification under Rule 54(b). *See Elliott v. Archdiocese of New York*, 682 F.3d 213, 219-21 (3d Cir. 2012) (Rule 54(b) provides for certification of a partial disposition as a final judgment only where the court expressly certifies there is no just reason for delay of the appeal). Thus, Rule 60(b) does not apply.[3]

The consequence is that I retain wide discretion to modify my order without satisfying the rigors of Rule 60(b). Even within the more demanding context of a Rule 60(b) motion, *Max's Seafood Cafe* counsels practical discretion in assessing a motion for reconsideration. 176 F.3d at 677-78. Though the factors that govern relief under Rule 60(b) need not control, they provide me with helpful guidance in exercising discretion.

**B.     The Merits of Mr. Fenkell's Motion for Reconsideration**

**1.     There was no clear error**

The gist of Mr. Fenkell's motion is that his third-party complaint did not seek contractual indemnification under his employment agreement in this (federal) case,

---

[3] The local rules require that a motion for reconsideration be filed within 14 days of the order causing the distress. E.D. Pa. L.R. 7.1(g). That did not happen here – the motion for reconsideration was filed July 10, 2015, a few weeks late.

having asserted his contractual claims in the state court action currently pending

between the parties.[4] Fenkell points out that his third-party complaint states that

> [t]he actions with respect to the Employment Agreement are being asserted in the Pennsylvania State Case filed by David Fenkell against Alliance on March 22, 2013, and are not before this Court at this time in connection with the First Amended Complaint, the Fenkell Parties' Counterclaims, Third-Party Complaint, or First Amended Third-Party Complaint, or this Second Amended Third-Party Complaint.

Doc. No. 214, at 10, ¶ 22.

The Alliance Parties note that the "*source* of Fenkell's *Chesemore* indemnification

claim was specifically pled by Fenkell to be his Employment Agreement (Doc. No. 214,

¶¶ 23-25)." Doc. No. 457, at 11.[5] Paragraphs 22-25 of the Fenkell pleading describes at

length Mr. Fenkell's indemnification rights under his employment contract. Doc. No.

214, ¶¶ 22-25. Mr. Fenkell made his intent to plead his indemnification rights under the

employment agreement clear:

> The July 1, 2012 Employment Agreement and the September 2012 Amendment to Employment Agreement were each properly entered into by David Fenkell and Alliance, and the Employment Agreement creates binding and enforceable obligations upon Alliance under applicable law with respect to the rights of indemnification of David Fenkell and Karen Fenkell *that they are pursing* [sic] *hereunder.*

*Id.*, at 10-11, ¶ 23 (emphasis supplied). The reasonable understanding of this language

was that Mr. Fenkell was "pursuing," in this action, his indemnification rights under the

employment contract. That, at least, is what the words say.

Mr. Fenkell does not address the last sentence of paragraph 23 explicitly, but he

does say this:

---

[4] *David B. Fenkell v. Alliance Holdings, Inc.,* Index 130303417 in the Court of Common Pleas of Philadelphia County, Pennsylvania.
[5] This page reference, and all following references, are to the page numbers assigned to the document in the ECF system, not to the internal pagination.

> While both this Court's and the Alliance Parties' confusion is understandable, Paragraphs 23 and 24 of the Second Amended Third-Party Complaint do no more than assist in establishing that Mr. Fenkell was an employee of Alliance, a trustee of the Alliance ESOP, and entitled to indemnification *under the Alliance bylaws and the ESOP governing documents* (emphasis in the original).

Doc. No. 460, at 3. Yet this is not what the actual language of paragraph 23 says. The only rational purpose of pleading the detail and circumstances of the employment contract's indemnification language was to establish a right to indemnification under the employment contract. The lengthy recitation of the indemnification language of his employment agreement, in paragraphs 22-25, adds no heft to Fenkell's entitlement to indemnification under the Alliance bylaws and the ESOP governing documents. I find Mr. Fenkell's explanation of paragraph 23 and 24 unconvincing.

If common sense were not enough, a particular wrinkle in the pleading drives the point home. Fenkell took care to allege that his employment agreement specifically entitled him to indemnification from an "Adverse Decision" (initially capitalized as a defined term in the pleading) in the *Chesemore* case.[6] Doc. No. 214, at ¶ 22. The amended employment agreement, but not the by-laws and other sources of indemnification, arose after the "Adverse Decision." Specifically, the amended employment agreement granting Fenkell indemnification from the *Chesemore* case was signed on September 25, 2012. *See* Doc. No. 68, Ex. 7, at 4-5. In paragraph 25 of his Third-Party Complaint, Fenkell claimed he suffered loss from this "Adverse Decision," for which he is entitled to indemnification. *Id.* at ¶ 25. In his prayer for relief he asked for indemnification arising from the "Adverse Decision." *Id.* at 12-13. Thus, the amended employment agreement, and no other document, is the source of a specific right to

---

[6] *See Chesemore v. Alliance Holdings, Inc.*, 886 F. Supp. 2d 1007 (W.D. Wis. 2012); *Chesemore v. Alliance Holdings, Inc.,* 948 F. Supp. 2d 928, 946 (W.D. Wis. 2013) (assigning liability to Fenkell following the 2012 *Chesemore* decision).

4

indemnification for the "Adverse Decision," as a defined term. The use of this defined term in Fenkell's prayer for relief is precise follow-through on Fenkell's intent to pursue the "rights of indemnification of David Fenkell and Karen Fenkell" under the "July 1, 2012 Employment Agreement and the September 2012 Amendment to Employment Agreement[,]" as described in paragraph 23 of the third-party complaint. Doc. No. 214, ¶ 23.

The Alliance Parties certainly thought Fenkell was seeking indemnity under his employment agreement: they cited to the agreement explicitly, and they argued that Fenkell should not be allowed to split his contractual indemnity claims between the state court proceeding and this federal action. *See* Doc. No. 231-2 (memorandum in support of motion to dismiss) at 17, 18 n. 4. In his response to the motion to dismiss, Mr. Fenkell clearly intended to assert indemnity claims in both state court and in federal court. *See* Doc. No. 238, at 21-22. Mr. Fenkell's footnote 16, which explicitly addresses the relationship between the claims asserted in the two actions, does not say that Fenkell intended to litigate certain indemnity claims *exclusively* in state court:

> Mr. Fenkell also is asserting rights of indemnification under state law that are granted to the Fenkell Parties under his July 2012 Employment Agreement with Alliance, as amended on September 25, 2012, as well as under the governing corporate documents for Alliance set forth in the Alliance articles of incorporation and in the Alliance Compensation Committee Charter. These matters are the subject of litigation pending between Mr. Fenkell and Alliance in the Pennsylvania state court action currently being litigated by Mr. Fenkell and Alliance. (*David B. Fenkell v. Alliance Holdings, Inc.*, Index 130303417, filed in the Court of Common Pleas of Philadelphia County, Pennsylvania, on March 22, 2013).

Doc. No. 238, at 22 n. 16. Indeed, Mr. Fenkell was litigating his state law indemnification claims under the "governing corporate documents for Alliance" both in the state case and in this federal case, having explicitly asserted his right to

5

indemnification under Alliance's by-laws in the federal case. *See* Doc. No. 238, at 22. Thus footnote 16, rather than excluding the litigation of indemnification claims in both state and federal courts, instead embraces this dual track litigation by the type of indemnification claim it mentions – claims under the "governing corporate documents for Alliance." This dual-track strategy would not have been irrational. It would have tended to maximize Fenkell's opportunity to be vindicated on an indemnification theory. The risk, of course, was that an untoward result in one forum might be used to effect issue preclusion in another.

Mr. Fenkell had the opportunity and obligation to respond unequivocally to the Alliance Parties' contractual indemnification argument and claim splitting argument. The simple way would have been to state clearly that his employment contract was not being asserted as a ground for relief in the federal case. Instead, he said it was. Doc. No. 214, ¶ 23. That Fenkell now finds himself potentially disadvantaged does not mean that his disadvantage was unfairly wrought.

I find no clear error warranting reconsideration.

## 2.    There was no manifest injustice

Mr. Fenkell's request for reconsideration addresses the nature of the arm's length bargaining that went into his employment contract's indemnification clause, but does not address Pennsylvania law on the subject of indemnification for intentional wrongdoing. Doc. No. 443-1, at 4-7. That law seems crystal clear: indemnification for intentional acts is against public policy, and a contract between private parties cannot change or disregard that policy. *See See* 15 Pa. C.S.A. § 1746(b); *Brown v. Creative Collections, Inc.* No. 01-2809, 2002 WL 32345937, at *3 (E.D. Pa. June 10, 2002) (indemnification for intentional acts is against public policy).

A manifest injustice is illustrated by the circumstances in *Max's Cafe,* where an entity was held in contempt although it had not come into being until six months *after* the last of the contumacious acts for which it was held responsible, under an aiding and abetting theory. 176 F.3d at 678. The district judge's refusal to entertain a motion to reconsider worked an injustice that was manifest, because the law clearly did not provide for a contempt remedy against a corporate entity for acts committed before it came into being. By contrast, Mr. Fenkell has still not pointed to any case that would permit him to receive indemnification for the intentional wrongful acts found in *Chesemore.* Mr. Fenkell's silence on this point is telling. Since Mr. Fenkell cannot point to any case holding that Pennsylvania law would permit contractual indemnification for the intentional wrongful conduct underlying the *Chesemore* judgment, I find there was no manifest injustice.

### C.      Other Considerations

Motions for reconsideration are generally disfavored, for a number of important reasons. *See Williams v. City of Pittsburgh,* 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). One of the reasons is that they tend to waste time on issues that have been, or should have been, decided previously.

Because my order of June 12, 2015 was not a final judgment, I am at liberty to grant relief even in the absence of clear error or manifest injustice. The relief sought by Mr. Fenkell is an effort to avoid potential adverse consequences in his companion case in the Philadelphia Court of Common Pleas. One of the potential consequences of a dismissal with prejudice, in this case, if carried through to a final judgment, might be issue or claim preclusion in the Common Pleas case. *See, e.g., Hebden v. W.C.A.B. (Bethenergy Mines, Inc.),* 534 Pa. 327, 330 (1993) (doctrines of issue or claim

preclusion prevent the re-litigation of issues or claims actually litigated and necessary to disposition in a prior action). A related doctrine is the judicial disfavor for "claim splitting," or "present[ing] only a portion of the grounds upon which special relief is sought, and leav[ing] the rest to be presented in a second suit, if the first fail." *United States v. Haytian Republic,* 154 U.S. 118, 125 (1894); *see Prewitt v. Walgreens Co.*, No. 12-cv-6967, 2013 WL 6284166, at *5 (E.D. Pa. Dec. 2, 2013) (citation omitted). Issue preclusion and the judicial aversion to claim splitting are both founded on the potential for conflicting and unfair results if a party is allowed to litigate the same issue against the same adversary in different suits.

Had Mr. Fenkell made it clear, in his original response, that he had chosen not to pursue an indemnification claim under the terms of his employment contract in this case, I might have entered an order denying the motion to dismiss, as to this particular indemnification claim, as moot. Had I done so, I suspect there would have been little clamor from the Alliance Parties at the time, given the fact that my order of June 12, 2015 resolved a number of other issues. Instead, Mr. Fenkell said in his third-party complaint that he intended to pursue his indemnification rights under his employment contract. Doc. No. 214, ¶ 23. He did not retract or clarify this language in his response to the motion to dismiss.

Thus, Mr. Fenkell either deliberately pursued a claim splitting strategy, or was opaque to the point of incoherence on the subject. If the former, issue preclusion is not only fair but was to be expected. If the latter, Mr. Fenkell's opacity resulted in the Alliance Parties legitimately expending substantial time and effort seeking to dismiss an indemnification claim raised by Mr. Fenkell's opaque language, and then more time and effort to preserve an advantage fairly won.

8

Whether my previous ruling results in issue preclusion in the Common Pleas case depends upon a number of contingencies: whether this case proceeds to final judgment, whether the issue proves essential to such a judgment, the identity between the issue presented in this case and an issue in the Common Pleas case, and whether Mr. Fenkell had a "full and fair opportunity to litigate the issue," in this case, as that phrase is interpreted under Pennsylvania law. *See City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh*, 522 Pa. 44, 55-56, 559 A.2d 896, 901 (1989). It is appropriate to leave that decision to the Pennsylvania courts, when and if the issue becomes ripe. The minute contours of the disposition of the issue in this case have been faithfully and exhaustively preserved in the parties' briefs and in this memorandum. No more is needed.

The rules of civil procedure must be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. Pro. 1. I find that each of these three factors weighs in favor of denying Mr. Fenkell's motion for reconsideration, and so I will deny it.

**BY THE COURT:**

*s/Richard A. Lloret*
HON. RICHARD A. LLORET
U.S. Magistrate Judge