IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-2391** |

## MEMORANDUM

The Stonehenge parties have moved to exclude the testimony of John Roberts, a CPA who participated in the internal investigation of Fenkell after Fenkell left Alliance in 2011. Doc. No. 629 (motion) 629-1 (memorandum in support). The Alliance parties propose to have Roberts "testify about the extensive *process and procedure* he undertook to uncover [Fenkell's] scheme, not to the *facts* he found." Doc. No. 650, at 2 (emphasis in the original). Alliance wants to introduce this testimony to demonstrate how difficult the scheme was to uncover, which would shed light on the issue whether the Alliance parties should have known of Fenkell's scheme before Roberts began investigating. *Id.* This bears on Stonehenge's statute of limitations defense: they claim that the Alliance parties knew or should have known of Fenkell's purported scheme long ago, and that the limitations period should bar their claims. *Id.*; *see* 29 U.S.C. § 1113.

Stonehenge argues that Roberts' testimony 1) is irrelevant, under Fed. R. Evid. 401, because he has no personal knowledge of what the Alliance parties knew or did not know, 2) is unduly prejudicial, under Rule 403, because the Alliance parties have not disclosed all documents relating to Roberts' inquiry, based on claims of privilege, and 3) should be barred because Alliance failed to disclose Roberts' name as a person having "discoverable information," as required under Fed. R. Civ. Pro. 26(b)(1). Doc. No. 629 at 4-7.  The Alliance parties contend that Roberts' testimony is relevant, that the danger of

1

unfair prejudice does not substantially outweigh the probative value of the evidence, and that they had no obligation to name Roberts in their initial disclosures, under Fed. R. Civ. Pro. 26(b)(1), since his testimony is being used to rebut a defense by Stonehenge, and is not being used to "support its [Alliance's] claims or defenses," as Fed. R. Civ. Pro. 26(b)(1) says. Doc. No. 650 at 3-5. Alliance also argues that the failure to name Roberts in their initial disclosures is harmless, because the Stonehenge parties have known of Roberts and the scope of his knowledge for years, and have had ample opportunity to depose him, if they wished, before the discovery deadline. *Id.* at 5 n. 2.

Roberts' testimony, as defined above, is relevant. The gist of Stonehenge's statute of limitations defense is that Alliance and its agents knew or should have known of Fenkell's misdeeds long ago, because nothing was concealed. *See* 29 U.S.C. § 1113. Roberts can testify about the conduct of the investigation: how documents and information came to light, where they came from, in what order they came to light, and what steps had to be taken to bring them to light. This information may permit reasonable inferences about whether Alliance personnel knew or should have known the pertinent details of Fenkell's scheme. This information may be helpful to me as the trier of fact.

The danger of unfair prejudice from this evidence does not substantially outweigh probative value, under R. 403. The concept of unfair prejudice, under R. 403, ordinarily concerns the possibility that evidence will entice a trier of fact toward some impermissible inference. *See United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) (citations and internal quotations omitted). Roberts' testimony, appropriately cabined, is not liable to entice a trier of fact to make emotionally fraught or impermissible inferences. Nor is this particular danger much of a concern in a bench trial. *I.B.E.W.*

*Loc. Union 380 Pension Fund v. Buck Consultants*, CIV. A. 03-4932, 2008 WL 2265269, at *3 (E.D. Pa. June 3, 2008) ("Rule 403 has no logical application to bench trials") (internal quotations and citations omitted). I say much of a concern, because the concept of "unfair prejudice" under Rule 403 can encompass simple procedural unfairness, as where a party reverses theories in the middle of trial and the opposing party would be prejudiced unfairly by the lack of notice and an opportunity to prepare for the evidence being introduced. *See Goldberg v. National Life Ins. Co. of Vermont*, 774 F.2d 559, 564-65 (2d Cir. 1985) (excluding expert testimony in rebuttal that would have changed plaintiff's theory of the case). Here, unlike in *Goldberg,* the proposed testimony does not represent a change in Alliance's theory of the case, or even much of a surprise.

Alliance's argument that John Roberts did not have to be named under Rule 26(b)(1) because his information concerns only Alliance's rebuttal to Stonehenge's defense is deft, but unconvincing. Roberts certainly did have information pertaining to Alliance's "claims or defenses." The fact that he will not be called at trial to testify about "claims or defenses" does not answer the language of the rule, which does not talk about the subject matter about which a witness will be called to testify. Roberts' investigation led to this lawsuit, in a fairly straight line. Thus, it is fair for Stonehenge to argue that Roberts' name should have appeared in the Alliance parties' initial disclosure, under R. 26(b)(1). It is true, nevertheless, that Stonehenge knew about Roberts' information for years, and indeed fought Alliance over disclosure of the investigative report prepared by Roberts and Mr. Hockheimer. *See* Doc. No. 629-1 at 6. I do not find that Alliance acted in bad faith, but I find that plugging Roberts in as a fact witness at this late date does represent a change in litigating posture, *vis a vis* Roberts, that operates to unfairly

3

prejudice Stonehenge. I am unwilling to permit Roberts to testify as a fact witness without giving Stonehenge the opportunity to see behind the curtain, so to speak.

At this juncture trial is only weeks away. In my judgment exclusion is too drastic a remedy. *See DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1201–02 (3d Cir. 1978) (exclusion is a drastic remedy). In the case cited to me by Stonehenge, the district court did not actually exclude an investigator's testimony, but conditioned it on full disclosure of the investigator's report, which up until that point had been undisclosed, based on its work-product status. *United States v. Nobles*, 422 U.S. 225, 241 (1975). Applying the four-part test in *DeMarines*, I find that 1) there is some surprise or prejudice occasioned by Roberts' appearance as a fact witness, 2) the potential surprise or prejudice can be remedied by limiting the scope of Roberts' testimony and providing for some additional disclosures by Alliance, 3) calling Roberts need not disrupt the orderly presentation of evidence in this case, and 4) there was no bad faith or willfulness on Alliance's part. *Id.*

In this instance Alliance must make an election: produce Roberts' reports, including those reports previously withheld as privileged, on or before January 3, 2017 in unredacted form, and waive attorney-client privilege and the work-product doctrine, or be barred from using Roberts as a witness. I am not willing, at this late hour, to engage in a detailed and protracted battle over the extent to which the reports are related (or not) to the subject matter of Roberts' testimony. There is at least a reasonable likelihood that Roberts' reports contain information about Alliance personnel other than Fenkell that would bear on whether they knew or should have known of Fenkell's misdeeds. At a minimum the reports will provide the Stonehenge parties with appropriate context for cross-examining Roberts at trial. I do not rule in

4

advance whether, or to what extent, the reports themselves may be used as evidence at trial. Much depends upon the nature of Roberts' testimony and the relationship of his reports to his testimony. *See, e.g.,* Fed. R. Evid. 613 (impeaching with prior inconsistent statements); Fed. R. Evid. 803(5) (past recollection recorded); Fed. R. Evid. 801(d)(1)(a), (b) (a declarant's prior inconsistent and consistent statements are admissible under certain circumstances). In no event may the reports be used by any party other than in connection with cross-examination of Roberts at trial, nor may they be copied or discussed with anyone other than the trial attorneys and their assistants in this case. Alliance will submit an appropriate protective order.

Second, if Alliance wishes to have Roberts testify, it will produce on or before January 3, 2017 complete information detailing how much Roberts (and his employer, Deloitte) were paid for the internal investigation. Third, the Alliance parties must wait until their last allotted trial day to put on Roberts, in order to give the Stonehenge parties sufficient time to review the reports and statements produced on January 3, 2017.

Lastly, Roberts may "testify about the extensive process and procedure he undertook to uncover [Fenkell's] scheme, not to the facts he found." He may not offer opinions, lay or expert, on these processes and procedures. Roberts may testify to the fact that he supplied his reports verbally to Alliance agents or directors. He may not testify about the reaction of any Alliance witnesses to the results of his reports.

Those witnesses can testify to their own reactions.

**BY THE COURT:**

    *s/Richard A. Lloret*_____
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**