**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SPEAR, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **FENKELL, et al.** | : | **NO. 13-2391** |

## MEMORANDUM

The parties seek reconsideration of this Court's ruling on their respective motions for summary judgment. This memorandum rules on them all. In Part II of this Memorandum, I will address the Stonehenge parties' motion for reconsideration. In Part III, I will address the Sefcovic parties' motion for reconsideration. In Part IV, I will address the Fenkell parties' motion for reconsideration. In Part V, I will address the Alliance parties' motion for clarification of the Order dated September 30, 2016.

## I.      STANDARD OF REVIEW

"The United States Court of Appeals for the Third Circuit has held that the purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Cohen v. Austin,* 869 F.Supp. 320, 321 (E.D.Pa.1994). Accordingly, a district court will grant a party's motion for reconsideration in any of three situations: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Id.*

Federal courts have a strong interest in the finality of judgments. *Cont'l Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995). Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already

decided. *Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1107 (E.D.Pa.1992). Stated another way, dissatisfaction with the Court's ruling is not a proper basis for reconsideration. *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993); *Bhatnagar v. Surrendra Overseas Ltd.,* 52 F.3d 1220, 1231 (3d Cir. 1995) (a motion for consideration may not be used to give a litigant a "second bite at the apple"). A motion for reconsideration may only address "'factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through – rightly or wrongly.'" *Jarzyna v. Home Properties,* L.P. ___ F. Supp. 3d ___ 2016 WL 26236888 (E.D.Pa. May 6, 2016) (citing *Glendon Energy Co.,* 836 F. Supp. at 1122).

## II. THE STONEHENGE PARTIES' MOTION FOR RECONSIDERATION

The Stonehenge parties allege three grounds for reconsideration: (1) the opinion erroneously fails to recognize that ERISA greatly restricts liability and available relief against non-fiduciaries; (2) the opinion errs by failing to separately consider the Stonehenge defendants' statute of limitations arguments; and (3) the opinion errs by suggesting that ERISA preemption depends on whether plaintiffs can successfully prove their claims and on availability of relief under ERISA. I will address each argument separately.

### a. THE OPINION DID NOT ERR IN FINDING THAT THE STONEHENGE DEFENDANTS "PARTICIPATED" IN FENKELL'S FIDUCIARY BREACHES AND IN FINDING THAT ACCOUNTING AND DISGORGEMENT ARE "APPROPRIATE EQUITABLE RELIEF."

The Stonehenge parties allege that the opinion erred in denying summary judgment as to Counts IV and V on the grounds that the Stonehenge defendants "participated" in Fenkell's Fiduciary breaches as a matter of law. The Stonehenge parties

2

also allege that the court erred in finding that the remedies of accounting and disgorgement are "appropriate equitable relief" under ERISA. The Fenkell and Sefcovic parties join in these arguments. I will address these arguments together.

> i.   *Under ERISA, non-fiduciaries can only be liable for knowingly participating in prohibited transactions (not fiduciary breaches).*

The parties argue that, under ERISA §406(b), non-fiduciaries can only be liable for knowingly participating in *prohibited transactions*, not merely fiduciary breaches. The parties argue that "the Opinion's repeated references to the Stonehenge Defendants' non-fiduciary ERISA liability for knowing participation in 'fiduciary violations' see e.g., Op. at 57, 59, 60, 64, 65 68, rather than 'prohibited transactions,' is manifest error." Stonehenge Mem. in Support of Motion for Reconsideration ("Stonehenge Mem.") at 2.

The parties correctly cite the standard of liability for non-fiduciaries, which requires knowing participation in a prohibited transaction. The opinion also correctly cites this standard numerous times. *See* Op. at 58, 60, 61.

Although there is reference in the decision to "knowing participation in a fiduciary breach," the opinion is clearly referring to Stonehenge's participation in a prohibited transaction, namely the spread transaction where the payments to DBF amounted to a kickback. *See e.g.* Op. at 60-62 (explaining that Stonehenge's fee of $30 million for facilitating the spread deal was "contingent on the profitability of the Spread Deal, and was paid through AH III via the same 'waterfall' that generated fees for the ESOP and Alliance.") Any portion of the Opinion that references participation in a fiduciary breach is hereby modified to reflect the standard that I relied on in my analysis, but that was sometimes referred to as a breach of fiduciary duty: that a non-

fiduciary is liable only for knowing participation in a prohibited transaction under ERISA.

> ii.  *Under ERISA, receipt of plan assets is one way, but not the only way, non-fiduciaries can "participate" in a prohibited transaction.*

The Stonehenge parties argue that non-fiduciaries can only "participate" in a prohibited transaction by receiving plan assets. Stonehenge Mem. at 2. The Fenkell and Sefcovic parties join in this argument. I will address the parties' arguments together.

Stonehenge cites to *Harris Trust and Savings Bank et al. v. Salomon Smith Barney Inc., et al.*, 530 U.S. 238, 250-253, 120 S.Ct. 2180 (2000), arguing that the Court "repeatedly tied ERISA liability of non-fiduciaries to the receipt of plan assets." The parties urge the court that reconsideration is necessary to correct a clear error of law of fact or to prevent manifest injustice. I disagree. The parties are attempting to relitigate an issue that has already been discussed at length and decided. The Opinion states,

> Stonehenge's primary argument is that it never received plan assets, because it was always paid by AH III, not Alliance Holdings or the Alliance ESOP. This, Stonehenge argues, means that it never "participated" in a fiduciary violation, in the sense required under *Harris Trust*. The argument rests on the premise that *Harris Trust* liability only attaches if a non-fiduciary receives plan assets. I disagree. Receiving plan assets through a prohibited transfer is one way, but not the only way, a non-fiduciary can "knowingly participate" in a fiduciary violation. *It happens to be the type of fiduciary violation at issue in Harris Trust.*

Op. at 59 (emphasis supplied) (internal citations omitted). Relying on *Harris Trust*, *Iola*[1], and the plain language of the statute, I held that receipt of plan assets is one way but not the only way a non-fiduciary can "knowingly participate" in a prohibited transaction. *Id.*

---

[1] *Nat'l Sec. Sys., Inc. v. Iola*, CIV- 00-6293AET, 2007 WL 2868634 (D.N.J. Sept. 26, 2007), *aff'd in part, vacated in part sub nom. Natl. Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 86 (3d Cir. 2012); 29 U.S.C. § 406(b)(3).

With this framework in mind, the decision turned to whether Stonehenge "knowingly participated" in a prohibited transaction. I held that Stonehenge "participated" in the prohibited transaction based on Stonehenge's "active involvement in managing the deal, and its $34 million in fees" which was not materially different than [the defendant's] commissions in *Iola*. Op. at 62-63. I also held that there were issues of fact whether Stonehenge "knowingly" participated in a fiduciary breach. *See* Op. at 63-64. Knowing participation under *Harris Trust* requires actual or constructive knowledge of the facts that made the underlying transaction unlawful. *Id.* at 63. The parties set forth various facts on either side of the argument, which created a genuine issue of material fact about whether Stonehenge actually or constructively knew of Fenkell's fiduciary breaches.

The parties argue that the Court's reliance on *Iola* was misplaced because *Iola* is distinguishable:

> [p]rincipally relying upon *Iola*, the Opinion notes that 'Barrett, the salesman in *Iola*, did not receive trust assets' yet was liable for knowing participation." This statement fails to recognize the central distinguishing fact that Barrett's liability turned on his status as [an] agent of his employer (Tri-Core) which was a fiduciary."

Stonehenge Mem. at 3 (internal citations omitted). This argument is without merit and is improper on a motion for reconsideration. The Stonehenge parties are conflating the section of the opinion that discussed whether participation requires receipt of plan assets, *see* Op. at 58-60, and a subsequent section that dealt with whether Stonehenge "knowingly participated" in a prohibited transaction, *see* Op. at 63. Stonehenge fails to cite to a manifest error of law or fact, and is attempting to relitigate that which was already decided.

Stonehenge also argues that the opinion's reliance on *Mellon Bank, N.A. ex rel. Weiss Packing Co., Inc. Profit Sharing Plan v. Levy*, 71 Fed. Appx. 149 (3d Cir. 2003) was "inaccurate" because in *Mellon Bank*, the Court held that "the attorney did not participate because he did not receive funds from the transaction (i.e. he did not receive plan assets) — not because his conduct was limited in scope." Stonehenge Mem. at 3-4. Stonehenge's argument is no different from the position I rejected in the Opinion. *See* Op. at 61-63. Stonehenge's assertion that the third circuit held that the defendant did not participate because he did not receive funds from the transaction is a misstatement of the law, and this argument is without merit. Mellon Bank does not stand for the proposition that receipt of trust assets is the *sine qua non* of participation. The Court provided a set of non-exclusive factors to be taken into account when evaluating "participation." These factors include whether a party "participated in the actual exchange of money for property, ever saw profit from the transaction, or ever possessed title or right to the property or money involved." Op. at 62, citing *Mellon Bank*, 71 Fed. Appx. 149. I do not read *Mellon Bank* to hold that receipt of plan assets is the only way a party can participate in a fiduciary breach. Receipt of plan assets is one way, but not the only way, to establish participation. I have already decided the issue in my Opinion and will not revisit it on a motion for reconsideration. *See* Op. at 61-63.

> ### iii. *The remedy of accounting and disgorgement are appropriate equitable remedies under ERISA.*

Stonehenge argues that the Court made four errors in ruling that the remedy of accounting and disgorgement are appropriate equitable remedies: (1) "the Opinion fails to recognize the Supreme Court's requirement that Plaintiff's must identify 'particular funds' that can be 'traced' within defendant's possession before relief can be deemed

equitable"; (2) "the Opinion errs in reasoning that the remedy of disgorgement is distinct from the equitable remedies of restitution, constructive trust and equitable lien"; (3) "the Opinion errs by holding that the accounting for profits remedy permits Plaintiffs to avoid identifying a traceable and identifiable res"; and (4) "the Opinion errs by conflating the need for an identifiable and traceable res with the wholly separate issue of whether relief is available after a res is dissipated." Stonehenge Mem. at 4-8. The Fenkell and Sefcovic parties join in this argument. I will address the arguments together.

This issue was discussed at length in the opinion and the parties do not cite to any errors of law or fact in their motion for reconsideration. In fact, the parties make identical arguments, citing to the same case law (*Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993), *Great-West Life & Annuity Ins. Co v. Knudson*, 534 U.S. 204, 209 (2002), and *Montanile v. Board of Trustees of the National Elevator Industry Health Benefit Plan*, 136 S. Ct. 651 (2016)). The parties are merely attempting a second bite at the apple, which is impermissible.

As discussed extensively in the Opinion, *see* Op. at 65-70, ERISA relief against a non-fiduciary must be equitable and appropriate under the law. Op. at 65, citing *Harris Trust*, 530 U.S. at 250.  Equitable remedies are those "'typically' available from a court of equity before the equitable and legal jurisdictions of the federal courts were joined in 1938." Op. at 65, citing *Sereboff v. Mid Atlantic Medical Services, Inc.*, 547 U.S. 356, 362 (2006). The Opinion relied on *Edmondson v. Lincoln Nat. Life Inc. Co.*, 725 F.3d 406 (3d Cir. 2013), in which the Court of Appeals held that the defendant's "claim for disgorgement, which is akin to an accounting for profits, is an equitable remedy

7

available under ERISA and *Great-West Life*." Op. at 66, citing *Edmondson*, 725 F.3d at

420. The opinion noted,

> [t]he Supreme Court's concerns about permitting damage-like remedies in
> equitable guise are well documented. These concerns may be in tension with its
> 'typically available in equity test' when it comes to accounting and disgorgement.
> Nevertheless, the Supreme Court has endorsed accounting and disgorgement as
> an equitable remedy at least three times, without actually ruling on the subject.

Op. at 67, citing *Knudson*, 534 U.S. at 215 (quoting *Harris*, 530 U.S. at 250-51);

*Mertens*, 508 U.S. at 262; and *Edmondson*, 725 F.3d at 419 (quoting *Knudson*, 534 U.S.

at 214 n. 2).

Stonehenge argues, again, that under *Montanile*, a plaintiff "may seek equitable

restitution or disgorgement of funds from a dissipated <u>res</u> only if the spent funds can be

traced to specific assets." Stonehenge Mem. at 8. However, I concluded in the Opinion

that "*Montanile* overruled neither the holding nor rational of *Edmondson*. Absent clear

language from the Supreme Court overruling the holding or rationale of *Edmondson*, I

must follow the Court of Appeals." Op. at 70, citing *United States v. Mitlo,* 714 F.2d 294,

298 (3d Cir. 1983) (quoting *Allegheny Gen. Hosp. v. NLRB,* 608 F.2d 965, 970 (3d Cir.

1979)); also citing *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506, 1508

(11th Cir. 1987). The parties fail to cite to any change in the law which would warrant

reconsideration of this decision. Since I addressed this precise issue in the Opinion, the

parties' argument is improper on a motion for reconsideration.

### b. SEPARATE CONSIDERATION OF THE STONEHENGE DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS.

The Stonehenge parties allege that the Court erred in failing to separately

consider the affirmative defense of statute of limitations with respect to each defendant.

Stonehenge argues that the plaintiffs are required to establish fraudulent concealment

against each defendant separately in order to toll the statute of limitations. Stonehenge Mem. at 9, citing *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995). There is language in *Kurz v. Philadelphia Elec. Co.*, 96 F.3d 1544 (3d Cir. 1996) that supports this proposition:

> when a lawsuit has been delayed because the *defendant itself* has taken steps to hide its breach of fiduciary duty, the limitations period will run six years after the date of the claim's discovery. The relevant question is therefore not whether the complaint 'sounds in concealment,' but rather whether there is evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.

*Id.* at 1552 (emphasis supplied). I found that there were genuine issues of material fact that precluded summary judgment against the Alliance Parties on the statute of limitations question. My opinion did not explain my finding in any detail. I did note, however, that "for reasons I explained in Section II of this opinion, dealing with Fenkell's statute of limitations arguments, I conclude that there are genuine issues of material fact that preclude summary judgment against the Alliance Parties based on the statue of limitations." Op. at 105.

"The 'fraud or concealment' exception contained in the last paragraph of 29 U.S.C. §1113 requires that plaintiff produce 'evidence that the defendant took affirmative steps to hide its breach of fiduciary duty.'" Op. at 39, citing *Kurz*, 96 F.3d at 1552; also citing *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006). Some act of concealment beyond the underlying fiduciary breach is required. *Id. Kurz* focused on the actions of a fiduciary; so did *Barker*. In neither case were there any non-fiduciaries implicated as accomplices under 29 U.S.C. § 1132(a)(3). In neither case was there evidence that the fiduciary had engaged in acts of fraud or concealment. *Id*; *Barker,* 64 F.3d at 1401–02; *see also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242

F.3d 497, 504 (3d Cir. 2001), as amended (Mar. 20, 2001) (remanding to the district court to determine whether acts of concealment occurred).

The question whether non-fiduciaries implicated in a fiduciary's wrongdoing under an accomplice liability provision, ERISA section 502(a)(3), are also subject to the 6-year "fraud or concealment" statute of limitations under ERISA section 413, as a result of the fiduciary's affirmative steps of concealment, presents a materially different question than the simpler issue presented in *Unisys* and *Kurz*. The facts of this case pose the following question: should a non-fiduciary, knowing participant be subject to the same "fraud or concealment" statute as the fiduciary, in whose breach the accomplice participated, where the fiduciary has engaged in "affirmative acts" that satisfy the fraud or concealment requirement of *Kurz* and *Unisys.* It seems appropriate to address this question after trial reveals the exact contours of the various parties' acts and intent, especially since I also concluded that there are issues of fact whether the Stonehenge Parties themselves took affirmative steps to conceal their wrongdoing.

Alliance argues that "by papering up their scheme with complex and deceptive contracts, Fenkell/Stonehenge actively hid their ERISA violations." *See* Alliance Opp. to Motion for Summary Judgment at 52-57; *see also* Alliance Opp. to Stonehenge Motion for Reconsideration at 6-7.  Alliance argues that Fenkell and Stonehenge "drafted sham ESOP services/fees documents between Alliance, the ESOP, and AH III and Stonehenge—and then between Stonehenge and DBF Consulting—to effectuate the scheme." *See* Alliance Opp. to Motion for Summary Judgment at 52-57. Alliance points to a number of examples that tend to establish fraud or concealment on the part of Stonehenge including but not limited to the following:

- "Fenkell/Stonehenge did not include the formula for paying Stonehenge's fees in the ESOP Loan Transaction, but rather "buried those details separately, in a different agreement dated September 1, 1999";

- "Fenkell/Stonehenge separately executed the DBF Consulting agreement where Fenkell was to serve as an "independent contractor" providing services to Stonehenge, earning $240,000 per year; "[b]y weaving these sham arrangements in with the AH III form utilized in the ESOP Loan Transaction documents . . . Fenkell/Stonehenge disguised that they were both misappropriating ESOP loan investment proceeds for themselves";

- "Despite how Fenkell and Stonehenge characterized the [DBF Consulting agreement] on paper, the evidence confirms that DBF Consulting did not really perform consulting services for Stonehenge"; and

- "Despite the Fenkell/Stonehenge deal documents that Stonehenge would be providing services to Alliance and the Alliance ESOP, and was being paid millions in fees for these services, Fenkell failed to disclose this information on any of the IRS Forms 5500 and Stonehenge failed to correct or amend these forms."

*Id.; see also* Alliance Opp. to Stonehenge Motion for Reconsideration at 6-7. If the evidence at trial convinces me that the Stonehenge Parties engaged in affirmative acts intended to conceal the true nature of the DBF fees that transcended the bare necessities of the prohibited transaction by Fenkell, that likely would satisfy any requirement under *Kurz* and *Unisys*. I do not suggest one way or the other what trial will bring, only that the prospect of such proofs seemed plausible enough to let trial of the issue go forward.

Stonehenge argues that although the deal documents were "complex" this does

not mean they were "deceptive." Stonehenge Reply Mem. in Support of Motion for Summary Judgment at 59. Insofar as Stonehenge argues that I am bound to find this as a matter of law, I disagree. I find that plaintiffs produced sufficient evidence to establish, at least, genuine issues of fact that the Stonehenge defendants actively participated in concealment of the prohibited transaction which would toll the statute of limitations. Therefore, genuine issues of material fact preclude summary judgment against the Alliance parties based on the statute of limitations.

Finally, I also determined that there were fact issues that required trial under the other available limitations options, in section 1113.

In sum, my findings about the Stonehenge Parties' culpability, and whether a statute of limitation should absolve them from responsibility for participation in Fenkell's misdeeds, will depend to a significant extent on how credible – or not – I find their testimony, as well as other witnesses'.  That is what trials are for.

### c. STONEHENGE'S PREEMPTION ARGUMENT IS RAISED FOR THE FIRST TIME IN THIS MOTION FOR RECONSIDERATION AND IS IMPROPER.

Stonehenge argues that the Opinion committed an error of law by suggesting that whether plaintiff's state law aiding and abetting claim against the Stonehenge defendants is preempted turns on (1) "[i]f Alliance succeeds in proving its ERISA claim" and/or (2) "whether ERISA Section 502(a)(3) provides a remedy." Stonehenge Mem. at 9-10. Stonehenge argues that ERISA has "extraordinary pre-emptive power" and that whether there is "a viable remedy under Section 502(a)(3) is irrelevant to preemption." *Id.* The Sefcovic and Fenkell Parties join in this argument. Alliance argues that "Stonehenge seizes on the Court's ERISA preemption reference in footnote 67 of its Opinion, seemingly staking out a new position that the aiding-and-abetting claim is

preempted by ERISA." Alliance Opp. to Motion for Reconsideration at 7. Alliance alleges

that this is a new argument, that was not made in any of Stonehenge's "300+ pages of

prior briefing" and is improper on a motion for reconsideration. *Id.* I agree.

 "[A] motion to reconsider may not raise new arguments that could have (or

should have) been made in support of or in opposition to the original motion." *Helfrich*

*v. Lehigh Valley Hosp.*, ___ F. Supp. 2d ___, 2005 WL 1715689 (E.D. Pa. July 21, 2005).

Footnote 67 states,

> If Alliance succeeds in proving its ERISA claim concerning the DBF fees,
> preemption may require dismissal of the state law claims concerning these fees.
> *See Pilot Life. Ins. Cp. V. Dedeaux*, 481 U.S. 41, 52 (1987) (claim under ERISA
> Section 502(a) was exclusive, and preempted state claims concerning the same
> transactions). The parties have not briefed this issue, and it is appropriate to sort
> it out after a determination at trial of whether ERISA Section 502(a)(3) provides
> a remedy.

Op. at P. 113 n. 67. Footnote 67 is not a holding on the issue of preemption. Rather it

suggests that ERISA preemption may have a role to play in deciding Alliance's state law

claims related to the Stonehenge and DBF fees. As noted in the footnote, the parties did

not raise or brief this issue, and they cannot do so now as an alternate basis for

summary judgment in a motion for reconsideration. If Stonehenge intended to make

this argument, the parties should have done so in their 327 pages of briefing on

summary judgment. This argument is improper on a motion for reconsideration. I will

address this issue, if necessary, after trial.

### d.  STONEHENGE'S "EXHIBIT A" VIOLATES THE COURT'S ORDER

Alliance argues that I should not consider Stonehenge's "Exhibit A", because it

circumvents the Court's ten-page limit for reconsideration. This argument is moot, as I

have not altered the summary judgment findings as a result of Stonehenge's motion for

reconsideration (inclusive of Exhibit A).

### III.   THE SEFCOVIC PARTIES' MOTION FOR RECONSIDERATION

### a.  The Opinion did not misapprehend facts related to the ASA.

The Sefcovic parties argue that the Court misapprehended the facts to find that the ASA between Alliance and SLMRS was unreasonable and that "paying SLMRS $330,000 for dinner parties and introductions was unreasonable." Sefcovic Mem. in Support of Motion for Reconsideration ("Sefcovic Mem.") at 2, citing Op. at 125-129.[2]

First, the Sefcovics argue that the "Court misapprehends the value of services provided by SLMRS to Alliance." *Id.* at 3. In support of this argument, the Sefcovics allege that I erred in my conclusion that networking and standing ready for services in the student loan industry have no value because the court is not entitled to make "credibility determinations" at this stage. *Id.* at 3-4. The Sefcovics argue that I erred in looking at the ASA in hindsight, "rather than at the time the agreement was contemplated." *Id.* at 4. The parties cite to a seventh circuit case, *Overseas Development Disc Corp. v. Sangamo Const.*, 840 F.2d 1319, 1322 (7th Cir. 1988), for the proposition that paying SLMRS $330,000 was not unreasonable as a matter of fact and law.[3] The Sefcovic Parties also argue that these costs were minor in comparison to the anticipated

---

[2] The Fenkell parties join in this argument noting that the court erred in finding Fenkell liable with respect to the ASA without determining (1) if Alliance's funds used to make consulting fee payments were ERISA plan assets and (2) if the business judgment rule applied to the negotiation of the ASA. This first argument was addressed at length in the Opinion, *see* P. 125-142, and the parties do not present a manifest error or law of fact. With respect to the second argument that the business judgment rule should apply, I will address in section IV(a)(2) below.

[3] This case is not binding and is factually distinguishable. In *Overseas Development* the parties did not have a contractual relationship and the court, in looking at market value, interpreted and applied Kuwati law of quantum meruit to determine fees. Fenkell's reliance on *Overseas Development* to establish that "business introductions have value" and that "paying $330,000 for dinner parties and introductions" is reasonable is unconvincing.

revenues, and that SLMRS stood "ready willing and able to perform services" which has tangible value. Sefcovic Mem. at 5-7.

Second, the Sefcovics argue that it was unreasonable for the Court to use SLCS as a benchmark for reasonableness.[4] *Id.* at 7-9. The Sefcovics attempt to distinguish the services provided by SLCS and SLMRS, arguing that SLCS was a "backup administrator" where SLMRS was "contracted to serve as actual (not standby) administrator/master servicer." *Id.* at 8.

I find these arguments unpersuasive. The Sefcovic parties made these same arguments in their summary judgment briefs: that the services rendered by SLMRS were valuable, and that paying $330,000 for these services was reasonable. I addressed these arguments at length in the Opinion, expressly outlining the alleged "services" actually provided to Alliance, which were not disputed by the Sefcovics. Op. 125-127. I held that "paying SLMRS $330,000 for dinner parties and introductions was unreasonable, and was a breach of Fenkell's fiduciary duty of prudence to Alliance." Op. at 129. The Sefcovics do not allege a manifest error of fact. The Sefcovics are attempting to relitigate issues that were already decided, which is improper on a motion for reconsideration.

### b.  I WILL NOT PRECLUDE EVIDENCE ON THE CIRCUMSTANCES OF THE NEGOTIATION AND PERFORMANCE OF THE ASA.

The Sefcovics argue that it is unclear whether the Court intended to find any facts established under Rule 56(g) because there is no "no statement that [the] Court considered the summary judgment standard in making any findings of fact." Sef. Mem.

---

[4] The Opinion states, "Alliance paid about $28,000 per quarter to Paul Sheldon's consulting firm, SLCS [which was] a bench-mark for reasonableness in determining whether the SLMRS fees were appropriate." Op. at 129.

at 9. It is their position that they should be permitted the opportunity to present all relevant facts, "including the reasonableness of the ASA." *Id.* at 10. The Fenkell parties join in this argument, noting that since the Court did not enter an order with respect to any material facts "the parties should not be bound by any factual determinations contained within the [summary judgment] memorandum." Fenkell. Mem. in Supp. of the Sefcovics' Motion for Reconsideration at 2. Alliance argues that the court has discretion to make findings of fact under Rule 56(g) or (f) and that "[r]egardless of how the Order characterizes the Court's findings, the Court's opinion plainly stated that there is no reason to address the reasonableness of the SLMRS agreement at trial." Alliance Mem. in Response to the Sefcovics' Motion for Reconsideration at 6.

Rule 56(g) states, "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case." I am not inclined to limit the parties' ability to present relevant facts and evidence that may bear on other issues in this case. The circumstances of the negotiation of the ASA may bear on the Sefcovic's liability. *See* Op. at 123-125, 130-133. I found that pursuant to Fed. R. Civ. Pro. 56(f), David B. Fenkell breached his fiduciary duty of prudence to Alliance. I decline to treat any facts as established under Rule 56(g).

## IV.   THE FENKELL PARTIES' MOTION FOR RECONSIDERATION

The Fenkell parties argue that the opinion (a) misapprehends the facts regarding the DBF-Stonehenge relationship and the ASA and the SLCS services and (b) denied the Fenkell parties due process.

### a. THE OPINION DID NOT MISAPPREHEND THE FACTS.

1. *Ruling 2(A) does not rely on a misapprehension of Fenkell's facts regarding the DBF-Stonehenge Relationship.*

The Fenkell parties argue that the Court erred in holding that Fenkell violated his ERISA fiduciary duties. Fenkell Mem. in Support of Motion for Reconsideration ("Fenkell Mem.") at 1. Fenkell argues that these ERISA violations were based on the improper "premise that Fenkell accepted fees from Stonehenge because the DBF-Stonehenge relationship was related to the 'unitary' transaction of the 1999 Corporate Guaranty Restructuring and 1999 Spread Transaction." *Id.* at 2. The Fenkell parties allege that the court misapprehended the following six facts: (1) the 1999 Corporate Guaranty Restructuring was not an exchange of cash for stock, (2) spread transactions were annual corporate transactions starting in 1996 and not part of a "unitary transaction" with the 1999 corporate guaranty restructuring, (3) the 1998 BOCP Holdings/DBF Consulting Agreement is the predecessor to the DBF Consulting-Stonehenge agreement; neither are related to the spread transactions nor a transaction involving the ESOP, (4) the plain language of the August 27th letter fails to show Stonehenge dealt with the ESOP and ERISA plan assets, (5) DBF provided legitimate advisory services to Stonehenge and others, and (6) the spread transactions did not occur so that Fenkell could seek fees for DBF. *Id.* at 2-13.

These issues were discussed at length in the Opinion, and are an improper basis for a motion for reconsideration. *See* for instance, Op. at 24-27 (the ESOP transaction was a unitary transaction); Op. at 73-76 (questions of fact exist whether Stonehenge dealt with the plan, reasoning that "[t]he [August 27th] letter alone would create a triable issue of fact"); Op. at 20-27 ($4,000,000 in fees paid from Stonehenge through DBF

Consulting represented a kickback in violation of ERISA; "The money wound up in Fenkell's pocket. Hence he received consideration for his own account, rather than on the ESOP's account"). The Fenkell parties do not allege a clear error of law or fact. These arguments were previously made in the voluminous briefs by the parties, and were rejected. The Fenkell parties' mere disagreement with my original decision is not grounds for reconsideration.

### 2. *Ruling 2(b) does not rely on a misapprehension of the ASA and the SLCS services.*

The Fenkell parties argue that the Court erred in finding that Fenkell violated his state law duty of prudence because the Court failed to apply the business judgment rule. Fenkell Mem. at 13-15. The Sefcovic parties join in this argument, stating that "[t]here is no evidence, only innuendo from Alliance, to suggest that Fenkell received anything from the ASA personally." Sefcovic Mem. in Supp. of Fenkell's Motion for Reconsideration at 4. Alliance argues that Fenkell cannot avail himself of the business judgment rule. Alliance Opp. to Fenkell's Motion for Reconsideration at 8-9.

At the outset, the Fenkell parties did not argue in their motion that the business judgment rule applied to this case. [5] The Fenkell parties argued that "[t]he record in this case is replete with testimony of Mr. Fenkell regarding the good faith and diligence that he applied in the exercise of his corporate duties as President, CEO, and Director of Alliance." Fenkell Mem. of Law in Supp. of Motion for Summary Judgment at 62-63. Fenkell argued that the evidence established that he acted in good faith and prudence

---

[5] The Sefcovic parties also did not assert the business judgment rule as a defense to Alliance's claim that Fenkell breached his duty of prudence. In fact, the Sefcovic parties failed to address this argument entirely other than to say that they "join in Sections IX and X of Fenkell's Motion. As discussed therein, Plaintiffs have not established fraud and/or any breach of corporate fiduciary duties by Fenkell." Sefcovic Mem. of Law in Supp. of Motion for Summary Judgment at 25.

and that Alliance failed to state a claim for breach of fiduciary duty against Fenkell.[6] *Id.* Fenkell did not assert the business judgment rule as a defense to the Alliance parties' tenth cause of action.

Since neither the Fenkell nor the Sefcovic parties raised the business judgment rule in their motions, it is improper to do so on a motion for reconsideration absent manifest error. As discussed below, I find no manifest error because the business judgment rule does not apply to Fenkell in his role as a corporate officer.[7]

Were I to address the business judgment rule on its merits, I would find that it does not apply to the facts of this case. The business judgment rule "insulates an officer or director of a corporation from liability for a business decision made in good faith if he is not interested in the subject of the business judgment, is informed with respect to the subject of the business judgment to the extent he reasonably believes to be appropriate under the circumstances, and rationally believes that the business judgment is in the best interests of the corporation" *Id.*, citing *Cuker v. Mikalauskas*, 692 A.D.2d 1042, 1045 (Pa. 1997); also citing *In re Zambrano Corp.*, 478 B.R. 670, 685 (Bankr, W.D. Pa. 2012) and *Viener v. Jacobs*, 834 A.D.2d 546, 557 (Pa. Super. Ct. 2003).

For the reasons discussed in the Summary Judgment Opinion, the overwhelming evidence establishes that the business judgment rule should not apply. Fenkell was not acting in good faith and he could not reasonably have believed that the SLMRS ASA was

---

[6] Fenkell also set forth a statute of limitations argument.

[7] *Cf.* Op. at 48-50 (dismissing Fenkell's eleventh third-party claim alleging breach of the duty to monitor as to Spear, Wanko, Lynn and other directors for instituting the within lawsuit). I held that Alliance's decision to institute and pursue this lawsuit was protected under the business judgment rule because "four of the five Alliance directors were disinterested outside directors appointed after Fenkell left . . . there [was] no evidence that the outside directors filed the lawsuit in their own interest . . . Alliance was assisted by competent counsel . . . the internal investigation was . . . exhaustive . . . [and] [t]here [was] a rational basis for the lawsuit."

in the best interests of Alliance, especially while receiving similar services from SLCS for one-third the cost. *See* Alliance Opp. to Fenkell's Motion for Reconsideration at 9; see also Op. at 125-129. This is not based on mere "innuendo from Alliance;" rather the record evidence establishes that the business judgment rule is inapplicable.  Therefore, the Opinion did not err in finding that Fenkell violated his state law duty of prudence.

### b. THE COURT'S RULING AS TO 2(A) UNDER RULE 56(F) DID NOT DEPRIVE FENKELL OF DUE PROCESS.

The Fenkell parties argue that the Court denied the parties due process by ruling without providing Fenkell notice and the opportunity to be heard with respect to ruling 2(A)'s finding of liability. Fenkell Mem. at 15. The Fenkell parties allege that the Court did not notify Fenkell of its intent to rule under 56(f) with respect to ERISA §406(a)(1)(D). *Id.* Fenkell claims that no party requested summary judgment with respect to this section, and it was therefore error to grant summary judgment without giving Fenkell notice and an opportunity to be heard. *Id.*

Alliance argues that the Alliance parties did seek summary judgment on this claim (*see* Alliance Memorandum in Support of Motion for Summary Judgment at 71), which Fenkell addressed in opposition (*see* Fenkell Opp. to Alliance's Motion for Summary Judgment at 41-42), and was decided by the Court (*see* Op. at 34-35). I agree. The Fenkell parties' argument is entirely without merit. The Fenkell parties had both notice and an opportunity to be heard before I ruled on whether Fenkell violated ERISA §406(a)(1)(D).

## V.    MOTION FOR CLARIFICATION[8]

### a. ALLIANCE'S MOTION FOR CLARIFICATION AND FENKELL's RESPONSE

*1. Fenkell's motion to amend his counterclaims and second amended third-party complaint is denied in its entirety.*

Alliance seeks clarification that Fenkell's motion to amend his counterclaims and second amended third-party complaint is denied in its entirety. Alliance Motion for Clarification at 2. The Fenkell parties, in their response, expressly declined to address this issue noting that "[t]here is no substantial difference between the surviving claims stated in the second amended third-party complaint and the third-amended third-party complaint. Fenkell Mem. in Resp. to Alliance's Motion for Clarification at 1. Accordingly, I hold that Fenkell's counterclaims and second amended third-party complaint are the

---

[8] Alliance filed a motion for clarification of the Court's September 30, 2016 Order and the Fenkell parties filed a response. The Alliance parties then filed a motion to strike certain of the Fenkell and Sefcovic parties' arguments in response to the Alliance parties' motion to clarify and the Stonehenge parties' motion for reconsideration. Rule 12(f) permits a motion to strike pleadings containing "immaterial, impertinent or scandalous matter." However, courts are unwilling to construe "pleading" broadly and I find that Alliance's motion to strike the parties' opposition papers is improper. *See Styer v. Frito Lay, Inc.*, ___ F. Supp. 3d ___, 2015 WL 999122 (Mar. 6, 2015). In *Styer*, the plaintiff moved to strike portions the defendant's reply brief. The Court reasoned that:

> Upon consideration of this motion to strike we find, first, that to the extent that object of that motion is portions of a reply brief, this brief is not the appropriate subject of a motion to strike. Furthermore, recognizing that [m]otions to strike under Fed.R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted, we also find that it has not been shown that the assertions in this brief are both "redundant, immaterial, impertinent, or scandalous" and unfairly prejudicial. Therefore, in the exercise of our discretion, we will deny this motion to strike portions of this reply brief. However, because we understand the concerns that motivated the plaintiff to file this pleading, the Court will, instead, treat this motion to strike as a sur-reply brief on the pending summary judgment motion, and will consider the plaintiff's arguments in ruling upon that motion.

(Internal citations omitted). Therefore, I will treat Alliance's motion to strike as a reply brief to their motion for clarification.

operative pleadings for Fenkell's remaining counterclaims and third-party claims.
Fenkell's proposed third-amended third-party complaint is denied in its entirety.

2. *Fenkell's second cause of action for contribution against the Alliance parties is dismissed insofar as these claims relate to the Chesemore action.*

Fenkell argues that the Court granted summary judgment on Fenkell's contribution claims only insofar as they relate to the *Chesemore* action. Fenkell Mem. in Resp. to Alliance's Motion for Clarification at 2, citing Op. at 45 ("I will grant summary judgment denying Fenkell a contribution remedy against any of the Alliance parties arising out of the *Chesemore* litigation."). Fenkell concludes that the second cause of action for contribution survives against (1) Spear with respect to Stonehenge, (2) Wanko and Lynn with respect to the 2007 Trachte Deal, and (3) Alliance with respect to claims not based on the FAC's Ninth, Tenth, Thirteenth or Fourteenth claims. *Id.* Alliance argues, in a footnote, that despite the language in the opinion that states the claims for contribution are dismissed with respect to *Chesemore*, the Order and sub-heading state the Court's intent to dismiss the entire claim. Alliance Motion for Clarification at 6.

I find that Fenkell's second cause of action for contribution against the Alliance parties is dismissed only insofar as they relate to the *Chesemore* action. The reasoning and holding clearly state that contribution is not available to Fenkell "for liability arising from the *Chesemore* case." Op. at 44-45.

3. *The Opinion and Order do not dismiss Fenkell's fourth, fifth, and eighth third-party claims.*

The Opinion and Order dismissed Fenkell's third-party claim asserting prohibited transactions by Spear, holding that Fenkell is disqualified from pursuing a remedy on behalf of the ESOP. Op. at 45-46; Order at ¶ 2(C). Alliance argues that based

on the Court's finding that Fenkell does not have standing as an ESOP participant, the

Court should also dismiss the following third-party claims:

- Fourth third-party claim for Trachte-related prohibited transactions against Wanko, Lynn and Spear;
- Fifth third-party claim for Trachte-related prohibited transactions against Wanko, Lynn and Spear; and
- Eighth third-party claim for failure to monitor Spear as trustee against the Alliance Board, Wanko, Lynn, and Spear.

Alliance Motion for Clarification at 5. It is Alliance's position that "because each of these

third-party claims also necessarily relies on Fenkell's now-waived status as an ESOP

participant,"[9] the above-referenced claims should be dismissed. *Id.*  I disagree.

Alliance did not brief this particular issue in their original motion for summary

judgment[10], and now seeks summary judgment on additional grounds in their motion

---

[9] Fenkell argues in response that this Court held only that Fenkell may be "disqualified" from contribution claims, but did not hold that Fenkell lacks standing as an ESOP participant. This is a misstatement of the holding. The Opinion states, "I agree that Fenkell is disqualified from pursuing a remedy on behalf of the ESOP. He posted his ESOP plan account – and status as a plan participant – to secure his *supersedeas* bond in the *Chesemore* appeal, and forfeited that account – and his standing as a plan participant – once he lost his appeal." Op. at 46. The Fenkell parties also argue that Fenkell has standing as an ESOP participant because ERISA standing "relates to the date of the harm." Fenkell Resp. at 7, citing *Bridges v. American Electric Power Co.*, 498 F.3d 442 (6th Cir. 2007) ("former employee . . . has 'participant' standing despite having 'cashed out' his defined-contribution plan"). This is a new argument that was not made in the initial briefing. It is therefore improper on a motion for clarification. Even if this argument were proper, it is without merit.  The facts of this case are distinguishable from *Bridges* because, as Alliance argues, Fenkell "broadly elected, with advice and consent of his counsel, to forfeit 'all of his rights, benefits, and privileges' to his ESOP account." Alliance Motion to Strike at 5. I agree with Alliance, and hold that Fenkell does not have standing under ERISA as an ESOP participant.
[10] Alliance argued that the fourth and fifth third party claims were time barred by the statute of limitations. Alliance motion for summary judgment at 120-121. With respect to the eighth third-party claim, Alliance argued that Spear could not be held liable for the failure to monitor because (1) Spear was not a director at the time the alleged fiduciary breach occurred (and therefore had no duty to monitor) and (2) the claim is not cognizable because the failure to monitor is a derivative claim that must be premised on an underlying breach of fiduciary duty. Alliance did not allege that these claims should be dismissed because Fenkell did not have standing as an ESOP participant.

for clarification. I am not inclined to dismiss these third party claims without proper briefing by the parties. As noted in footnote 71 of the Opinion, even though Fenkell does not have standing as an ESOP participant, "because he has been sued in an ERISA fiduciary capacity he may have another basis for standing. Because the parties have not briefed the issue I will not address it." I will deny Alliance's motion with respect to Fenkell's fourth, fifth, and eighth third-party claims.

### 4. *Genuine questions of fact exist whether the Stonehenge parties are entitled to contribution from Wanko, Lynn, and Spear under Pennsylvania state law.*

Alliance seeks clarification whether the Court intends to rule on their motion for summary judgment as to the Stonehenge parties second third-party claim for contribution under state law. While the claim was not addressed by me in the September 30, 2016 Opinion, it was addressed in the Order, which provided that all motions not specifically granted were denied. I will explain why I denied this motion.

The Alliance parties seek dismissal of Stonehenge's claim for contribution without making a separate argument, but by incorporating by reference their argument as to Fenkell's claims for contribution.[11] Alliance raised this same issue during the motion to dismiss stage of the litigation. In ruling on this issue, I held that the

---

[11] The entirety of the Alliance parties' argument states:

> The Stonehenge Defendants seek contribution from Wanko, Lynn and Spear in the event the Stonehenge Defendants are found liable for plaintiffs' state law claims for civil conspiracy and aiding and abetting Fenkell's breach of corporate fiduciary duties. *See* Dkt. 281 at page 38 (dismissing Stonehenge defendants' contribution claim for the ERISA causes of action in plaintiffs' amended complaint, Dkt. 67). As previously discussed, Wanko, Lynn and Spear had no involvement in the breaches that were part of the Stonehenge payments. *See supra* at Part II, §II(B)-(E). Accordingly, the Court should grant judgment against these claims.

Alliance Mem. of Law in Support of Motion for Summary Judgement at 129.

Pennsylvania contribution statute "permits a contribution remedy for intentional tortfeasors" reasoning that,

> The right of contribution arises when a "joint tortfeasor has discharged the common liability or paid more than his *pro rata* share." *Swartz v. Sunderland*, 169 A.2d 289, 291 (Pa. 1961). Notably absent is any explicit exclusion of intentional tortfeasors from the definition of "joint tort-feasors."

Op. Motion to Dismiss, at 25-26 (Dec. 12, 2014). Alliance has not made any additional, specific arguments bearing on the Stonehenge contribution claim in their motion for summary judgment. Therefore, I adhere to my initial ruling at the motion to dismiss stage for the reasons spelled out therein. *Id.* at 20-30; 34-40. I find that there are genuine issues of material fact that preclude summary judgment as to Stonehenge's state law claim for contribution from the Alliance Parties.

## VI.   CONCLUSION

An order clarifying the September 30, 2016 Order will enter.

BY THE COURT:

*s/Richard A. Lloret*
**HON. RICHARD A. LLORET**
**U.S. Magistrate Judge**